1  Robert L. Powley (admitted *pro hac vice*)
   E-mail: rlpowley@powleygibson.com
2  James M. Gibson (admitted *pro hac vice*)
   E-mail: jmgibson@powleygibson.com
3
   Diane B. Melnick (admitted *pro hac vice*)
4  E-mail: dbmelnick@powleygibson.com
   POWLEY & GIBSON P.C.
5
   304 Hudson St., 2nd Floor
6  New York, NY 10013
   Tel: (212) 226-5054
7
   Fax: (212) 226-5085
8  *Attorneys for Plantiffs Energy Intelligence Group, Inc.*
   *and Energy Intelligence Group (UK) Limited*
9

10 Thomas A. Mesereau, Jr., California Bar No.: 91182
   Email: mesereau@mesereauyu.com
11 Susan C. Yu, California Bar No.: 195640
12 Email: yu@mesereauyu.com
   MESEREAU & YU, LLP
13 10390 Santa Monica Blvd., Suite 220
14 Los Angeles, CA, 90025
   Tel: (310) 789-1177
15 Fax: (310) 861-1007
16 *Attorneys for Defendant Plains All American Pipeline, L.P.*

17
                    UNITED STATES DISTRICT COURT
18                  CENTRAL DISTRICT OF CALIFORNIA
19                        WESTERN DIVISION

20 ENERGY INTELLIGENCE GROUP,        )
21 INC.; and ENERGY INTELLIGENCE     )  CV11-10556 PA (SSx)
   GROUP (UK) LIMITED,               )
22                                   )
23                   Plaintiffs,     )  **JOINT RULE 26(f) REPORT**
            v.                       )  **OF EARLY MEETING OF**
24                                   )  **COUNSEL**
25                                   )
   PLAINS ALL AMERICAN PIPELINE, L.P.)  Case Management Conference:
26                                   )  April 16, 2012, 10:30 a.m.
27                   Defendant.      )
   _____)
28

Pursuant to Fed. R. Civ. P. 26(f), Local Rule 26-1 and this Court's Order dated February 21, 2012, the parties to this litigation, Plaintiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited ("Plaintiffs") and Defendant Plains All American Pipeline, L.P. ("Defendant") by and through their respective counsel, held their Early Meeting of Counsel by telephone on March 19, 2012 at 12:30 p.m. ( PDT) conferred further via e-mail exchanges, and hereby submit this Joint Report.

James M. Gibson and Diane B. Melnick attended on behalf of Plaintiffs; Susan C. Yu and Thomas A. Mesereau, Jr. of Mesereau & Yu, LLP attended on behalf of Defendant.

The parties have agreed on various dates by which certain steps in this case will be taken, that is:

Discovery Cut-off Date: <u>November 12, 2012</u>

Dispositive Motion(s) Cut-off Date: <u>November 19, 2012</u>

Final Pre-Trial Conference Date: <u>January 18, 2013</u>

Trial Date: <u>February 12, 2013</u>

## II.   SUMMARY OF THE CASE

### A.   <u>Plaintiffs' Summary of the Case</u>

Plaintiffs are publishers of newsletters and other publications for the global energy industry and have published the daily newsletter *Oil Daily* ("OD") since 1951. Plaintiffs provide original articles, analysis, and specialized content relating to the oil and gas industries, and maintain an editorial staff of approximately fifty (50) reporters, editors, and analysts at seven worldwide bureaus. Plaintiffs require that interested parties purchase various subscriptions to its publications and also provide the option to purchase content on a per-article basis.

Plaintiffs own copyrights in all of their publications, including U.S. Copyright Reg. No. TX6 -780 - 005, for Volume 61 of OD covering twenty-one

1

(21) issues dated October 1, 2011 through October 31, 2011. Proper copyright notices are affixed to each of the publications that is issued by Plaintiffs.

Defendant has been a subscriber to OD since on or about 1999. Defendant entered into single-user subscription agreements with Plaintiffs from 1999 to the present. On October 14, 2011, Plaintiffs learned that Defendant's employees were, without authorization, copying and distributing issues of OD to various other employees and third parties, in violation of both Plaintiffs' copyrights and the terms of the single user subscription agreement that governed Defendant's use of and access to OD.

## B.    Defendant's Version

This is a newspaper subscription case. Defendant is an oil pipeline company with significant operations throughout California, including Long Beach, California.

Defendant, like many other companies in California, subscribes to various newspapers and magazines for its employees. One of the newspapers to which Defendant subscribed was the Oil Daily, which Plaintiffs say they own.

The Oil Daily is a newspaper containing non-creative, unoriginal, factual information, which is available in the public domain.

Defendant (i.e., one of its employees) was first solicited by Plaintiffs in approximately 1999 or 2000 to purchase an annual e-mail subscription to the Oil Daily.[1] Defendant understood that Plaintiffs would deliver the Oil Daily by email to Defendant in a PDF or comparable file. Defendant also understood that the annual subscription gave Defendant an unconditional license to read the newspaper for one year.

Plaintiffs, at all times, led Defendant to believe that Defendant owned an unconditional license for one year.

---

[1]    Defendant will request Plaintiffs to produce discovery surrounding the detailed facts, e.g., all witnesses and documents, surrounding Plaintiffs' initial solicitation.

The only requirement for signing up for the solicited annual e-mail subscription to the Oil Daily was a hefty payment of an invoice totaling approximately two thousand five hundred dollars ($2,500.00).  A signature was not even required.  The invoice looked like a mass-market, commercial adhesion agreement because it contained vague, ambiguous and uncertain boiler-plate language in fine print.  Defendant did not read it.  Nor did Plaintiffs require Defendant to read it.   The only thing Plaintiffs required was a payment.

Each year thereafter, Plaintiffs solicited Defendant to renew the annual subscription.

In approximately October 2010, Ms. Araceli Gudino, an administrative assistant working for Defendant, was approached and solicited by Plaintiffs via e-mail to renew an annual subscription to the Oil Daily.

Ms. Gudino, as well as all prior administrative assistants working for Defendant who received the Oil Daily by email, understood the terms of the email subscription as follows:  (1) pay the annual subscription; (2) receive the daily Oil Daily by email; and (3) forward that email to certain in-house employees who wanted to read it strictly for personal enjoyment and educational purposes.

Ms. Gudino and the prior administrative assistants never read the Oil Daily. Plaintiffs knew (or should have known) that the administrative assistants were simply receiving the daily email newsletter for the purpose of forwarding it to those who wanted to read it.

On October 14, 2011, Ms. Gudino contacted Jimmy Ramirez, who was the Oil Daily contact person at the time, to inquire about changing the newsletter access from email to online.  This was because certain in-house employees did not want to receive the newsletter by email.  They did not want to clutter their computer with materials they were simply reading for enjoyment.  Thus, they wanted to read the Oil Daily on-line and never have to worry about cluttering their computer with unnecessary information.  In response, another person at Oil Daily named Derrick

3

Dent advised Ms. Gudino that on-line access would cost more than email access and that he would get back to her with pricing.  Mr. Dent asked Ms. Gudino to send him a summary of the number of employees receiving the newsletter by email. Therefore, Ms. Gudino sent an email to Mr. Dent that same day, advising him that she forwarded the email to approximately 75 employees and that approximately 15-20 of them wanted an online access.

On <u>October 17, 2011</u>, Ms. Gudino made follow-up inquiries to Mr. Dent by email, asking him what the pricing for the online option would be.

On <u>November 1, 2011</u>, Ms. Gudino received an email from Mr. Dent, in which he stated "Hello Araceli, I would like to discuss your company's Oil Daily renewal at your earliest convenience.  I look forward to speaking to you soon.  Kind regards, Derrick."  In response, Ms. Gudino called Mr. Dent, and Mr. Dent told Ms. Gudino that his company was still working on pricing.

On <u>November 9, 2011</u>, Ms. Gudino received an email subscription invoice from Plaintiffs' email address, renewal@energyintel.com.  The subject line on this email said "Renewal Notice #2."  However, the invoice contained in the email was addressed to another subscriber, i.e., "Mr. Mahmoud Fouda, Meric, 9, Ebad El Rahman Street, Third Floor, Massaken Sheraton, Hellopolis, Cairo, Egypt." Therefore, Ms. Gudino called Mr. Dent and advised him that she had received the wrong renewal invoice.

Mr. Dent requested that she send him that wrong invoice, so she did.

On <u>December 7, 2011</u>, Ms. Gudino received a renewal invoice by email from Ms. Deborah Brown, an account services manager employed with Plaintiffs.  This invoice said the subscription would expire on January 9, 2012.  Thus, Ms. Gudino forwarded this invoice to the company account payable department for payment, and the invoice was paid.

On or about <u>December 22, 2011</u>, Defendant was served with the Plaintiffs' Complaint.  Defendant was shocked.

But the one person most surprised by the Plaintiffs' lawsuit was Ms. Gudino because, at all times, Plaintiffs' representatives (1) never said anything (directly or indirectly and/or expressly or impliedly) about a copyright violation or any violation whatsoever; (2) told Ms. Gudino that they were working on pricing for the online access; and (3) induced Ms. Gudino to believe that they were working on pricing from online access.

## III.   PRINCIPAL ISSUES IN THE CASE

Plaintiffs' Complaint alleges issues of copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

Defendant contends that this case involves: (1) contract issues, including the failure of the meeting of the minds as to the terms of the annual subscription to the Oil Daily; (2) Defendant's unconditional license to the annual email subscription to read the Oil Daily; and (3) Fair Use defense issues, including the Oil Daily's unoriginal, factual content that is available in the public domain.

## IV.   PROPOSED DISCOVERY PLAN

### A. Initial Disclosures

The parties have agreed that Initial Disclosures by both parties will be made on or before **April 16, 2012.**

### B. Proposed Schedule

The parties propose the following discovery deadlines:

Written discovery to be served by:  **October 12, 2012.**

Depositions to be noticed and taken by:  **October 19, 2012.**

Expert depositions to be noticed and taken by: **October 26, 2012.**

Discovery cut-off date:  **November 12, 2012.**

### C. Anticipated Discovery

1.   **Plaintiffs' Discovery**

5

At this time, Plaintiffs anticipate seeking discovery pertaining to the following topics:

a)  Information concerning Defendant's employees, contractors, and other third parties who receive, forward, distribute, store, and/or copy Plaintiffs' publication(s), and any distribution lists created by Defendant that concern and/or include Plaintiffs' publication(s).

b)  Information concerning Defendant's subscriptions to Plaintiffs' publication(s) and Defendant's decision to subscribe or not subscribe to Plaintiffs' publications(s).

c)  Information concerning any subscription/licensing agreements between Plaintiffs and Defendant pertaining to Plaintiffs' publication(s).

d)  Information concerning Defendant's computer systems, electronic storage systems, email servers, archival systems, hard drives, USB drives and/or servers, including any storage, retention, or use of Plaintiffs' publication(s) thereon.

e)  Information concerning Defendant's budget for subscriptions.

f)  Information concerning Defendant's revenues as related to Defendant's use of Plaintiffs' publication(s).

g)  Information concerning Defendant's document retention policy.

h)  Information concerning Defendant's subscriptions to and use, copying, displaying, forwarding and/or distributing of regarding third-party materials, including but not limited to software, newsletters, magazines, publications, and other printed or electronic materials.

i)  Information concerning Defendant's policy regarding use, copying, displaying, forwarding and/or distributing copyrighted materials; any training Defendant's employees received regarding the same; and, any procedures implemented by Defendant regarding the circulation of Plaintiffs' publication(s).

j) Information concerning Defendant's organizational structure and employees, including their titles and office locations.

k) The factual bases for Defendant's allegations set forth in its Answer and Affirmative Defenses.

l) Information concerning any legal opinion was relied upon by Defendant regarding its use, copying, displaying, forwarding and/or distributing of Plaintiffs' publication(s).

## 2. **Defendant's Discovery**

At this time, Defendants anticipate seeking discovery concerning the following:

a) Information concerning Plaintiffs' marketing plans, strategies, and tactics to solicit customers, including Defendant, to purchase their expensive annual email subscription to the Oil Daily since 1999 through the present.

b) Information concerning Plaintiffs' publication of the Oil Daily, including the origination and sources of news information since 1999 through the present.

c) Witnesses, including Plaintiffs' employees, management members, board of directors, reporters, and editorial members, who directly or indirectly and/or expressly or impliedly participated in the sale and publication of the Oil Daily since 1999 through the present.

d) Information concerning the Oil Daily subscription agreement since 1999 through the present.

e) All facts, including documents and witnesses, supporting Plaintiffs' allegations and contentions in the complaint.

f) Information concerning Plaintiffs' organizational structure since 1999 through the present.

## D. Disclosure/Discovery of Electronically-Stored Information

The parties agree that discovery of Electronically-Stored Information ("ESI") will be necessary in this case. The parties also agree that metadata may be relevant to a wide variety of ESI, including but not limited to, email communications and other electronically-stored data. The parties have discussed the technical aspects of the production of ESI, and Plaintiffs have indicated that the production of documents in TIFF (Tagged Image File Format) that will be compatible with the Summation document management and litigation system is preferred. Counsel for Defendant has indicated that they are determining whether its documents can be produced in that format. Plaintiffs intend to comply with the preferred format of document production as identified by Defendant, so long as such format is reasonable.

The parties will agree to a method (or methods) and procedure (or procedures) for exchanging ESI discovery by **April 16, 2012.**

Should either side require any specific document(s) to be produced in a format other than that in which it was originally produced, the parties will meet and confer in good faith and attempt to resolve the matter.

### E.         Claims of Privilege and/or Protection

The parties have agreed to negotiate the provisions of a Stipulated Protective Order to protect confidential information, which will be submitted to the Court for review and approval. .

### F.         Exceptions to Normal Discovery Limitations

At this time, the parties do not anticipate needing any exceptions to the normal discovery limitations.

### G.        Other Orders that the Court Should Issue

At this time, the parties do not believe that the Court needs to issue any other Orders in this matter to ensure the timely progress of the litigation.

### H.        Other

The parties agree to the use of a unified exhibit numbering system for deposition exhibits. The parties agree to work cooperatively concerning other procedures to reduce discovery and other litigation costs.

## IV.        REQUIREMENTS PURSUANT TO LOCAL RULE 26-1

### A.        Complex Case

The parties agree that this case is not complex, and accordingly, do not believe that any part of the case will require the Court to utilize the procedures set forth in the Manual on Complex Litigation.

### B.        Motion Schedule

The parties propose that the cut-off date for dispositive motions be **November 19, 2012,** and that all motions shall be filed and all hearings shall be held by that date.

### C.        Settlement and ADR

The parties have considered settlement of this case. In late January/early February 2012, Plaintiffs presented Defendant with a settlement proposal, Defendant rejected the settlement proposal and presented a counter-offer, which Plaintiffs subsequently rejected. Plaintiffs and Defendant remain open to considering settlement.

The parties have agreed to utilize Settlement Procedure No. 3 identified in Local Rule 16-15, that is, the parties shall participate in a private dispute resolution proceeding, as provided by Local Rule 16-15.4(3). The parties believe that this approach presents the best possibility of settlement of this matter. The parties have

9

agreed to participate in the dispute resolution process after sufficient discovery has been completed so that Plaintiffs understand the scope and duration of any infringing activity. The parties estimate that mediation will take place during August 2012, subject to the availability of the parties' chosen mediator.

### D.       Estimate of Length of Trial

Plaintiffs' time estimate for jury trial is 3-7 days. Defendants' time estimate for jury trial is approximately 12-15 days.

### E.       Final Pretrial Conference

The parties agree that the Final Pre-trial Conference should take place on **January 18, 2013.**

### F.       Trial by Jury or to the Court

The parties agree that the case is to be tried to a jury.

### G.       Trial Date

The parties agree that the Trial should take place on **February 12, 2013.**

### H.       Joinder of Additional Parties

Plaintiffs anticipate that additional parties may be added to the case as a result of facts obtained through discovery, including but not limited to Defendant's subsidiaries, affiliates, and similarly related companies.

Defendant is currently unaware of any joinder issues.

### I. Severance, Bifurcation, and other Ordering of Proof

At this time, the parties do not anticipate the need for severance, bifurcation, or other Ordering of Proof.

### J. Trial Counsel

#### 1.       For Plaintiffs

Robert L. Powley, Esq. (admitted *pro hac vice*) for Plaintiffs

James M. Gibson, Esq. (admitted *pro hac vice*) for Plaintiffs

#### 2.       For Defendant

Thomas A. Mesereau, Jr., Esq. for Defendant (Co-Lead Trial Attorney)

Susan C. Yu, Esq. for Defendant (Co-Lead Trial Attorney)

## V.   LAW AND MOTION

Plaintiffs expect to file a Motion to Amend the Complaint after discovery is undertaken.  Upon sufficient discovery, Plaintiffs may also file a Motion to Strike with respect to some or all of the Affirmative Defenses that are asserted in Defendant's Answer and other motions that are necessitated by the facts developed through discovery.

Defendant will seek leave to file a cross-complaint and/or other motions as warranted by discovery.

## VI.   ADDITIONAL ISSUES

### A.   Additional issues affecting status or management of case

One or both of Plaintiffs' Counsel will make himself available to appear before the Court, unless they are in trial before another Court.  If both Counsel for Plaintiffs are unable to appear before the Court on any specific date, Counsel will promptly file a notice of unavailability.

One or both of Defendant's Trial Counsel (i.e., Thomas A. Mesereau, Jr. and Susan C. Yu) will make themselves or himself/herself available to appear in this Court.  However, if both Mr. Mesereau and Ms. Yu are engaged in trial outside this District or are travelling out of state, they will promptly file a notice of unavailability.

### B.   Whether Pleadings are Likely to be Amended

### 1.   By Plaintiffs

As noted above, Plaintiffs will amend the Complaint if additional instances of copyright infringement are identified in the course of discovery.  The nature of the infringement is such that it occurs behind Defendant's electronic firewall, so that

Plaintiffs cannot know the extent of the infringement without undertaking appropriate discovery.

### 2. By Defendant

Pending discovery, Defendant will amend its Answer and file a cross-complaint as warranted.

Dated: April 2, 2012                    Respectfully submitted,

For the Plaintiffs:                     /s/ Diane B. Melnick
                                    Robert L. Powley (admitted *pro hac vice*)
                                    James M. Gibson (admitted *pro hac vice*)
                                    Diane B. Melnick (admitted *pro hac vice*)
                                    POWLEY & GIBSON, P.C.

                                    *Counsel for Plaintiffs Plantiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited*

                                    Dennis G. Martin, Esq.
                                    Willmore F. Holbrow, III, Esq.
                                    Peter B. Bromaghim, Esq.
                                    BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN LLP

                                    *Local Counsel for Plaintiffs*

For the Defendant:                      /s/ Susan C. Yu

                                    Susan C. Yu
                                    MESEREAU & YU, LLP

                                    *Attorneys for Defendant Plains All American Pipeline L.P.*