Robert L. Powley (admitted *pro hac vice*)
E-mail: rlpowley@powleygibson.com
James M. Gibson (admitted *pro hac vice*)
E-mail: jmgibson@powleygibson.com
Stephen M. Ankrom (admitted *pro hac vice*)
E-mail: smankrom@powleygibson.com
POWLEY & GIBSON P.C.
304 Hudson St., 2nd Floor
New York, NY 10013
Tel: (212) 226-5054
Fax: (212) 226-5085

*Attorneys for Plaintiffs and Counter-Defendants Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ENERGY INTELLIGENCE GROUP, INC.; and ENERGY INTELLIGENCE GROUP (UK) LIMITED, | CV11-10556 PA (SSx) |
| Plaintiffs | |
| v. | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO EXTEND DISCOVERY AND TIME TO ADD PARTIES** |
| PLAINS ALL AMERICAN PIPELINE, L.P. | |
| Defendant. | |
| PLAINS ALL AMERICAN PIPELINE, L.P. | |
| Counter-Plaintiff | Date: October 1, 2012 |
| | Time: 1:30 p.m. |
| v. | Place: Courtroom 15 |
| | Judge: Hon. Percy Anderson |
| ENERGY INTELLIGENCE GROUP, INC.; and ENERGY INTELLIGENCE GROUP (UK) LIMITED | Discovery Cut Off Date: 9/24/12 |
| | Pretrial Conference Date: 11/2/12 |
| | Trial Date: 12/4/12 |
| Counter-Defendants | |

# TABLE OF CONTENTS

Introduction ................................................................................................ 1

Chronology of Discovery Events and Disputes ....................................... 1

    I.    Defendant Has Unreasonably Delayed Producing Documents ............... 1

    II.    Defendant's Document Production and Interrogatory Answers Have Been Inadequate ........................................................... 4

Argument .................................................................................................. 6

    I.    Plaintiffs Have Been Diligent Filing This Motion ................................ 6

    II.    Defendant's Actions Were Unforeseen by Plaintiffs and Beyond Plaintiffs' Control ............................................................. 7

    III.    Due to Insufficient Document Production and Delays, Plaintiffs Do Not Know the Full Extent of Defendant's Infringement ......................................................................................... 9

    IV.    Defendant Will Not Be Prejudiced if the Scheduling Order is Amended ................................................................................ 10

    V.    The Parties Have Additional Discovery Related Motions Pending Before Judge Segal ................................................................ 11

    VI.    Other Deadlines in the Scheduling Order ............................................ 12

Conclusion .............................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Kuschner* v. *Nationwide Credit*, 256 F.R.D. 684 (E.D. Cal. 2009) ............................ 7

**Rules**

Fed. R. Civ. P. 16(b)(4) .................................................................................. 6

Fed. R. Civ. P. 34 ........................................................................................... 8

Fed. R. Civ. P. 34(b)(1)(C) ........................................................................... 11

Plaintiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited ("Plaintiffs"), by their attorneys Powley & Gibson P.C., submit the following Memorandum of Points and Authorities in Support of their Motion to Extend Discovery and Add Parties.

## INTRODUCTION

Plaintiffs request that the Court modify the scheduling order in this case to extend discovery and extend the time to add third parties. Plaintiffs' inability to adhere to Your Honor's scheduling order is due entirely to Defendant failing to produce all documents responsive to Plaintiffs First Requests for Documents and Things before August 31, 2012, and failing to provide proper responses to Plaintiffs' interrogatories. Due to Defendant's inability to produce documents, Plaintiffs do not yet know the full scope of Defendant's infringing actions. Because the information related to Defendant's infringing distribution of Plaintiffs' publication *Oil Daily* ("OD") occurred behind Defendant's private, secure email system and computer servers, there is no way for Plaintiffs to discover this information except through discovery. Judge Segal's August 8, 2012 Order requires Defendant to produce all of its documents and provide proper responses to Plaintiffs' interrogatories no later than August 8, 2012.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 17, 2012. Plaintiffs asked Defendant if it would jointly stipulate to an extension of discovery and Defendant did not agree.

## CHRONOLOGY OF DISCOVERY EVENTS AND DISPUTES

### I. Defendant Has Unreasonably Delayed Producing Documents

On April 3, 2012, Plaintiffs' served their First Request for Documents and Things From Defendant ("First Document Requests") and First Set of Interrogatories ("First Interrogatories") on Defendant. Generally, Plaintiffs requested documents related to Defendant's copying and forwarding of OD and

1  other documents that are intended to establish the willfulness of Defendant's
2  conduct.
3        Defendant responded to Plaintiffs' First Document Requests and First
4  Interrogatories on May 4, 2012, objecting and demanding that Plaintiffs bear the
5  expenses associated with producing the requested documents, including costs related
6  to review of the documents for potential claims of privilege.  General Objection No.
7  14 in Defendant's Objections and Responses to Plaintiffs' First Document Requests
8  and (as well as General Objection number 14 in Defendant's Objections and
9  Responses to Plaintiffs' First Interrogatories) states, in pertinent part:

> DEFENDANT estimates that it will cost $24,750 for computer
> technicians ($165 per hour x approximately 150 hours) and $262,500
> in legal fees ($175 per hour at approximately 1500 hours) to retrieve
> the requested information. If PLAINTIFFS will pay these estimated
> retrieval costs to DEFENDANT, DEFENDANT will be able to
> provide the requested information.

(Dkt. No. 73-7, p. 5; Dkt. No. 73-8, p. 5.)  This objection was incorporated by
reference into nearly all of Defendant's responses to both the First Document
Requests (*See* Dkt. No. 73-7, pp. 6–12) and First Set of Interrogatories served by
Plaintiffs.  (*See* Dkt. No. 73-8, pp. 6–19.)
       On May 18, 2012, Plaintiffs sent an e-mail to Defendant outlining the
deficiencies in Defendant's discovery responses, to which Defendant responded on
May 21, 2012.  (Melnick Decl. Ex. DBM-1.)  During a several hours-long
telephonic meet and confer between the parties held on May 31, 2012, Plaintiffs
objected to Defendant's cost-shifting demand and discussed other outstanding
discovery issues.  (Gibson Decl. Ex. JMG-1.)  By Defense counsel's own admission
in filings in this action, Defendant did not even begin to search for responsive
documents until after the May 31, 2012 meet and confer, two months after Plaintiffs
served their First Document Requests. (*See* Dkt. No. 73-2, Yu Decl. ¶ 11.)

1 Defendant refused to abandon or modify its demand that Plaintiffs must bear the
2 costs of Defendant's search and retrieval of responsive documents.  Defendant also
3 stated during the conference that it would take specific steps to supplement and
4 address omissions in its discovery responses.  (*Id*.)

5 The parties also met and discussed Defendant's cost-shifting demands
6 following mediation on June 4, 2012.

7 Pursuant to Local Rule 37-2.2, Plaintiffs prepared a Joint Stipulation for
8 Motion to Compel Production of Documents and to Compel Complete Responses to
9 Interrogatories from Defendant ("Motion to Compel") and served it on Defendant
10 on June 19, 2012.  (Melnick Decl. Ex. DBM-2.)  Defendant served its portion of the
11 Joint Stipulation on June 27, 2012.

12 On June 29, 2012, Plaintiffs filed their Rule 37 Joint Stipulation for a Motion
13 to Compel and noticed a hearing for July 31, 2012.  The sole issue addressed in
14 Plaintiffs' portion of the Joint Stipulation was the issue of Defendant's unilateral
15 demand for cost-shifting, as Defendant had not indicated that it was willing to waive
16 or otherwise modify its Objections to Plaintiffs First Document Requests or First
17 Interrogatories, namely General Objection No. 14.  Defendant participated in the
18 preparation of the Motion to Compel, but did not independently raise any issues
19 therein.

20 Defendant filed an *ex parte* application to continue the July 31, 2012
21 discovery hearing on Plaintiffs' Motion to Compel on July 11, 2012.  Defendant
22 claimed the reason for seeking extraordinary relief was to "promote judicial
23 economy and efficiency," since Defendant planned to file a Motion for Protective
24 Order that was said to be "directly related" to Plaintiffs' Motion to Compel and
25 asked the Court to consider both motions together after August 28, 2012. (Ankrom
26 Decl. Ex. SMA-2; *see also* Dkt. No. 62, pp. 4–5.)  Judge Segal denied Defendant's
27 *ex parte* application and ordered Defendant to present its arguments in support of its
28 Motion for Protective Order during the previously scheduled July 31, 2012 hearing.

1  Defendant was ordered to file its motion papers on an expedited schedule.  (Dkt. No.
2  65.)
3        In its papers supporting its Motion for a Protective Order filed on July 20,
4  2012, Defendant for the first time in writing indicated that it had abandoned its
5  unilateral cost shifting demands.  (Dkt. No. 73-2, Yu Decl. ¶ 11.)  Defendant also
6  presented a sworn declaration from Barry Peters, Defendant's Manager of Records,
7  stating that searching Defendant's server for responsive electronically stored
8  information ("ESI") takes weeks or months.  (Dkt. No. 73-13, Peters Decl. ¶ 14–16.)
9        On August 8, 2012, Judge Segal entered an Order granting Plaintiffs' Motion
10 to Compel in Part and denying Defendant's Motion for Protective Order.  Among
11 other things, Judge Segal ordered that all document production be completed by
12 August 31, 2012.  (Dkt. No. 79, p. 9.)  This ruling had the practical consequence of
13 essentially foreclosing Plaintiffs from filing any discovery-related motions, since
14 Defendant's August 31 deadline for production falls after the last date to file a
15 discovery-related motion under normal notice procedures according to the current
16 Scheduling Order.

17      **II.**     **Defendant's Document Production and**
18              **Interrogatory Answers Have Been Inadequate**

19       Plaintiffs received Defendant's first production of documents on July 2, 2012,
20 three months after serving Defendant with their document requests, and after
21 Plaintiffs filed their Motion to Compel.[i]  Defendant's first (and to date only)
22 production consisted of approximately 750 emails (approximately 1,300 pages),
23 some of which showed that Defendant's employees regularly distributed copies of
24 OD to dozens of unauthorized users over a three year period (2009–2011).
25 However, these documents were not produced in the format requested by Plaintiffs,

---

[i] Though Defendant did produce documents on July 2, 2012, it did not indicate in writing that it had abandoned or modified its cost-shifting demands articulated in General Objection 14 until it filed its Motion for Protective Order on July 20, 2012, just over a week before the hearing on Plaintiffs' Motion to Compel.

1 nor could Plaintiffs load them into their litigation management system. Moreover, Defendant's documents were not produced as they are kept in the ordinary course of business. (Ankrom Decl. Ex. SMA-1.) Email files automatically create metadata fields that contain useful information, such as the email addresses of recipients, including those who are blind carbon copied.[ii] Defendant removed the metadata fields from the emails produced on July 2, 2012. By failing to produce metadata, Plaintiffs cannot learn the full extent of Defendant's distribution of OD, including to third parties.

Defendant also failed to fully answer Plaintiffs' First Interrogatories, which also prevented Plaintiffs from learning the full extent of Defendant's distribution of OD. Plaintiffs' Interrogatory No. 1, asks Defendant to "[i]dentify each individual employee, director, officer, agent, and/or board member who received any of Plaintiffs' Publications…." Plaintiffs' Interrogatory No. 2 asks Defendant to "[i]dentify each individual employee, director, officer, agent, and/or board member who forwarded any of Plaintiffs' Publications to any entity(ies) and/or individuals(s), whether employees of Defendant or otherwise, and identify each of the recipients by employer, name, email address, address and telephone number, if known … during the Applicable Period." Moreover, the Definitions referred to in Plaintiffs' First Set of Interrogatories explicitly state that, "[w]hen referring to a person, 'to identify' means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment." Defendant did not provide anything other than the first and last name of the individual and the approximate dates that person received OD. Thus, Defendant's responses to these Interrogatories

---

[ii] Defendant's July 2, 2012 production serves as an example of how metadata can be very informative. Defendant's first volume of production contained emails from Defendant's employee forwarding OD to dozens of unauthorized users. The emails show only the recipients' names; had Defendant included the metadata for these individuals, Plaintiffs could determine if any third parties were recipients of the initial distribution of OD by reference to the domain name contained in the recipients' email addresses.

fail to properly identify the unauthorized users who received OD. It is Plaintiffs' understanding that Defendant will be supplementing these two responses to provide all of the requested information, but Defendant has not done so to date.

Additionally, Defendant has stated that it cannot produce its second, and final, volume of documents before August 31, 2012—five months after Plaintiffs served their document requests on Defendant. Further, Defendant has not indicated when it will re-produce the documents it produced on July 2, 2012 that are not in the proper format (TIFF format with metadata) so that Plaintiffs can properly review these documents. Discovery is currently set to close on September 24, 2012. Thus, with the close of discovery rapidly approaching, Defendant's document production is only now commencing. As a result of Defendant's dilatory tactics and insufficient production of documents and responses to interrogatories, Plaintiffs are still unaware of certain basic facts that go to the heart of Plaintiffs' case.

On the other hand, Plaintiffs have compromised with Defendant on the scope of Plaintiffs' requested discovery. During a meet and confer on held on July 16, 2012 concerning Defendant's Motion for Protective Order, Plaintiffs agreed to narrow the scope of requested documents substantially. Plaintiffs agreed to reduce the Applicable Period and limited the definition of Plaintiffs' Publications. Plaintiffs also agreed to not seek ESI stored by Defendant on back-up tapes based on Defendant's assertions that such information is inaccessible. Plaintiffs' concessions were intended to keep discovery moving so that an extension of the discovery deadline could be avoided.

Defendant's delay has prejudiced Plaintiffs. The time remaining before September 24 is not sufficient to allow Plaintiffs to finish discovery.

## ARGUMENT

### I. Plaintiffs Have Been Diligent Filing This Motion

Federal Rule of Civil Procedure 16(b)(4) provides that, with respect to a Scheduling Order issued by the Court under Rule 16, "[a] schedule may be modified

1 only for good cause and with the judge's consent." Here, the good cause standard
2 has been satisfied by Plaintiffs and accordingly Plaintiffs request that Your Honor
3 grant Plaintiffs' Motion to modify the Scheduling Order entered on April 16, 2012.

4     The standard of "good cause" is focused on the diligence of the party seeking
5 the amendment to the scheduling order. *Kuschner* v. *Nationwide Credit*, 256 F.R.D.
6 684, 686-687 (E.D. Cal. 2009) ("Good cause may be found to exist where the
7 moving party shows that it diligently assisted the court with creating a workable
8 scheduling order, that it is unable to comply with the scheduling order's deadlines
9 due to matters that could not have reasonably been foreseen at the time of the
10 issuance of the scheduling order, and that it was diligent in seeking an amendment
11 once it became apparent that the party could not comply with the scheduling order.")
12 (internal citations omitted).

13     Plaintiffs request an extension of discovery and an extension of time to add
14 third parties due to delays in this litigation caused by Defendant's acts and
15 omissions, specifically its delay in producing documents, the deficiencies in the
16 documents it has produced, and its failure to completely answer Plaintiffs' First
17 Interrogatories.

18     **II.**     **Defendant's Actions Were Unforeseen**
19            **by Plaintiffs and Beyond Plaintiffs' Control**

20     Notwithstanding their diligence, Plaintiffs are unable to comply with the
21 deadlines specified in the Scheduling Order entered on April 16, 2012 due to the
22 unforeseen conduct of Defendant since the opening of the discovery period.

23     First, Defendant refused to produce any documents unless Plaintiffs paid
24 upfront Defendant's expenses associated with locating, retrieving, and reviewing
25 responsive documents. Defendant's conduct reflects its unwillingness to comply
26 with the discovery requirements of the Federal Rules of Civil Procedure and this
27 Court. For example, there is no provision (in the Federal Rules or elsewhere)
28 which would permit Defendant to respond to discovery requests by setting a

unilateral deadline of eight to twelve weeks and requiring advance payment of its retrieval and attorney review costs, without a specific Protective Order from this Court.

Second, Defendant delayed for months after Plaintiffs served their First Document Requests before beginning to search for responsive documents. (Dkt. No. 73-2, Yu. Decl. ¶ 11) (Defendant began searching for responsive documents "shortly after" the May 31, 2012 meet and confer). Defendant states that it cannot complete production before August 31, 2012 (*Id*. at ¶¶ 11, 14.) Therefore, assuming Defendant honors the August 31, 2012 deadline to complete its document production and serve supplemental interrogatory responses Plaintiffs will be left with only 15 business days to complete depositions.

Considering that Defendant operates a national publicly-traded pipeline company with substantial resources—and revenues of over $34 billion in 2011—its efforts to complete its searches and produce responsive documents are excessively slow and unreasonable. Had Defendant diligently begun to search in early April, when Plaintiffs' First Document Requests were served, Plaintiffs would have received documents by the end of June or early July, which would make a request for an extension of discovery unnecessary.

Third, Defendant has not fully responded to Plaintiffs' First Interrogatories. Defendant has not fully identified the unauthorized users that Defendant forwarded OD to. Thus, even though the close of discovery is rapidly approaching, Plaintiffs are still not aware of the full extent of Defendant's distribution of OD.

Fourth, the documents that Defendant has produced thus far are incomplete and altered from the way they were kept in the ordinary course of business. Contrary to Federal Rule of Civil Procedure 34, Defendant did not produce electronically stored information in the format requested by Plaintiffs. Moreover, these documents did not contain metadata, which frustrated Plaintiffs' efforts to determine the magnitude of Defendant's forwarding of OD. Plaintiffs should not be

prejudiced by Defendant's sluggish and incomplete document production and interrogatory responses.

At each step of the discovery process, Defendant has created delays and obstacles so that Plaintiffs could not conduct proper discovery.

Plaintiffs have been diligent in seeking this amendment, but have also been prudent in seeking resolution of these matters with Defendant (and Magistrate Judge Segal, when absolutely necessary), without resort to a modification of the Court's Scheduling Order. Unfortunately, with the facts presented above, the requested relief is the sole means to allow Plaintiffs the time necessary to conduct the discovery to which it is entitled.

### III. Due to Insufficient Document Production and Delays, Plaintiffs Do Not Know the Full Extent of Defendant's Infringement

Plaintiffs also request an extension of time to add parties. Defendant's July 2, 2012 production contains evidence that Defendant distributed OD to dozens of unauthorized users. However, due to Defendant's delay and its inadequate document production and interrogatory responses, Plaintiffs still do not know the extent of Defendant's infringement.

As explained above, Defendant's July 2, 2012 production did not contain metadata, which could have been utilized by Plaintiffs to identify the unauthorized users Defendant forwarded copies of OD to. Additionally, Defendant did not fully identify the unauthorized users who received OD in its answers to Plaintiffs' Interrogatories Nos. 1 and 2. Thus, Plaintiffs do not know yet if Defendant distributed OD to third-parties and if any third-parties need to be added as Defendants to this action. Accordingly, Plaintiffs ask the Court to modify the current Scheduling Order and allow additional parties to be added in this litigation.

## IV. Defendant Will Not Be Prejudiced if the Scheduling Order is Amended

The requested continuance would not be prejudicial to Defendant. First, the requested modification of the Scheduling Order would be mutual and all time periods thereby extended would apply to Defendant as well as Plaintiffs.

Defendant has indicated that "[t]he second batch of this discovery will be produced by August 31, 2012." (Dkt. No. 73-2, Yu Decl ¶ 11.) In Judge Segal's August 8, 2012 combined Order on Plaintiffs' Motion to Compel and Defendant's Motion for a Protective Order, the Court held, in pertinent part,

> Defendant shall produce all potentially responsive documents within fourteen (14) days of the date on which supplemental written responses are served, but in no case shall the production be later than August 31, 2012. (Dkt. No. 79, p. 9.)

Judge Segal's ruling applies to both parties equally, but was consistent with the specific relief requested by Defendant. The effect of this ruling was to provide Defendant with a substantial extension of time to produce documents that had originally been requested months earlier on April 3, 2012. However, the practical consequence of this ruling is that, under the current Scheduling Order, Plaintiffs are effectively foreclosed from filing any discovery related motions and requesting follow-up discovery. The identified date, August 31, 2012, is not only approximately five months after the First Interrogatories and First Document Requests were served but is also *after* the last possible date to file discovery-related motions under Your Honor's Scheduling Order. If Defendant's supplemental discovery responses are incomplete or otherwise unacceptable, Plaintiffs will not be able to request additional discovery from Defendant within the remaining days of the discovery period or to seek additional relief from the Court.

Having received its requested relief, including a substantial extension of time for the production of documents, Defendant cannot now be heard to claim that Plaintiffs' requested continuance is prejudicial to its interests.

## V. The Parties Have Additional Discovery Related Motions Pending Before Judge Segal

Two issues are currently pending before Judge Segal that might delay discovery even longer. The first is the improper format of Defendant's July 2, 2012 document production, which was not in the format that Plaintiffs requested and did not contain discoverable metadata. *See* Fed. R. Civ. P. 34(b)(1)(C) (requesting party may specify the form or forms in which electronically stored information is to be produced). Plaintiffs first objected to the form of Defendant's production on July 2, 2012 (Ankrom Decl. Ex. SMA-1), and subsequently conferred with Defendant without reaching a resolution before raising the issue with Judge Segal. On August 8, 2012, Judge Segal ordered the parties to meet and confer and file a Joint Stipulation agreeing to a form of production for ESI, or filing a status update if no agreement is reached. (See Dkt. No. 79.) Defendant agreed to produce documents (and re-produce its July 2, 2012 production) in the format that Plaintiffs requested, but Defendant would not agree to the stipulation unless it also included clauses providing for the non-waiver of privilege and clawback of inadvertently produced attorney-client privileged materials that Defendant alleges would be disclosed in metadata. While Plaintiffs believe that the disclosure of attorney-client privileged information in metadata is virtually impossible, they were amenable to a non-waiver and clawback stipulation, but the parties could not reach an agreement on the particular language of the non-waiver and clawback provisions. Both Plaintiffs and Defendant submitted to Judge Segal proposed orders governing the format of production as well as non-waiver and clawback of inadvertently produced privileged materials. This issue is currently pending.

Also pending before Judge Segal is a Motion for a Protective Order filed by Plaintiffs and a Motion to Compel filed by Defendant. Both motions concern the location of the depositions of Plaintiffs' employees are to be held. Defendant has noticed six depositions for the month of September.

Plaintiffs will depose possibly an equal number of witnesses depending on the contents of Defendant's August 31, 2012 production. Not enough time is left before the close of discovery to conduct all of these depositions, which will in all likelihood take place in New York and California. Because of the near physical impossibility of conducting the necessary depositions, an extension of discovery is necessary.

Plaintiffs have not yet noticed depositions because they have not received a majority of Defendant's responsive documents and cannot effectively conduct a deposition without such essential background information and evidence. Indeed, conducting depositions without access to a majority of Defendant's responsive documents would be imprudent because entire areas of inquiry that may be relevant would not necessarily be known to Plaintiffs before the documents are received and reviewed, leading to the undesirable possibility of second depositions for some or all witnesses. Simply put, there is not enough time before the current discovery deadline to complete these depositions.

### VI. Other Deadlines in the Scheduling Order

If your Honor's April 16, 2012 Scheduling Order is modified so as to extend the discovery cut-off date as requested herein, it is likely that the other dates in the Order will need to be continued so as to permit the parties to properly meet the motion cut-off date (now set for October 1, 2012), to prepare for the pre-trial conference (now set for November 2, 2012, at 1:30 p.m), and to prepare for trial (now set for December 4, 2012, at 9:00 a.m.).

Plaintiffs respectfully request that the Court issue an Order as follows:

a) to extend and continue the discovery cut-off date set forth in the Scheduling Order entered April 16, 2012 by three months, from September 24, 2012 to December 18, 2012;

b) to permit the addition of parties until November 5, 2012;

c) to extend the remainder of the dates specified in the Scheduling Order as follows;

    1) Motion Cut-Off Date: January 7, 2013

    2) Final Pretrial Conference: January 31, 2013

    3) Trial Date: March 4, 2013; and

d) to grant all other relief that the Court deems appropriate.

## CONCLUSION

Based on Plaintiffs' diligence, the prejudice to Plaintiffs if discovery is not extended along with the dates to add parties, the lack of prejudice to Defendant, as well as Defendant's delays, a modification to the current Scheduling Order is not only proper, but is necessary to avoid severe prejudice to Plaintiffs that is the direct result of Defendant's actions.

Dated: August 28, 2012         Respectfully submitted,

For the Plaintiffs:            /s/ Stephen M. Ankrom
                                        Robert L. Powley (admitted *pro hac vice*)
                                        James M. Gibson (admitted *pro hac vice*)
                                        Stephen M. Ankrom (admitted *pro hac vice*)
                                        POWLEY & GIBSON, P.C.

                                        *Counsel for Plaintiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited*

                                        Dennis G. Martin, Esq.
                                        Willmore F. Holbrow, III, Esq.
                                        Peter B. Bromaghim, Esq.

1 | BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN LLP

*Local Counsel for Plaintiffs*