MESEREAU & YU, LLP
Thomas A. Mesereau, Jr. (SBN 91182)
Email: mesereau@mesereauyu.com
Susan C. Yu (SBN 195640)
Email: yu@mesereauyu.com
10390 Santa Monica Blvd., Suite 220
Los Angeles, CA, 90025
Telephone: (310) 789-1177
Facsimile: (310) 861-1007

Attorneys for Defendant
and Counter-Claimant
PLAINS ALL AMERICAN PIPELINE, L.P.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENERGY INTELLIGENCE GROUP, INC. and ENERGY INTELLIGENCE GROUP (UK) LIMITED<br><br>Plaintiffs,<br><br>v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P.<br><br>Defendant.<br>_____<br>PLAINS ALL AMERICAN PIPELINE, L.P.,<br><br>Counter-Claimant,<br><br>v.<br><br>ENERGY INTELLIGENCE GROUP, INC. and ENERGY INTELLIGENCE GROUP (UK) LIMITED.<br><br>Counter-Defendants. | Case No.  CV 11-10556 PA (SSx)<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR AN ORDER COMPELLING DEFENDANT TO COMPLY WITH F.R.C.P. 34(B)(2)(E)(I)**<br><br>**(L.R. 7-19)**<br><br>DATE: n/a<br>TIME: n/a<br>PLACE: Courtroom 23<br>JUDGE: Hon. Suzanne H. Segal<br>Discovery cutoff date: 9/24/12<br>Pretrial Conf. date: 11/2/12<br>Trial date: 12/4/12<br><br>[SUPPORTING DECLARATION OF SUSAN C. YU FILED CONCURRENTLY HEREWITH] |

---

DEFENDANT'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR AN ORDER
COMPELLING DEFENDANT TO COMPLY WITH F.R.C.P. 34(B)(2)(E)(I)

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.**

**INTRODUCTION**

Defendant respectfully requests that the Court deny Plaintiffs' *Ex Parte* Application ("Ex Parte") because it (1) lacks merit and (2) is brought in bad faith.

**II.**

**FACTS**

On Friday, August 31, 2012, Defendant's counsel hand-delivered to Plaintiffs' local counsel in Los Angeles a CD and an external hard drive containing 708,325 pages in TIFF format, bearing Bates Nos. PAA00000001-PAA00708325. Defendant's counsel did so after explaining to Plaintiffs' counsel by telephone at approximately 11:00 a.m. that morning that the balance of the production in TIFF would arrive in Los Angeles from Houston the next day, i.e., Saturday, September 1, 2012. Defendant's counsel also explained that the load files would arrive in Los Angeles on Wednesday September 5, 2012 (i.e., two days after 9/3/12 Labor Day) because Defendant needed two full days (i.e., Friday, 8/31/12, and Tuesday, 9/4/12) to download the load files. I explained that Defendant started to export the load files on 8/31/12 after the clawback Order (Dkt. 93) was signed on 8/30/12. (Yu Decl., ¶ 2, **Exhibits 1 and 2.**)

On Saturday, September 1, 2012, Defendant delivered to Plaintiffs' primary counsel in New York by Federal Express the balance of the production totaling approximately 431,436 pages in TIFF format, bearing Bates Nos. PAA00708326-PAA01139761. (Yu Decl., ¶ 3, **Exhibit 3.**)

-1-
DEFENDANT'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR AN ORDER
COMPELLING DEFENDANT TO COMPLY WITH F.R.C.P. 34(B)(2)(E)(I)

1    On Wednesday, September 5, 2012, Defendant hand-delivered to
2 Plaintiffs' local counsel in Los Angeles a CD containing full and
3 complete load files for the TIFF Nos. PAA00000001- PAA01139761.  (Yu
4 Decl., ¶ 4, **Exhibit 4.**)
5    On September 5, 2012, Plaintiffs' counsel telephoned
6 Defendants' counsel, giving notice that Plaintiffs would be seeking
7 *Ex Parte* relief to compel Defendant to organize the TIFF and the
8 accompanying load files in accordance with Plaintiffs' document
9 demand numbers.  (Yu Decl., ¶ 5.)
10   Defendant's counsel told Plaintiffs' counsel that Defendant did
11 not understand Plaintiffs' reasoning for this request because the
12 purpose of producing TIFF and accompanying load files (i.e.,
13 metadata) was to enable the Plaintiffs to load, organize, and sort
14 any way they want on any database, such as Summation.  (Yu Decl., ¶
15 6.)
16   Plaintiffs' counsel replied that Defendant was required to
17 label the TIFF and load files with the responsive document demand
18 number/numbers.  Defendant's counsel was dumbfounded because there
19 was no way to do that with TIFF and load files.  (Yu Decl., ¶ 7.)
20   Plaintiffs' counsel complained that Plaintiffs could not
21 determine what was contained in the approximately 1.2 million pages
22 of TIFF and load file production.  (Yu Decl., ¶ 8.)
23   Defendant's counsel explained that this was a very simple case
24 involving whether Defendant's administrative assistant, the only
25 person to whom Plaintiffs emailed the Oil Daily newspaper, was
26 authorized to distribute the Oil Daily newspaper to others in the
27 company.  (Yu Decl., ¶ 9.)
28

1   Defendant's counsel explained that since Plaintiffs claimed
2  that Defendant's administrative assistant was not authorized to
3  forward the Oil Daily email to others in the company, Defendant
4  searched for and produced to Plaintiffs all ESI documents relating
5  to Oil Daily, Plaintiffs, and all third-party documents defined in
6  the Court's August 8, 2012 Order (Dkt. 79), as well as all emails
7  which the administrative assistant received from Plaintiffs and
8  forwarded to others in the company and all emails received and
9  forwarded (if any) by others in the company.  (Yu Decl., ¶ 9.)
10   Defendant's counsel explained that virtually all of the
11 1,139,761 TIFF pages represented such ESI documents and emails with
12 the attached Oil Daily newspapers for the 3 year period, i.e.,
13 January 1, 2009 – December 2011 for approximately 80- 85 people.
14 (Yu Decl., ¶ 10.)
15   Defendant's counsel reminded Plaintiffs' counsel that all ESI
16 prior to January 1, 2009 were stored on inaccessible backup tapes.
17 Defendant's counsel also reminded Plaintiffs' counsel that all ESI
18 on the three administrative assistants' local drives were already
19 produced.  Thus, the only remaining production that was due on
20 8/31/12 was the ESI on Defendant's company-wide server for January
21 1, 2009 – December 2011.  (Yu Decl., ¶ 10.)
22   Defendant's counsel explained that each Oil Daily email which
23 Plaintiffs sent to Defendant's administrative assistant yielded
24 approximately 21 pages (i.e., 1 page for the email cover plus
25 approximately 16-20 pages for the attached double-sided Oil Daily
26 newspaper).  (Yu Decl., ¶ 11.)
27   Defendant's counsel explained that, using the 20 as a rough
28 number for each email (i.e., 1 page for the email cover and 19 pages

-3-

1
2  for the newspaper), and using 250 as a rough number for the number
3  of times Plaintiffs sent the Oil Daily to the administrative
4  assistant (i.e., 20-22 emails per month x 12 months = 250),
5  Defendant's administrative assistant received approximately 15,000
6  pages in 3 years (i.e., 20 x 250 x 3 = 750).  (Yu Decl., ¶ 11.)
7      Multiplying 15,000 times 80 or so employees to whom the
8  administrative assistant sent the email would yield approximately
9  1,200,000 pages.  (Yu Decl., ¶ 11.)
10     Defendant's counsel explained that there may be other ESI that
11 may have been picked up during the search, which Defendant did not
12 have enough time to exclude by the August 31, 2012 deadline.
13 Defendant's counsel explained that the TIFF and load files would
14 enable Plaintiffs to load and sort any way they wanted.  (Yu Decl.,
15 ¶ 12.)
16     Plaintiffs' counsel, however, insisted that Defendant was
17 required to label the TIFF and load files and that Plaintiffs would
18 seek Ex Parte Relief.  (Yu Decl., ¶ 12.)

### III.

### ARGUMENT

**A.   Plaintiffs' Ex Parte Application Lacks Merit.**

22     Defendant is not aware of any Rule or authority requiring the
23 Defendant to label each TIFF and load file with document demand
24 number or provide an index to the TIFF and load file production.
25     Federal Rule of Civil Procedure 34(b)(2)(E)(i), too, does not
26 require Defendant to undertake such a burdensome task.
27     Indeed, Defendant understood that the purpose of producing ESI
28 in TIFF with the accompanying load files (which Plaintiffs

-4-

1
2 specifically requested) was to enable Plaintiffs to freely and
3 readily sort, organize, search, and find records on a database, such
4 as Summation.
5    If, for the sake of argument, it was possible to label each
6 TIFF page and load file with Plaintiffs' document demand number –
7 which it is not – then what is the purpose for producing ESI in TIFF
8 with the load files?  Plaintiffs' demand is unreasonable.
9    Plaintiffs' demand that Defendant must provide an index to the
10 TIFF and load file production is likewise unreasonable.
11    Rule 34 imposes no such requirement, and Defendant should not
12 be required to undertake such a burdensome and oppressive task.
13    The *Ex Parte* should be denied.
14 **B.   Plaintiffs' Ex Parte Application Is Brought In Bad Faith.**
15    Plaintiffs have repeatedly obstructed Defendant's efforts to
16 move this case along and prepare for trial.  (Yu Decl., ¶ 13.)
17    Defendant's Court-Ordered depositions of Plaintiffs' managing
18 agents and non-managing agents, as well as Defendant's duly-noticed
19 depositions of Plaintiffs' Rule 30(b)(6) designees, will commence in
20 just three (3) business days from today (i.e., September 11, 12, 13,
21 14, 17, 19, 20, 21, 2012).  (Yu Decl., ¶ 13.)
22    Thus, seeking this unreasonable *Ex Parte* request on the eve of
23 these depositions can only be interpreted as an attempt to distract
24 and harass Defendant.
25    The *Ex Parte* should be denied.
26 //
27 //
28

-5-
DEFENDANT'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR AN ORDER
COMPELLING DEFENDANT TO COMPLY WITH F.R.C.P. 34(B)(2)(E)(I)

## IV.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Ex Parte Application.

Respectfully Submitted,

MESEREAU & YU, LLP

Dated: September 6, 2012      By:   /s/ Susan C. Yu
                                    SUSAN C. YU
                                    Attorneys for Defendant and
                                    Counter-Claimant
                                    PLAINS ALL AMERICAN PIPELINE, L.P.

-6-

DEFENDANT'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR AN ORDER COMPELLING DEFENDANT TO COMPLY WITH F.R.C.P. 34(B)(2)(E)(I)