1             UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3         HONORABLE PERCY ANDERSON, JUDGE PRESIDING

4    ENERGY INTELLIGENCE GROUP, INC.,   )
                                        )
5                                       )
                                        )
6                     Plaintiff,        )
                                        )
7                                       )
                                        )
8           Vs.                         )   No. CV 11-10556 PA
                                        )
9                                       )
                                        )
10   PLAINS ALL AMERICAN PIPELINE LP,   )
                                        )
11                                      )
                                        )
12                    Defendant.        )
                                        )
13   _____ )

14

15

16      REPORTER'S TRANSCRIPT OF PRETRIAL CONFERENCE

17              LOS ANGELES, CALIFORNIA

18      TUESDAY, NOVEMBER 13, 2012; 2:37 P.M.

19

20

21          LEANDRA AMBER, CSR 12070, RPR
        OFFICIAL U.S. DISTRICT COURT REPORTER
22          312 NORTH SPRING STREET, # 408
            LOS ANGELES, CALIFORNIA 90012
23              www.leandraamber.com
                  (213) 894-6603
24

25

1                    **A P P E A R A N C E S**

2

3   **IN BEHALF OF THE PLAINTIFF,**
    **ENERGY INTELLIGENCE GROUP,**
4   **INC.:**
                              POWLEY GIBSON
5                             BY:  ROBERT L. POWLEY, ESQ.
                                   STEPHEN ANKROM, ESQ.
6                             304 HUDSON STREET
                              2ND FLOOR
7                             NEW YORK, NY 10013
                              (212) 226-5054
8                             rlpowley@powleygibson.com
                              smankrom@powleygibson.com
9

10
    **IN BEHALF OF THE DEFENDANT,**
11  **PLAINS ALL AMERICAN PIPELINE**
    **LP:**
12                            MESEREAU & YU
                              BY:  SUSAN C. YU, ESQ.
13                            10390 SANTA MONICA
                              BOULEVARD
14                            SUITE 220
                              LOS ANGELES, CA 90025
15                            (310) 789-1177
                              yu@mesereauyu.com
16

17

18

19

20

21

22

23

24

25

1                              **I N D E X**

2                                                                    **PAGE**

3

4    **HEARING:**   PRETRIAL CONFERENCE                              4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1            LOS ANGELES, CALIFORNIA; TUESDAY, NOVEMBER 13, 2012

 2                            2:37 P.M.

 3                             -o0o-

 4

 5            THE CLERK:  Calling case number CV 11-10556, energy

 6    Intelligence Group, Inc., et al., versus Plains All American

 7    Pipeline.

 8            Counsel, please state your appearances.

 9            MR. YU:  Good morning.  Sorry, good afternoon, your

10    Honor.

11            Susan Yu appearing on behalf of defendant and

12    counter-claimant, Plains All American Pipeline LP.

13            MR. POWLEY:  Good afternoon, your Honor.

14            Robert Powley appearing on behalf of defendant --

15    sorry -- plaintiffs, Energy Intelligence Group Incorporated

16    and Energy Intelligence Group UK Unlimited.

17            MR. ANKROM:  Stephen Ankrom also for plaintiffs

18    EIG, Energy Intelligence Group.

19            THE COURT:  Who is lead trial counsel for the

20    plaintiffs?

21            MR. POWLEY:  Your Honor, Robert Powley.

22            I am.

23            THE COURT:  Okay.  And who is lead trial counsel

24    for the defendant?

25            MR. YU:  I am, your Honor, Susan Yu.
```

```
 1              THE COURT:  Uh-huh.  Anybody else going to be
 2    participating in this trial with you?
 3              MR. YU:  Yes, your Honor.  My law partner Tom
 4    Mesereau.
 5              THE COURT:  Where is he?
 6              MR. YU:  He had a conflict because of the change in
 7    pretrial conference dates.
 8              THE COURT:  Uh-huh.
 9              MR. YU:  He's covering the other matter.
10              THE COURT:  Which other matter is that?
11              MR. YU:  He was up in San Francisco.  There's a
12    hearing.  There is a public corruption trial.
13              THE COURT:  I'm sorry?
14              MR. YU:  I'm sorry.  There's a hearing in San
15    Francisco he had to cover.  We had a preliminary hearing up
16    in San Francisco in Northern California.
17              THE COURT:  A preliminary hearing?
18              MR. YU:  Yes, your Honor.
19              THE COURT:  What kind of case is that?
20              MR. YU:  It's a public corruption arising out of
21    Oakland, East Bay.
22              THE COURT:  Uh-huh.  I'm not exactly sure what's
23    going on in this case, but there seems to be very little that
24    you people can agree upon.  So this case really has not been
25    pre-tried very well.
```

1            How many exhibits are you going to be offering --

2    putting in evidence in this case?

3            MR. POWLEY:  In this case at this time, your Honor,

4    I believe the list includes approximately 520 exhibits.

5            THE COURT:  Yes, I know what the list includes.

6    How many of those are going to be offered in your case in

7    chief?

8            MR. POWLEY:  In our case in chief, approximately he

9    I would say 100 to 120.

10           THE COURT:  Uh-huh.  And what are the other 400

11   exhibits there for -- on that list for?

12           MR. POWLEY:  Your Honor, we may actually be

13   producing more than that.

14           THE COURT:  Producing?

15           MR. POWLEY:  Excuse me.  Offering more than that in

16   evidence.

17           THE COURT:  How long do you think this case is

18   going to last?

19           MR. POWLEY:  At this time we estimated

20   approximately five days.

21           THE COURT:  How long is your case in chief going to

22   last?

23           MR. POWLEY:  We believe, your Honor, five days.

24           THE COURT:  Never going to happen.  This is not a

25   five-day trial.  Trust me.  So -- and what's at issue in this

1   case?

2          MR. POWLEY:  It's a copyright infringement action,

3   your Honor.

4          THE COURT:  Uh-huh.  Well, and what was -- what's

5   the -- what's the copyright that was infringed?

6          MR. POWLEY:  Your Honor, the plaintiffs are a

7   publisher of publications in oil and gas industry.  They've

8   been publishing for approximately six decades.

9          THE COURT:  Yes.  Fine.

10          MR. POWLEY:  And they currently -- because the

11   infringement occurs behind their Internet, there's --

12          THE COURT:  Excuse me, sir.  What document was

13   infringed here?

14          MR. POWLEY:  October 14, 2011, issue of *Oil Daily*

15   publication.

16          THE COURT:  Single document?

17          MR. POWLEY:  Yes, your Honor.

18          THE COURT:  Right?

19          MR. POWLEY:  Yes, your Honor.

20          THE COURT:  Why is that going to take you five days

21   for one document?  How many witnesses are you calling?

22          MR. POWLEY:  At this time I believe we anticipate

23   approximately seven.

24          THE COURT:  Seven witnesses; five days?  No.

25   That's not going to happen.  Okay.

```
 1              MR. POWLEY:  Okay.

 2              THE COURT:  Five witnesses -- that's a day, two

 3      days tops.  As I understand it, the facts are you publish a

 4      publication called the Oil Daily; right?

 5              MR. POWLEY:  Correct, your Honor.

 6              THE COURT:  And this was sent to a person for the

 7      defendant, and then they circulated it.

 8              MR. POWLEY:  Correct, your Honor.

 9              THE COURT:  Okay.  And that's -- that's the

10      infringing activity?

11              MR. POWLEY:  Correct, your Honor.

12              THE COURT:  And how long is your case going to be?

13              MR. YU:  It should not take more than two days.

14              THE COURT:  How many witnesses are you calling?

15              MR. YU:  15, your Honor.  A lot of them are short.

16              THE COURT:  Let's go through who those people are

17      and what they have to offer in this trial.

18              MR. YU:  Yes, your Honor.

19              THE COURT:  So who is first?

20              MR. YU:  The first one is plaintiff's witness who

21      is a CEO by the name of Tom Wallin, W-a-l-l-i-n.

22              THE COURT:  Okay.  So you want to call Mr. Wallin.

23              MR. YU:  Yes, your Honor.

24              THE COURT:  And what are you going to talk to

25      Mr. Wallin about?
```

1          MR. YU:  We're going to get into the *Oil Daily*

2     newspaper background, the subscription history, the content,

3     practices and procedures, plaintiff's operation of *Oil Daily*.

4          THE COURT:  Are you planning on calling Mr. Wallin?

5          MR. POWLEY:  Yes, your Honor, we are.

6          THE COURT:  You don't think he's going to cover

7     some of that?

8          MR. YU:  So long as he is called, we'll cover it on

9     cross-examination, your Honor.

10          THE COURT:  I'm sorry.

11          MR. YU:  If Mr. Wallin does appear --

12          THE COURT:  He is appearing.  They've just said

13     that.

14          MR. YU:  Okay.  Because --

15          THE COURT:  So you're not going to need Mr. Wallin,

16     are you?

17          MR. YU:  We can cover that in cross-examination,

18     your Honor.

19          THE COURT:  Okay.  Who is next?

20          MR. YU:  Mr. John Hitchcock.

21          THE COURT:  By the way, when did you guys meet and

22     talk about this trial?

23          MR. YU:  We met a while ago.  I met with

24     Mr. Ankrom, I did, by phone.

25          THE COURT:  You know, this looks like some people

1    got together and sort of went through the motions to get

2    these pretrial documents done and to talk about this case.

3              That's not good enough.  Okay?  Because the simple

4    fact that you don't know that they were calling Mr. Wallin

5    suggests --

6              MR. YU:  Um --

7              THE COURT:  Please don't interrupt me.

8              MR. YU:  Yes, your Honor.

9              THE COURT:  -- suggests to me that you people

10   aren't really taking this very seriously.  So I'm going to

11   have you guys do that meeting again in person, and I want

12   lead trial counsel there so that we can get all this sorted

13   out.

14             Now, who is your next witness?

15             MR. YU:  With that in mind, your Honor, I'll just

16   go straight to our witnesses.  And the only reason why I

17   mentioned plaintiff's witnesses was because initially

18   plaintiffs represented that they were going to bring

19   everybody, and then they changed their minds about one

20   witness.  So we were concerned that that could happen.  That

21   was the only reason.

22             THE COURT:  We'll get through that.  Okay.  Let's

23   talk about your witnesses for a moment.

24             MR. YU:  Yes, your Honor.

25             THE COURT:  Who are they?

```
 1              MR. YU:  It will be Miss Araceli Gudino.

 2              THE COURT:  Just a moment.  Is she on this joint

 3    witness trial estimate form?

 4              MR. YU:  Yes, your Honor.  She is number six.

 5              THE COURT:  What page is she on?

 6              MR. YU:  Number six, Page 3 of 8.  She recently got

 7    married.  So her name has been added to Orozco.  I apologize,

 8    your Honor.  So it's Miss Araceli Gudino Orozco.

 9              THE COURT:  Who does she work for?

10              MR. YU:  Plains All American, defendant, your

11    Honor.

12              THE COURT:  And what is she going to talk about?

13              MR. YU:  She's the one that received the renewal

14    invoice.  So she'll talk about the fact that the plaintiffs

15    sent a renewal invoice to her.

16              THE COURT:  Uh-huh.

17              MR. YU:  She renewed it, and then she was the one

18    at the end of some time in October received another renewal

19    invoice from plaintiffs.  She was the one also who contacted

20    the plaintiffs and stated that -- "Is there another option

21    other than getting e-mail paper?"  "We would like to get the

22    *Oil Daily* paper some other way because there are people who

23    are complaining about cluttering the computer."  So that's

24    when she inquired about the possibility of exploring other

25    options.
```

UNITED STATES DISTRICT COURT

1           Plaintiff's representative then contacted her and

2      said, "We're looking into pricing."  "We'll look into it."

3      "We'll look into it."  So the dialog and communications go

4      back and forth with her.  The next thing you know is we get

5      sued.

6           THE COURT:  Okay.  And how long is she going to be

7      on the stand?

8           MR. YU:  About an hour in our case in chief.

9           THE COURT:  Are you calling her?

10          MR. POWLEY:  Yes, we are, your Honor.

11          THE COURT:  Okay.  Who else?

12          MR. YU:  Then it will be Mr. Steven Caddell.  It's

13     Miss Araceli Gudino's boss.

14          THE COURT:  I'm sorry.  What page is --

15          MR. YU:  Yes, your Honor.  He is on the same page.

16     He's number five, Page 3 of 8.

17          THE COURT:  Okay.  What's he going to talk about?

18          MR. YU:  He's going to talk about the fact that he

19     authorized the invoice, the payment of the invoice because

20     that's the protocol.

21          THE COURT:  Okay.  So he's going to say I

22     authorized this invoice and --

23          MR. YU:  We can even have that testimony come from

24     her.  He's not really relevant.  We can take him off, your

25     Honor.  So she can do that.

```
 1              THE COURT:  Okay.  Who is next?
 2         MR. YU:  Then we have Mr. Bryan Joyce.
 3         THE COURT:  What's he going to talk about?
 4         MR. YU:  They also want him as well.
 5         Mr. Bryan Joyce is the only witness we have who has
 6    been receiving the Oil Daily from inception.  So he will talk
 7    about the original operating invoice that the way he
 8    understood and the company understood.  And that was that was
 9    a company subscription all along.  All we did was renew every
10    year.  That's all we did -- just a one-page invoice.
11              THE COURT:  How long is he going to be?
12         MR. YU:  No more than an hour, one hour max, half
13    an hour to an hour.
14              THE COURT:  Who is next?
15         MR. YU:  We have Miss Sonya Jones.
16              THE COURT:  Uh-huh.
17         MR. YU:  She's another administrative assistant who
18    preceded Miss Araceli Gudino.
19              THE COURT:  What's she going to say?
20         MR. YU:  She's going to say the same thing -- that
21    she received the invoice and she forwarded the invoice.  And
22    she also was the one who was receiving the Oil Daily every
23    day from plaintiffs, and all she did was forward.
24              And her understanding of the subscription was it
25    was a company subscription for all employees to read, not
```

```
 1    just person.
 2              THE COURT:  All right.  Well, you're already going
 3    to have somebody that is going to say that; right?
 4              MR. YU:  Miss Gudino knows about the subscription
 5    from her tenure.  So in order for the jury to understand the
 6    entire party's relationship -- and Miss Sonya Jones could be
 7    in and out in a half an hour.
 8              THE COURT:  Who is next?
 9              MR. YU:  It would be Miss Christy Sherman.  She's
10    another lady who preceded Miss --
11              THE COURT:  Is that Cindy?
12              MR. YU:  Yes.  Actually her name is Christy, but
13    plaintiffs listed her as Cindy, but it's the same person,
14    your Honor.
15              THE COURT:  Okay.
16              MR. YU:  And she's another lady who received the
17    invoice from -- renewal invoice from plaintiffs.  And the
18    plaintiffs will say, "Can you please renew?"  "Please renew
19    today," and, "your subscription is going to expire."  And she
20    was the one also who receiving the Oil Daily newspaper.  And
21    all she did was forward her, saying also during her tenure
22    that it was a company subscription.
23              THE COURT:  And she's going to say the same thing
24    as some of the other witnesses?
25              MR. YU:  Yes, your Honor.  It will cover a
```

```
 1    different period.
 2              THE COURT:  Uh-huh.  Who's next?
 3              MR. YU:  Then we have Mr. Barry Peters, and he's a
 4    manager of records.  He's an IT person.  He's going to
 5    testify about this one e-mail that Miss Gudino never opened,
 6    and it's on the company's server that shows she never opened
 7    the e-mail.
 8              THE COURT:  The e-mail.
 9              MR. YU:  If I may, your Honor.  The October 14th
10    e-mail that she received, the Oil Daily paper -- she
11    forwarded it.
12              THE COURT:  Uh-huh.
13              MR. YU:  And then the plaintiff's representatives
14    told her, "You can forward that e-mail to me so that you will
15    have a list of all the people you're forwarding so that I can
16    get the pricing for you."
17              THE COURT:  Uh-huh.
18              MR. YU:  She said, "No problem."  She forwarded
19    that e-mail to them, and then they said, "I'll look into
20    pricing for you."  "I'll look into it."  "I'll get back to
21    you."
22              The dialog goes back and forth, and then we get
23    sued.
24              THE COURT:  And then you get sued.
25              MR. YU:  Yes, your Honor.
```

1           There is apparently an e-mail -- plaintiffs later

2    brought this up -- October 19th e-mail which she never even

3    saw because it came from someone she didn't even know who it

4    was.  So the company -- she never opened that e-mail.

5           THE COURT:  Uh-huh.

6           MR. YU:  And there's proof on the company server --

7           THE COURT:  Showing that she never opened the

8    e-mail.

9           MR. YU:  Exactly.

10          She didn't open it until sometime in February or

11   March after the lawsuit when she was in Mexico on her

12   vacation.  When she got back with the lawsuit, she thought

13   "What happened here?"  "Let me figure out what happened."  "I

14   thought they were going to get back to me about the online

15   pricing."  "Why did they just go and sue us?"

16          So there was an e-mail, and they're saying that

17   that e-mail, October 19th e-mail, says:  "Don't forward

18   anymore."

19          And she continued to forward until the day that we

20   got sued.  And so they're saying that you should not have

21   continued to forward and therefore that e-mail -- they're

22   saying that was a warning which she never saw.

23          We never got any other notice from plaintiff.

24          THE COURT:  And I'm sorry.  That person is who?

25          MR. YU:  He is an IT -- a manager of records.

```
 1    He --
 2              THE COURT:  Excuse me.  Who got the e-mail --
 3              MR. YU:  Miss --
 4              THE COURT:  -- who didn't open it?  Who was the
 5    e-mail --
 6              MR. YU:  Araceli Gudino.
 7              THE COURT:  Okay.  And then the IT guy is going to
 8    say I looked at our -- based on our computer, we've
 9    determined that that e-mail was -- she never opened it.
10              MR. YU:  Yes, your Honor.  And to the extent that
11    the jury has any questions about that -- because plaintiffs
12    challenge whether she actually opened it or not opened it.
13    And that came up during her deposition, and they asked for
14    that e-mail.  I mean, the proof that she never saw it, and we
15    produced that proof showing that she never opened it.
16              THE COURT:  Okay.  Who else?
17              MR. YU:  Other than all the other witnesses, I
18    think that pretty much covers it.  George King is plaintiff's
19    witness, and he is the one that plaintiff initially said he
20    was going to come in, and now he's not.  So George King will
21    be part of our case in chief as well by way of deposition
22    video.
23              THE COURT:  Sorry.  Who is Mr. King?
24              MR. YU:  George King is their CFO, your Honor, is
25    plaintiff's CFO and he was deposed.
```

```
 1              THE COURT:  And so you're going to be -- you're not
 2    going to be calling?
 3              MR. POWLEY:  Your Honor, it -- it depends on
 4    whether there's a motion in limine on the subject matter this
 5    he want to depose him on.  As we're planning now, we're not
 6    planning on calling him to appear at the hearing.
 7              THE COURT:  Okay.  What do you want to elicit from
 8    him?
 9              MR. YU:  Mr. King covered a lot of the areas for
10    fair use defense if this case goes that far because we have a
11    counterclaim for declaratory relief.
12              THE COURT:  What is it that you want to cover --
13              MR. YU:  We want to cover --
14              THE COURT:  -- with Mr. King.
15              MR. YU:  -- with Mr. King on -- he was produced as
16    a 34(b)(6) and 30(b)(1) witness with respect to the
17    plaintiff's operations and all of the subscriptions history
18    involved.  So to the extent then that he's been with the
19    company a long time --
20              THE COURT:  Are you going to -- are you going to be
21    seeking to elicit from him prior lawsuits that they filed?
22              MR. YU:  To the extent that he monitored other
23    lawsuits --
24              THE COURT:  Is that a yes?
25              MR. YU:  Yes, your Honor.
```

```
 1                 THE COURT:  Okay.

 2                 MR. YU:  We don't have to cover those lawsuits, but

 3       he did -- those are his responsibilities.

 4                 THE COURT:  Excuse me.

 5                 MR. YU:  Yes, your Honor.

 6                 THE COURT:  Why is that relevant?

 7                 MR. YU:  Because what came out in the deposition,

 8       your Honor, was that he was impeached by another witness who

 9       testified that this company circulated a memo saying to their

10       salespeople, "If you go out there and identify customers and

11       if you lead those customers into a lawsuit -- if we sue them,

12       we will give each of you $5,000 for each lawsuit."  That came

13       out.

14                 And he prepared at his deposition, brought in a

15       list of identified cases where he said those -- which

16       included administrative assistant title of Miss Gudino that

17       they were targeting.  And he said that there was another --

18       his assistant prepared that list for him but that he didn't

19       know the content.

20                 She was deposed, and she said that she explained

21       all that to Mr. King.  So she impeaches him.  She also --

22       then there's another representative -- said this was

23       something that came out so long as I can identify a lawsuit.

24       And that's why -- if I can identify a lawsuit and if that

25       lawsuit leads into actual filing, then I'll get a $5,000 --
```

1    he said he got a -- $5,000 for in essence what we are going

2    to -- what appears to be a setting up Miss Gudino.  He got

3    $5,000 for that.  He also got another $5,000 for creating

4    another lawsuit.

5            And to the extent -- there's no reason why all

6    these lawsuits, your Honor -- they're marking everything

7    confidential, and that's another issue that we're going to

8    have.

9            We didn't know that, you know, the extent of

10   confidentiality that was going to be involved.  We didn't

11   know why they wanted to mark depositions.  Everything --

12   there's nothing confidential in this case, but they want

13   to -- they want to mark all the confidential -- I mean, in

14   deposition testimony confidential because we now know why

15   because their witnesses are saying we get paid if we sue some

16   of these customers.

17           THE COURT:  Okay.  Is that true?

18           MR. POWLEY:  It's not true, your Honor.

19   Mr. King --

20           THE COURT:  No, I -- is the deposition testimony --

21   is that a fair --

22           MR. POWLEY:  No.

23           THE COURT:  -- reading of the deposition testimony?

24           MR. POWLEY:  No.  I think it's an inaccurate

25   reading of the testimony.

1          THE COURT:  What did he say?

2          MR. POWLEY:  At the time he was offered under the

3     30(b)(6) to the cost and --

4          THE COURT:  Sir --

5          MR. POWLEY:  -- expenses of litigations.

6          THE COURT:  Sir.  Is there testimony in this record

7     that salespeople were offered money if there was a lawsuit

8     filed with respect to some subscription that was sold?

9          MR. POWLEY:  There was a program, yes, your Honor;

10    but Mr. King didn't testify to that.

11         THE COURT:  Okay.  But there was a program that if

12    a lawsuit arose as a result of a subscription, that the

13    salespeople would be entitled to a $5,000 bonus?

14         MR. POWLEY:  There was a policy related to that.

15         THE COURT:  Okay.

16         MR. POWLEY:  But, your Honor, if I could -- much of

17    the testimony -- much of the statement that was just elicited

18    is highly inaccurate from what was testified --

19         THE COURT:  Well, I guess with that deposition

20    testimony we'll square that away as to what was accurate and

21    what wasn't.

22         MR. POWLEY:  Absolutely it will, but your question

23    related to what Mr. King testified to.  And I just wanted

24    to -- the Court wanted to learn further -- clarify some of

25    that.  But if the Court's -- has no longer -- no further

1    questions, we can address that in the future.

2          THE COURT:  Well, here's my view on what's happened

3    here thus far.  I don't know who participated in this --

4    trying to get this case ready to go, but from now on it's

5    going to be lead trial counsel.

6          So we're going to go back to the jury -- we're

7    going to start over.  You're going to go to the jury

8    instructions.  There is no -- well, there are too many

9    disputed jury instructions.  I take it that both sides have

10   tried cases before.  You're going to need to resolve those

11   jury instructions, a good many of them.

12         Because if you aren't, then lead trial counsel is

13   going to be in my jury room spending time here working

14   through those instructions.  So I'll leave it up to you to

15   try to make some progress, and the same thing with respect to

16   these exhibits and these witnesses.

17         You need to sit down and start focusing on who is

18   going to be called, what they're going to be testifying to,

19   because we're not going to have a parade of witnesses talking

20   about the same things.

21         And to the extent that you're both going to be

22   calling witnesses, you need to figure that out.  And whether

23   we can have the witness come and be put on the stand once or

24   whether we need to have him come back in your respective

25   cases in chief.  So --

```
1              And anybody who plans on participating in this
2    trial needs to be here unless they're excused.
3              So how is the 23rd for a further pretrial
4    conference?
5              Where are you coming from?
6              MR. YU:  Los Angeles.
7              THE COURT:  Okay.  So you're local.
8              MR. YU:  Yes, your Honor.
9              MR. POWLEY:  New York, your Honor.
10             THE COURT:  Okay.  So how is the 23rd?
11             MR. YU:  That works for me.
12             THE COURT:  What are your damages in this case?
13             MR. POWLEY:  Right now the maximum statutory
14   damages for the one issue is --
15             THE COURT:  I'm sorry?
16             MR. POWLEY:  The maximum statutory damages for the
17   one issue is $150,000.
18             THE COURT:  Is there a range of damages that
19   you're --
20             MR. POWLEY:  Yeah.  Right.  The lowest -- the range
21   starts at $750 to $30,000 for nonwillful infringement, and
22   from $30,000 to $150,000 for willful infringement.
23             THE COURT:  Uh-huh.  Have you filed other -- has
24   your client filed other lawsuits --
25             MR. POWLEY:  Yes, sir, your Honor.
```

```
 1              THE COURT:  Excuse me.
 2              -- where somebody has -- they sent out an
 3    electronic form of this newsletter and then they've
 4    circulated it somebody circulated it, and then they've sued
 5    them as a result?
 6              MR. POWLEY:  Yes, your Honor.
 7              THE COURT:  Okay.  How many times have they done
 8    that?
 9              MR. POWLEY:  I believe there's approximately -- I'm
10    not certain -- approximately 25 cases.
11              THE COURT:  Over what period of time?
12              MR. POWLEY:  Starting in 2006.
13              THE COURT:  And then there was a program that your
14    client was -- that your client offered to the salespeople if
15    there were lawsuits filed?
16              MR. POWLEY:  Yes.  There were -- there was a
17    reimbursement for the salespeople who had lost sales
18    commissions as a result of the lawsuit and also to encourage
19    people to identify these issues when they were raised rather
20    than using them to try to negotiate other sales contracts
21    within the company.
22              The problem, your Honor, in this situation -- the
23    infringement that our publisher suffers occurs behind the
24    defendant's secure e-mail server.  There is no public
25    indication of what happens.
```

1          In this case, in fact, if Miss Araceli didn't reach

2    out and start corresponding in 2011 with our client, we would

3    have never known that they were taking the publication and

4    rather paying for individual subscriptions as they were

5    required to, circulating it to 81 people.  There is -- it's

6    impossible for us to know behind their internet secure

7    server.

8          THE COURT:  Uh-huh.

9          MR. POWLEY:  So at that time is the first time we

10   became ware of what occurred.  And that's problematic for any

11   publisher as times have changed especially in the late 80's

12   and 90's where this publication was originally sent to the

13   consumers by mail.  And due to the demand for greater

14   information and receiving that information more quickly, in

15   1999 --

16         THE COURT:  When it was circulated by -- I assume

17   it was originally circulated in hard copy.

18         MR. POWLEY:  Yes, your Honor.  If copying doesn't

19   occur, there's not a problem.  If a hard copy is taken and

20   routed, as would be the case for any publication, copies are

21   not being made.  So it's like a book in a library.  If the

22   library takes that publication and circulates it --

23         THE COURT:  So -- so when the -- when the -- if I

24   got a hard copy of your newsletter and I let my law clerks

25   read it, not a problem.

1          MR. POWLEY:  Not a problem because you're not

2     making a copy.

3          THE COURT:  Uh-huh.  And if there's an e-mail,

4     okay, and it's a little -- is the newsletter an attachment to

5     the e-mail?

6          MR. POWLEY:  Yes.  It's a PDF attachment that can

7     be printed and shared.

8          THE COURT:  Okay.  So it's a PDF, and your issue is

9     if I forward that e-mail, I've made a copy.

10         MR. POWLEY:  Correct, your Honor.  There's cases in

11    the Ninth Circuit that define that as infringement.

12         THE COURT:  Are you going to be offering any

13    deposition testimony by way of deposition?

14         MR. POWLEY:  At this point we don't plan to, your

15    Honor.  Everyone that we deposed -- they said would be made

16    available.

17         THE COURT:  Okay.  Are you planning on offering any

18    deposition testimony?

19         MR. YU:  All of our witnesses will be appearing

20    live, your Honor.

21         THE COURT:  Okay.

22         MR. YU:  But I'm not sure about Mr. King.  Counsel

23    just stated "all of their witnesses."  So I'm not sure about

24    Mr. King whether he's coming live.

25         THE COURT:  Okay.  Well, you guys meet and confer,

1    and you can work that out.

2           So I would like a revised joint statement regarding

3    the witnesses, time estimates, up-to-date description instead

4    of just copying and pasting the existing.  I'd also like it

5    revised jury instructions in the form that I asked for and a

6    revised pretrial exhibit stipulation.

7           Why did you list 500 exhibits if you're not going

8    to be offering them in your case in chief?

9           MR. POWLEY:  Your Honor, right now it's very

10   unclear what defendant's case is.  We have asked them in the

11   30(b)(6) deposition to speak to their facts --

12          THE COURT:  I have a pretty good idea of what their

13   case is going to be.

14          MR. POWLEY:  Well, I -- you know, it's an argument

15   that allegedly sometime in 1999 we -- they received a

16   subscription that was construed to the company --

17          THE COURT:  Let me ask you this.

18          MR. POWLEY:  Yes.

19          THE COURT:  So you've listed a bunch of exhibits

20   that you may want to do what with if she puts on her case?

21   Wouldn't you be offering those to impeach those witnesses?

22          MR. POWLEY:  Well, we would be.  The depo's would

23   be offered in part of our cross-examination, not necessarily

24   for impeachment to show --

25          THE COURT:  Well, they're not being offered to --

```
 1    those exhibits aren't being offered in your case in chief;

 2    right?

 3              MR. POWLEY:  No.  In our case in chief we're

 4    calling some of their witnesses to describe how --

 5              THE COURT:  I understand that.

 6              MR. POWLEY:  -- for publication.

 7              THE COURT:  Okay.  So I'm just now trying to figure

 8    out why you've got 500 exhibits.  So you take a look at those

 9    exhibits.

10              MR. POWLEY:  We will, your Honor.

11              THE COURT:  And make sure that these are only going

12    to be exhibits that are going to be offered in your case in

13    chief.

14              The rest of them I don't think need to be on your

15    list.  If you want to use them for impeachment, fine.

16              MR. POWLEY:  Okay, your Honor.  We will.

17              THE COURT:  And -- okay.  So let's see.  You're in

18    New York.

19              And you're in Los Angeles.

20              Well, you meet and confer and see how much progress

21    you're making because if you don't make a lot of progress,

22    you're going to be doing it in person here.  So I would urge

23    you to do that.  I will see everybody on the 23rd at 1:30.  I

24    would like these revised exhibits to me by, oh, how is Monday

25    the 19th?
```

```
 1            MR. POWLEY:  Yes, your Honor.  We're back before
 2    the Court on the 19th.  Would you like us to bring it with us
 3    at that time?
 4            THE COURT:  What are you here for on the 19th?
 5            MR. POWLEY:  We -- there's a second action filed in
 6    this matter, and there's a motion to consolidate based on
 7    that.  And then there's also a pretrial conference, our
 8    initial scheduling conference, on the 19th to go over the
 9    schedule.
10            THE COURT:  Uh-huh.  Why would I want to combine
11    those cases?
12            MR. POWLEY:  Why would you want to combine those
13    cases?
14            THE COURT:  Yes.
15            MR. POWLEY:  Because they involve the -- nearly
16    identical witnesses.
17            THE COURT:  Why didn't you -- when you filed this
18    lawsuit, you knew you were filing about one publication;
19    right?
20            MR. POWLEY:  Yes.
21            THE COURT:  You knew about the others?
22            MR. POWLEY:  We didn't know about the others.
23            THE COURT:  Oh, when did you find out about the
24    others?
25            MR. POWLEY:  Well, their document production, even
```

 1    though we served the document request in April, wasn't

 2    finally produced to August 31st and -- which was beyond the

 3    period for which we could add counts.

 4           We approached the other side to say, "We haven't

 5    gotten your documents to confirm the distribution.  Could we

 6    approach the Court to extend the deadline?"

 7           They said no.

 8           THE COURT:  Why did it take so long for you to --

 9    if you didn't get those documents, why didn't you file a

10    motion to compel?

11           MR. POWLEY:  We did, your Honor.

12           THE COURT:  You did?

13           MR. POWLEY:  We did before Judge Segal.

14           THE COURT:  And what did Judge Segal rule?

15           MR. POWLEY:  She ruled that the documents could be

16    produced August 31st which --

17           THE COURT:  When did you file your motion?  You

18    sent out the request sometime -- what? -- in April?

19           MR. POWLEY:  April.

20           THE COURT:  When did you file your motion?

21           MR. POWLEY:  I believe we filed the request I

22    believe in July, early July.

23           THE COURT:  Early July.

24           MR. POWLEY:  Yes.  We met and conferred and said

25    that we would have to move to compel if we couldn't get a

1    date --

2              THE COURT:  When was the case filed?

3              MR. POWLEY:  December 21, 2011, I believe.

4              THE COURT:  Case filed in December.  You sent out a

5    request for documents in July.

6              MR. POWLEY:  No request for documents in April.

7              THE COURT:  In April.

8              MR. POWLEY:  April.

9              THE COURT:  Some four to five months after the case

10   had been filed?

11             MR. POWLEY:  Yes.  And then the parties engaged in

12   a settlement conference in early June.

13             THE COURT:  Uh-huh.

14             MR. POWLEY:  And there was a hope that the case

15   could be resolved.

16             THE COURT:  Right.  And so you didn't do anything.

17             MR. POWLEY:  No.  We wrote down the -- I --

18   maybe -- tremendous amount of times trying to ask when we

19   could expect our documents, and they didn't begin looking for

20   documents, they told us, until after we had the settlement

21   conference.

22             THE COURT:  Uh-huh.

23             MR. POWLEY:  And then we moved -- we had met and

24   conferred to try to resolve it several times.  We got

25   promises that we would get other responses and supplemental

```
 1    production.  It didn't occur.

 2           Then we engaged in the process to do a motion to

 3    compel, which required preparing papers giving them time to

 4    respond, correcting it, and filing it.

 5           We did do that in early July was when they were --

 6    it was filed with the Court.

 7           THE COURT:  So three months went by before you got

 8    the motion on file?  Sent it out in April, and you file in

 9    July?

10           MR. POWLEY:  Yes.

11           THE COURT:  And when they produced those document,

12    it showed additional -- it's not aversion but --

13           MR. POWLEY:  Forwarding.

14           THE COURT:  I'm sorry?

15           MR. POWLEY:  Additional forwarding of other issues.

16           THE COURT:  Yes, other issues had been forwarded;

17    right?

18           MR. POWLEY:  Correct.

19           MR. YU:  Your Honor, may I respond?

20           THE COURT:  Not really.  You'll have an

21    opportunity.

22           MR. YU:  Okay.  Thank you.

23           THE COURT:  Okay.  So get those documents to me on

24    the 19th.  And we'll -- you're going to be here on the 19th.

25    We'll see you on the 19th, and then you'll be back here on
```

1    this case on the 23rd.

2           MR. POWLEY:  Yes, your Honor.

3           THE COURT:  Okay.  How many counts do you have in

4    the other case?

5           MR. POWLEY:  Approximately 3,084.

6           THE COURT:  I'm sorry?

7           MR. POWLEY:  3,080 approximately.

8           THE COURT:  3,080 what?

9           MR. POWLEY:  Counts.

10          THE COURT:  Counts.

11          MR. POWLEY:  Combined as one work, but there's

12   3,080 counts.  The work has been published daily, and it

13   turned out that they systematically, contrary to what the

14   description said, distributed the publication.

15          THE COURT:  When was the last time you tried a case

16   that had 3,000 counts on it?

17          MR. POWLEY:  Well, your Honor --

18          THE COURT:  When?

19          MR. POWLEY:  It's one count.

20          THE COURT:  When?

21          MR. POWLEY:  No, I haven't.

22          THE COURT:  Okay.  It's one count?

23          MR. POWLEY:  It's one count, and it the works are

24   grouped in to -- to -- as they're named all the works in the

25   exhibit, and the same language, the infringement of those

1    various works.

2              THE COURT:  Well, so what are the damages in that

3    case?

4              MR. POWLEY:  This -- each work is subject to the

5    same independent statutory damages of $750 to $150,000.

6              THE COURT:  Times three thousand?

7              MR. POWLEY:  Times three thousand.

8              THE COURT:  Okay.  Anything else?

9              MR. POWLEY:  No, your Honor, I don't have anything

10   else.

11             THE COURT:  Okay.  We'll see everybody --

12             MR. ANKROM:  Pardon me, your Honor.

13        Your orders state that the parties should submit

14   proposed voir dire questions in a joint statement of the case

15   today.  Should we submit that via ECF or in person right

16   here?

17             THE COURT:  No.  You can do that electronically.

18             MR. ANKROM:  Okay.  Thank you.

19             THE COURT:  Okay.  Thank you very much.

20             MR. POWLEY:  Thank you, your Honor.

21             MR. YU:  Thank you.

22             THE COURT:  I'm sorry.  Do you have any other

23   pending cases on behalf of your client that are currently

24   pending?

25             MR. POWLEY:  Yes, we do, your Honor.

```
 1                    THE COURT:  In this Court?

 2                    MR. POWLEY:  Not in this Court.

 3                    THE COURT:  Where are they pending at?

 4                    MR. POWLEY:  We have one penning in Texas.

 5                    THE COURT:  Uh-huh.

 6                    MR. POWLEY:  One in Louisiana, one in Chicago, one

 7    in New York I believe.

 8                    THE COURT:  Generally involve the same thing?

 9                    MR. POWLEY:  The --

10                    THE COURT:  The e-mail and people have circulated

11    the e-mail to other employees.

12                    MR. POWLEY:  Yes, your Honor.

13                    THE COURT:  Uh-huh.  Have you parties -- have you

14    people sat down and tried to resolve this case?

15                    MR. POWLEY:  We did on June 4th, your Honor, with a

16    mediator that the parties retained.

17                    THE COURT:  I take it that wasn't successful.

18                    MR. POWLEY:  Unfortunately it wasn't.

19                    THE COURT:  Uh-huh.  In these other cases -- are

20    you claiming the same sort of damages?  3,000?

21                    MR. POWLEY:  It depends on --

22                    THE COURT:  Counts?

23                    MR. POWLEY:  It depends on the period for which the

24    subscription ran and what the facts were, but some have

25    ranged to be that much.  The other cases have -- every case
```

```
 1    so far as settled.  We believe this case is one that should

 2    settle.

 3              THE COURT:  Well, I don't dispute that.  I guess

 4    the proof though is in the pudding and depending on what

 5    you're asking for.

 6              MR. POWLEY:  It's a tremendous problem, your Honor,

 7    for publishers this day.  It is.

 8              THE COURT:  That -- oh, I don't doubt that.  I'm

 9    not sure this is the way to resolve that problem, but I don't

10    doubt that.  And if -- if there's an smattering of what they

11    think was going on here, it doesn't sound very good, but

12    we'll see.

13              MR. POWLEY:  Your Honor, there isn't.  What they

14    represented going on.

15              THE COURT:  I'm sorry?

16              MR. POWLEY:  I don't -- we're confident that the

17    factual status of what they suggested isn't going on.

18              THE COURT:  Uh-huh.  Okay.  All right.  Thank you

19    very much.

20              MR. POWLEY:  Thank you, your Honor.

21              MR. YU:  Thank you, your Honor.

22

23              THE COURT:  On your way out, you people might want

24    to figure out when you're going to be able to sit down and

25    talk.  And make sure it's lead trial counsel --
```

UNITED STATES DISTRICT COURT

1          MR. POWLEY:  Thank you, your Honor.

2          THE COURT:  -- involved.  Okay.

3          (Whereupon, at 3:22 p.m. , the proceeding

4          concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF REPORTER

 2

 3   COUNTY OF LOS ANGELES )
                          ) ss.
 4   STATE OF CALIFORNIA   )

 5

 6   I, LEANDRA AMBER, OFFICIAL FEDERAL COURT REPORTER, REGISTERED

 7   PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

 8   COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

 9   CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES

10   CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

11   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

12   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS

13   IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL

14   CONFERENCE OF THE UNITED STATES.

15

16

17   DATE:  _____

18

19

20   _____/s/_____

21   LEANDRA AMBER, CSR 12070, RPR

22   FEDERAL OFFICIAL COURT REPORTER

23

24

25
```