1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3       HONORABLE PERCY ANDERSON, JUDGE PRESIDING

4    ENERGY INTELLIGENCE GROUP, INC.,    )
     ET AL.,                             )
5                                        )
                                         )
6                       Plaintiffs,      )
                                         )
7                                        )
                                         )
8          Vs.                           )   No. CV 12-5867 PA
                                         )
9                                        )
                                         )
10   PLAINS ALL-AMERICAN PIPELINE LP,    )
     ET AL.,                             )
11                                       )
                                         )
12                      Defendants.      )
                                         )
13   _____)

14

15

16       REPORTER'S TRANSCRIPT OF SCHEDULING CONFERENCE

17             LOS ANGELES, CALIFORNIA

18        MONDAY, NOVEMBER 19, 2012; 1:45 P.M.

19

20

21          LEANDRA AMBER, CSR 12070, RPR
         OFFICIAL U.S. DISTRICT COURT REPORTER
22            312 NORTH SPRING STREET, # 408
              LOS ANGELES, CALIFORNIA 90012
23                 www.leandraamber.com
                    (213) 894-6603
24

25

1                          **A P P E A R A N C E S**

2


3       **IN BEHALF OF THE PLAINTIFFS,**
        **ENERGY INTELLIGENCE GROUP,**
4       **INC., ET AL.:**
                                        POWLEY GIBSON
5                                       BY: ROBERT L. POWLEY, ESQ.
                                        304 HUDSON STREET
6                                       2ND FLOOR
                                        NEW YORK, NY 10013
7                                       (212) 226-5054
                                        rlpowley@powleygibson.com
8

9


10      **IN BEHALF OF THE DEFENDANT,**
        **PLAINS ALL-AMERICAN PIPELINE**
11      **LP, ET AL.:**
                                        MESEREAU AND YU LLP
                                        BY:  THOMAS A. MESEREAU, JR., ESQ.
12                                           SUSAN YU, ESQ
                                        10390 SANTA MONICA
13                                      BOULEVARD
                                        SUITE 220
14                                      LOS ANGELES, CA 90025
                                        (310) 789-1177
15                                      mesereau@mesereauyu.com

16
                                        POWLEY GIBSON
17                                      BY:  STEPHEN ANKROM, ESQ.
                                        304 HUDSON STREET
18                                      2nd FLOOR
                                        NEW YORK, NY 10013
19                                      (212) 226-5054
                                        smankrom@powleygibson.com
20

21

22

23

24

25

1                          **I N D E X**

2                                                          **PAGE**

3

4      **HEARING:**   SCHEDULING CONFERENCE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 19, 2012; 1:45 P.M.

 2                              -o0o-

 3

 4

 5             THE CLERK:  Calling case number CV 12-5867 Energy

 6        Intelligence Group, Inc., et al., versus Plains All American

 7        Pipeline, LP, et al.

 8             Counsel, please state your appearances.

 9             MS. YU:  Good afternoon.

10             Susan Yu appearing on behalf of defendant and

11        counter-claimant Plains All-American Pipeline LP.

12             MR. MESEREAU:  Good afternoon, your Honor.

13             Thomas Mesereau also appearing for Plains All

14        American Pipeline LLP.

15             MR. POWLEY:  Good afternoon, your Honor.

16             Robert Powley appearing behind plaintiff's Energy

17        Intelligence Group Incorporated and Energy Intelligence Group

18        UK.

19             MR. ANKROM:  Good afternoon, your Honor.

20             Stephen Ankrom for plaintiffs Energy Intelligence

21        Group, Inc., and Energy Intelligence Group UK Limited.

22             THE COURT:  All right.  Does either party wish to

23        be heard on this motion?

24             MR. POWLEY:  On the motion to consolidate, your

25        Honor?
```

```
 1              THE COURT:  Yes.
 2              MR. POWLEY:  If you have any questions, we'd be
 3    happy to address that.
 4              THE COURT:  I don't have any questions.
 5              MR. POWLEY:  We're happy to rest on the papers.
 6              THE COURT:  Okay.  Do you wish to be heard?
 7              MS. YU:  Unless the Court has any questions, I will
 8    just touch upon very few points.  There are a couple -- two
 9    main reasons, your Honor, that this motion, plaintiff's
10    motion, should be denied.
11              Number one, defendant is extremely prejudiced in
12    that the plaintiff's waited until now to file on the eve of
13    trial to file this motion --
14              THE COURT:  You're going to have to face that music
15    at some point though, aren't you?
16              MS. YU:  That's true, but we've already incurred
17    significant costs and fees and --
18              THE COURT:  Why would you want to have to do it
19    twice?
20              MS. YU:  That's exactly the point.  In terms of the
21    discovery, had they filed this motion, we would not have to
22    have all the depositions.  And we could have structured our
23    depositions such that we could ask questions that would
24    relate to the second case, your Honor, and when they filed --
25              THE COURT:  Let me see if I understand what this --
```

1          MS. YU:  Yes, your Honor.

2          THE COURT:  -- case is about.  Apparently there was

3     one issue, this newsletter that was circulated by --

4     electronically.  And that's the first case that they want to

5     sue on; correct?

6          MS. YU:  Yes, your Honor.

7          THE COURT:  Okay.  And then I guess the discovery

8     or whatever they determined that there was some additional

9     issues that had been electronically circulated.

10         MS. YU:  That is false.  They knew all along.

11    That's where it's false, your Honor.  This case is quite

12    simple.  It's all about --

13         THE COURT:  Well, isn't it about these additional

14    copies of the newsletter that were circulated or initial or

15    other versions or editions of this newsletter that were

16    circulated electronically.

17         MS. YU:  They knew that all along in terms of --

18         THE COURT:  Whether they knew it all along or not,

19    isn't that what the case is about?

20         MS. YU:  Yes, that's true, your Honor.

21         THE COURT:  Okay.  And so they want to ask a jury

22    to -- I guess -- what's the minimum damages statutory damages

23    you can get in this case?

24         MR. POWLEY:  The minimum statutory damages is $750.

25         THE COURT:  Okay.  $750 and if this -- this other

```
1    case you've got -- how many counts have you had?

2            MR. POWLEY:  Well, there's one count that

3    represents 3,000 -- a little over 3,000 works.

4            THE COURT:  Okay.  So you want to ask the jury to

5    take $750 times 3,000 and assess their damages?  Is that the

6    way it works?

7            MR. POWLEY:  At a minimum, your Honor, yes.

8            THE COURT:  At a minimum.

9            MR. POWLEY:  Yes.

10           THE COURT:  Uh-huh.  Don't you think that a jury's

11   going to say, when they look at this, they're going to say,

12   "you want me to award them" -- I don't know.  I can't do the

13   math.  I'm sure you have -- for something they could have

14   done and that if they done, when it was simply delivered by

15   hand that you could write out on a slip and circulate it, and

16   now you want to -- because they're doing it electronically?

17   And more or if you tell me what you tell me is true, that

18   there was some sort of incentive plan.

19           MS. YU:  Yes, your Honor.

20           THE COURT:  It sounds to me like I might want to

21   try the whole thing one time and get it before the jury

22   because it doesn't sound very appealing to me but --

23           MS. YU:  I agree, your Honor.  The reason why we

24   want to go forward now is because we believe that, one, not

25   only the fact that we've incurred significant time and
```

1    resources and money, aside from that, your Honor --

2            THE COURT:  But you're going to have to do that any

3    way, aren't you?

4            MS. YU:  We do.  However, we believe that if we go

5    to trial on December 4th, your Honor --

6            THE COURT:  Uh-huh.

7            MS. YU:  -- plaintiffs -- they are going to be

8    publicly exposed in terms of what they're doing in all the

9    other cases, and they don't want that.

10           That is why that if you look at all the 35 lawsuits

11   they have filed, they don't go to trial on any of them.  And

12   this is a tactic that we know, and we think that if we go to

13   trial, your Honor, they are not -- they are not going to go

14   to trial on the second case.  I guarantee.  And I think the

15   jury is going to rule in our favor.

16           THE COURT:  I think the jury may rule in your favor

17   whether you go to trial on one count or whatever it's

18   considered to be or it's 3,000 of them.  I don't think the

19   case -- well, I don't know.  It seems to me -- I'm not sure

20   the case has a lot of appeal when you start adding additional

21   counts to it.

22           So and I just -- it seems to me you're going to

23   have to face this.  In any event, if you want a little more

24   time, what additional discovery do you need?

25           MS. YU:  We don't need any discovery, your Honor,

1  other than the discovery that we'll be seeking for the fraud

2  claim in the second lawsuit.  They don't need any discovery

3  from us.  We've already given them, your Honor, everything.

4          THE COURT:  What discovery do you need if this case

5  is combined?  What discovery do you need?

6          MS. YU:  We will need discovery pertaining to all

7  of the fraud allegations, and we are also investigating other

8  potential -- other causes of action if this case gets

9  consolidated.

10         THE COURT:  Uh-huh.

11         MS. YU:  We are already investigating with other

12 agencies about some of the acts that they're doing.  So they

13 are -- we may be amending the Complaint later down the road.

14         THE COURT:  Amending the Complaint -- well, it's

15 not going to be down the road.  If I'm going to consolidate

16 these cases, I'll give you a little bit more time.  But I'm

17 just going to go to trial on the whole thing, and we're going

18 to go probably pretty quick.

19         MS. YU:  Okay.

20         THE COURT:  So if there's something, you know, each

21 side needs, fine; but I don't see any point in trying it

22 twice.  I'm not sure whatever discovery you need -- some -- a

23 secretary or somebody sent this thing out electronically and

24 they used to -- as I understand it, they probably used to

25 have a little slip that they just listed everything --

1    everybody on it and circulated and you can do that legally.

2    And now it sees like there's some sort of technical

3    violation.

4              Did you ever warn them that they couldn't do it?

5              MR. POWLEY:  Yes, your Honor, every day.

6              THE COURT:  Every day.

7              MR. POWLEY:  On the cover of the publication it

8    states it shouldn't be done.  On the cover e-mail that sends

9    the publication, it states it can't be done.

10             THE COURT:  Uh-huh.

11             MR. POWLEY:  Inside the publication it is stated

12   on -- and during the subscription --

13             THE COURT:  But do I have this right though that

14   prior to -- before it used to be -- it was delivered to the

15   defendant's by hard cover paper?

16             MR. POWLEY:  Back in the late 90's, yes, your

17   Honor.

18             THE COURT:  In the late 90's.  And when did it go

19   in electronic version?

20             MR. POWLEY:  I believe early December 1999.

21             THE COURT:  And when did these -- this circulate --

22   the circulation -- when did they start circulating?

23             MR. POWLEY:  We believe as early as that date, but

24   it's not clear yet.

25             THE COURT:  Uh-huh.  And when it was sent by paper,

1    they could have just put a routing sheet on it and --

2              MR. POWLEY:  Yes.

3              THE COURT:  -- that would not have been a

4    violation?

5              MR. POWLEY:  Not at all, your Honor.

6              MS. YU:  Your Honor, if I may, there -- one of

7    their witnesses testified that the e-mail -- they voluntarily

8    and unilaterally switched the delivery method from mail to

9    e-mail unbeknownst to us.

10             We had no choice.  We bought the newspaper

11   subscription just by simply making a payment on a simple

12   newspaper subscription invoice.  And all they did was they

13   mailed it to us just like we would get the Daily Journal in

14   the papers.

15             They unilaterally changed the delivery method to

16   e-mail.  Never told us that our understanding with the terms

17   of the invoice was ever going to change whatsoever.  It was a

18   company subscription.  You get the paper.  Anybody can read

19   it.  That's the way it was.  And in fact -- and they're --

20             And that's why when we go to trial, your Honor, the

21   earliest subscription, so-called agreement, that they

22   produced to us in this case -- and they said they don't have

23   anything prior to 2004 because they said they've all been

24   destroyed.

25             These subscription agreements along with the

UNITED STATES DISTRICT COURT

1    witnesses who are going to come in and testify will prove

2    that they never ever had any restrictions whatsoever on the

3    circulation of the papers until 2008 they started changing

4    the terms on the back of the invoice over and over again

5    unbeknownst to us.

6              And when plaintiffs say that we didn't know -- and

7    then when they say that they warned us, they never warned us,

8    your Honor.  What -- the warning counsel is referring to is

9    on the newspaper it says, "This paper's copyrighted."  "You

10   cannot circulate without authorization."

11             That's what it says in little fine print.  And then

12   in the e-mail, when they say this e-mail, you cannot forward

13   unless you have authorization.

14             Our administrative assistant, when she received it,

15   when she was the only person received it, at all times the

16   entire company, everybody, believed that "Okay.  You're

17   sending it to me.  I'm authorized."

18             It says only unauthorized person cannot do it.

19   Since I'm authorized, I can forward it.  They never ever told

20   us that we couldn't do this because they knew all along that

21   that was our understanding.

22             And the position that they're taking right now,

23   your Honor, is that the only person who was authorized to

24   read the *Oil Daily* is a secretary.  That's what they're

25   saying.  They're saying look the secretary who received the

```
1    paper -- you received it.
2             THE COURT:  Counsel, you can save it for the jury.
3    So that doesn't sound like a real -- you know, it's not one
4    of those cases where the jury is going to get real upset
5    about this I don't think.
6             MR. POWLEY:  Your Honor, it's as I stated the last
7    time we were together, it's a serious matter for publishers.
8             THE COURT:  It may be a serious matter for
9    publishers, but the way this was handled -- I don't think a
10   jury is going to get real excited about it to the tune of
11   $750 times 3,000.
12            MR. POWLEY:  Your Honor, you may be correct.  I
13   just think that for the purposes of moving forward, all the
14   witnesses that both parties would be calling for both this
15   and the lateral are the same discovery.
16            THE COURT:  Do -- so you don't need any discovery
17   either; right?
18            MR. POWLEY:  Well, they restricted their discovery.
19            THE COURT:  Excuse me?
20            MR. POWLEY:  Excuse me?
21            THE COURT:  What discovery do you need?
22            MR. POWLEY:  We need discovery prior to 2007.
23            THE COURT:  You better get it pretty quick because,
24   folks, we're going to go to trial unless you settle this
25   nonsense.
```

1          MR. POWLEY:  We think everything can be completed

2     quickly, your Honor.

3          THE COURT:  Well, that's good.

4          MS. YU:  May I respond to the discovery?  We've

5     already litigated this.

6          THE COURT:  No, I don't do discovery.

7          MS. YU:  Yes, your Honor.

8          THE COURT:  You don't want me to do discovery.

9          MS. YU:  We've given them everything, your Honor.

10    It was fully litigated before Judge Segal.  We've given them

11    everything, much more.

12         THE COURT:  Okay.  So we need a new trial date.

13    Let's see.  How about -- when are you scheduled to go now?

14         MS. YU:  December 4th.

15         THE COURT:  And how long is your case going to be?

16         MR. POWLEY:  Your Honor, based on the adjustment

17    from the last meeting, we envision, as it stands now, a

18    little bit over a day.

19         THE COURT:  I mean both cases.

20         MR. POWLEY:  Both cases combined I would imagine

21    three days, two to three days.

22         THE COURT:  Two to three days?

23         MR. POWLEY:  (No audible response.)

24         THE COURT:  Okay.  And how long is your case going

25    to be?

```
1              MS. YU:  Probably about two days, depending on the
2    cross.
3              THE COURT:  Okay.  Everybody ready to go on the
4    18th of December?
5              MS. YU:  Yes, your Honor, absolutely.
6              THE COURT:  Both cases?
7              MS. YU:  Absolutely.  We are ready to proceed.
8              MR. POWLEY:  Your Honor, they haven't been
9    responsive in providing the documents we need.  And we will
10   need to do at least two more depositions as we imagine now
11   which we can do by that date.  But their production -- their
12   original production -- they took six months to provide it to
13   us.
14             MS. YU:  That's false.
15             THE COURT:  You know, please.  You people are not
16   children.  I don't know what's going on here between you two,
17   and I really don't care, but don't bring it in here.  You
18   want to bicker like children, there are places you can do
19   that.  Don't do it in front of me.
20             MS. YU:  Yes, your Honor.
21             THE COURT:  So did you litigate this discovery in
22   front of Judge Segal?
23             MR. POWLEY:  We just filed a motion to compel.
24   Other than that, we didn't litigate discovery.
25             THE COURT:  You filed a motion to compel?
```

1            MR. POWLEY:  Yes.

2            THE COURT:  And that's when you got these other

3     materials; right?

4            MR. POWLEY:  Yes, and based on --

5            THE COURT:  And based on those materials, you then

6     filed this other case; right?

7            MR. POWLEY:  No.  We filed the other case prior to

8     getting those materials.

9            THE COURT:  Oh, did you?

10            MR. POWLEY:  Uh-huh.

11            THE COURT:  So I assume you had some basis for

12     doing it.

13            MR. POWLEY:  We did.  By representations between

14     the parties about their level of circulation, we did.  We

15     didn't get the documents, but we were trying to move as

16     quickly as possible.

17            THE COURT:  You don't have the documents now?

18            MR. POWLEY:  No, we did.  We got a 1.2 million

19     documents in early September, but they limited their

20     discovery.  And there's a period corresponding to the earlier

21     infringements where we had -- needed sampling to get some

22     type of understanding of the forwarding at that time.  Or the

23     parties could possibly agree to a stipulation.

24            THE COURT:  So what is it that you need?

25            MR. POWLEY:  We need to get discovery from that

```
 1    period of time.
 2              THE COURT:  What discovery do you need?
 3              MR. POWLEY:  ESI discovery or their e-mail
 4    forwarding.
 5              THE COURT:  Their e-mail forwarding.  You want to
 6    know whether they were forwarding this --
 7              MR. POWLEY:  Publication.
 8              THE COURT:  Uh-huh.  During what period?
 9              MR. POWLEY:  During the earlier period from '99 to
10    2009.  As it stand at this point, they've only given us
11    production from their ESI to 2009.
12              THE COURT:  From 2009.  So you want to know if they
13    were furnishing this from 1999 to 2009?  Whether they were
14    circulating it?
15              MR. POWLEY:  Yes, your Honor.
16              THE COURT:  Is there a statute?
17              MR. POWLEY:  There is within the "Kovert"
18    (phonetic) Act there is a statute of limitations.
19              THE COURT:  Okay.  What's that.
20              MR. POWLEY:  And it runs from three years when the
21    plaintiff knew or could have known.  And we didn't learn of
22    the infringement until this past October 2011.  We didn't,
23    your Honor.  We went through their computer systems.  There's
24    no access to any of the documents that they e-mailed.  Every
25    one of the witnesses we spoke to --
```

```
 1              THE COURT:  Sir --
 2              MR. POWLEY:  Yes.
 3              THE COURT:  -- what's the earliest date you're
 4   going to be ready to go to trial?
 5              MR. POWLEY:  I would say, to complete all the
 6   discovery, we need two more months.
 7              THE COURT:  You're not getting two months.  So try
 8   again.
 9              MR. POWLEY:  Okay.  Mid -- from the -- a month and
10   a half mid January.
11              THE COURT:  Is there a deposition you want to take
12   or documents you want to take from 1999?  Is that it?
13              MR. POWLEY:  There's documents, and then there
14   would be depositions.  We learned --
15              THE COURT:  How many depositions do you want to
16   take?
17              MR. POWLEY:  As it stands now, I believe at least
18   two, possibly three.
19              THE COURT:  Okay.  When are you going to be in a
20   position to take those depo's?
21              MR. POWLEY:  We can notice them this week, and
22   depending on the witness's availability, any time that
23   they're ready in December.
24              THE COURT:  Who are the deponents?
25              MR. POWLEY:  One would be Dominique Ferrari that's
```

```
 1     located here in Long Beach Iron that works for the plaintiff.

 2     He approved the subscription agreements of the earlier period

 3     as they were sent to the defendant.

 4              THE COURT:  He works for the plaintiff?

 5              MR. POWLEY:  Excuse me.  He works for the

 6     defendant.  I apologize.  And the other witness is a previous

 7     employee that was involved in the circulation.  He would have

 8     to be subpoenaed and scheduled.

 9              MS. YU:  Your Honor, may I respond?

10              THE COURT:  Yes.

11              MS. YU:  With respect to the two deponents, we have

12     no problem producing them.  With respect to documents,

13     counsel knows that we don't have any documents on the e-mail

14     or ESI discovery prior to January 2009.  We've already

15     litigated this.

16              They're all on inaccessible back-up tapes.  They've

17     gotten everything from 2007 on.  Whatever we had on the

18     individual computer they've gotten them.  But in terms of

19     depositions, I'd be happy to cooperate, your Honor, and

20     produce them.

21              THE COURT:  Excuse me.  What do you mean

22     inaccessible back-up tapes?

23              MS. YU:  They're -- what happened was this was

24     fully litigated.  We already submitted the declaration to

25     Judge Segal.  Because the company is really a big company --
```

1    and what happened was over the years they were backing up

2    e-mails throughout the company that was on the companywide

3    server throughout the country.

4          There's so many people.  It's just like if you were

5    to back up one computer, it would be enormous.  They were

6    doing that for all the computers throughout the country.

7    They were doing that over the years.

8          Sometime in 2008 when one person tried to retrieve

9    an e-mail or a record from the back-up tapes, they would back

10   them up.  It's not like you back them up one document at a

11   time.  They back it up from the beginning of time to the

12   present.  They couldn't retrieve them.

13         So back in 2008 they went on a new system called

14   Live Journalling Server, which would be live.  They would

15   capture everything live.  Such that from January 1, 2009, we

16   have everything available.

17         So what happened was, when they switched over to

18   the journalling server on January 1, 2009, whatever people

19   had -- this is strictly e-mails -- any discovery -- whatever

20   people have on their computer system, on outlook, they got

21   all sent over to the journalling server.  So if we kept

22   anything -- if I kept on my personal computer Outlook from

23   2005, 2006, that would be captured and the live journalling

24   server, and that would be part of the production.

25         In terms of the things that people deleted or

1    people back in 2005 or all in this system, the prior system

2    didn't have the capability to keep things on Live.

3            So the company had everything on back up tapes, and

4    those back up tapes were kept, and they're virtually

5    inaccessible.  We're about to destroy them, and then we were

6    put on litigation hold.

7            THE COURT:  Excuse me.  I don't know what that

8    means if they're virtually inaccessible.

9            MS. YU:  Meaning that they could be retrieved but

10   it will take years and years and years.  It will be

11   impossible.  We already litigated this before Judge Segal.

12           THE COURT:  And what did Judge Segal rule?

13           MS. YU:  Judge Segal said, "How do you resolve

14   this?"

15           And they said, "We accept."  Your Honor, and it's

16   already in their proceedings.  They said that we accept the

17   fact that as to the inaccessible back-up tapes -- and it's in

18   the Court transcript from Judge Segal, July 31st transcript.

19   It was filed as one of our exhibits.

20           And Judge Segal addressed this to counsel and said,

21   "You've already resolved it?"

22           "Yes, your Honor.  Now we understand how this

23   inaccessible back-up tapes work."

24           Because we have those tapes.  They were supposed to

25   be destroyed, but we didn't destroy them because of the

```
 1   litigation.  They're all kept there from anything prior to
 2   January 2009.  That's just -- this is a publicly traded
 3   company.  It's just massive, and they could not possibly keep
 4   everything.
 5             When they went on Live Journalling server, it's
 6   because they didn't have the type of technology back then,
 7   and things were improving and as -- things got better with
 8   the more sophisticated technology, and that's why we have the
 9   technical person.
10             THE COURT:  Please be quiet.  Okay.
11             Do you want these tapes?
12             MR. POWLEY:  Yes, your Honor.
13             THE COURT:  Okay.  So give them the tapes.  If it's
14   going to take him years to dig it up, that's on him.  Give
15   him the tapes.
16             MS. YU:  I think the tapes though just doesn't have
17   *Oil Daily*.  It has all of the privilege and the other stuff
18   on there.
19             THE COURT:  Privilege?
20             MS. YU:  I'm sorry?
21             THE COURT:  Privilege?
22             MS. YU:  The back up tapes are -- are not just for
23   the plaintiff's e-mails.  It's for the entire company
24   work-products e-mails, not just *Oil Daily* paper.  It's for
25   the entire company and employees and lawyers.  And
```

1    everybody's e-mails are backed up on to that one system.  And

2    that's what Mr. Peters testified to -- I mean, declared in

3    his declaration.

4           We can even bring Mr. Peters to explain all of that

5    to your Honor so that we understand exactly what that --

6    those back up tapes.  It's not just the *Oil Daily* papers.

7           THE COURT:  Okay.  Here's the -- here's the bottom

8    line.  You can do whatever discovery it is you want to do.

9    Okay?  And this case, unless it's resolved, it -- it's going

10   to go to trial.

11          I'm ready to try this case.  I'm ready to try this

12   case next week because to me it's ridiculous, but if you guys

13   want to roll around in the dirt and spend your clients'

14   money, it's fine with me, and we'll try this case in

15   January -- January 15, January 22nd.  I'll send out a date,

16   and you can conduct whatever discovery it is you need to

17   conduct.

18          MS. YU:  It's not possible to do it in December

19   only because I have a preliminary -- 20-witness preliminary

20   hearing on the 9th.

21          THE COURT:  You have a what?

22          MS. YU:  I have a -- I can manage, your Honor.

23   We'll do it on the 15th.

24          THE COURT:  Okay.

25          MR. POWLEY:  Your Honor, just because it -- I think

UNITED STATES DISTRICT COURT

1    we can take advantage of the extra week.  We would like to do

2    it on the 22nd if it was a choice.

3            THE COURT:  Yes.  And I'll -- I'll take the choice.

4    I'll give you a minute order.  It will either be the 15th or

5    the 22nd.

6            MR. POWLEY:  Thank you, your Honor.

7            MS. YU:  We have another mortgage fraud trial

8    starting in February; so that's why I picked the 15th, and I

9    have another evidentiary hearing, 20-witness hearing prior to

10   that, but I can manage this.

11           But we have a big hearing trial before Judge

12   Gutierrez starting in February, and it's a big trial.  So if

13   I'm -- we can start on the 15th, that would be very much

14   appreciated.

15           THE COURT:  Okay.  And the discovery cutoff is

16   closed.

17           MR. POWLEY:  Yes, your Honor.

18           MS. YU:  Yes, your Honor.

19           THE COURT:  And that's the only discovery you need

20   is to take these three depositions and whatever this back up

21   system is; right?

22           MR. POWLEY:  That's what we understand at this

23   time, yes.

24           THE COURT:  So that's the only discovery that's

25   going to be permitted and --

UNITED STATES DISTRICT COURT

1          MR. POWLEY:  Your Honor, excuse me.  There was one

2    other matter too.  Judge Segal ordered the defendants in the

3    summer to give a court order to produce their subscription

4    agreements that were pertaining to single-user third-party

5    publications and publications that could be subscribed in the

6    single user basis that had that potential.

7          They refused to produce those documents to us.

8          THE COURT:  So take it up with Judge Segal.

9          MR. POWLEY:  Okay.  We will, your Honor.

10          THE COURT:  I'll issue a discovery cutoff, but I

11    suggest you waste no more time.  Whatever it is you guys need

12    to do, get it done.  You'll get a minute order this week.

13    Trial will either be on January 15th or January 22nd.

14          MS. YU:  Thank you very much, your Honor.

15          MR. POWLEY:  Thank you, your Honor.

16          THE COURT:  And it will be -- we'll consolidate

17    whatever this -- these two cases are.

18          MS. YU:  Thank you.

19          THE COURT:  Have you had any discussions about

20    trying to settle this monumental dispute?

21          MR. POWLEY:  Yes, we have, your Honor.  We had.  On

22    June 4th, last year, there was a mediation between the

23    parties.

24          THE COURT:  What was that --

25          MR. POWLEY:  A mediator, Judge Papas.  I believe a

```
 1    retired magistrate.

 2              THE COURT:  Who was there from your client?

 3              MR. POWLEY:  Intellectual property manager, the

 4    person that oversees these issues for the plaintiffs.

 5              THE COURT:  The intellectual property manager?

 6              MR. POWLEY:  Yes.

 7              THE COURT:  So a lawyer?

 8              MR. POWLEY:  No.  No.

 9              THE COURT:  And he -- he or she oversees all these

10    lawsuits?

11              MR. POWLEY:  He does that and their trademark and

12    other intellectual property.

13              THE COURT:  Uh-huh.  And who was there for you?

14              MS. YU:  Larry Dreyfuss.  He is the general

15    counsel.

16              THE COURT:  No wonder nothing got done.  Get some

17    business people.  I'm going to have each side identify

18    somebody -- an officer -- an officer with the company, and

19    you give me whoever that is by next Monday.

20              MS. YU:  Your Honor, Mr. --

21              THE COURT:  I'm sorry?

22              MS. YU:  I'm sorry, your Honor.  Larry Dreyfuss

23    also is an officer.

24              THE COURT:  Huh-uh, not a lawyer.

25              MS. YU:  Okay.
```

```
 1              THE COURT:  I want a businessperson.

 2              MS. YU:  Yes, your Honor.

 3              THE COURT:  Okay.

 4              MR. POWLEY:  Yes, your Honor.

 5              THE COURT:  So get that to me next week, and then

 6   who were you in front of?  Both -- you both picked this

 7   mediator?

 8              MR. POWLEY:  Yes, a mediator, local, here I believe

 9   Judge Papas.

10              MS. YU:  Yes, your Honor.  He's a retired

11   magistrate judge from San Diego.

12              THE COURT:  He's a former magistrate judge?

13              MS. YU:  In San Diego U.S. District Court, your

14   Honor.

15              THE COURT:  What's his name?

16              MS. YU:  Judge "Papas"?  "Papas"?  It's a Greek

17   name.  "Papas."

18              THE COURT:  Okay.

19              MS. YU:  He was recommended by Judicate West as one

20   of the most effective settlement officers and that they

21   thought that he would be good for -- they decided that he

22   would be good, and we both agreed.  We never had any

23   settlement or mediation before this judge, and he was

24   completely unbiassed.  So the parties ended up with this

25   judge.
```

```
 1              THE COURT:  Okay.  Give me a name by Monday.

 2              MS. YU:  Yes, your Honor.

 3              THE COURT:  And maybe you'll go back before that

 4    person, or we'll find somebody to see if they can assist the

 5    parties in resolving this dispute.

 6              MS. YU:  Yes, your Honor.

 7              MR. POWLEY:  Thank you.

 8              THE COURT:  Okay.  Thank you very much.  Isn't he

 9    going to be able to do something?  Isn't he going to help

10    you?

11              MS. YU:  I'm sorry?

12              THE COURT:  Isn't your co-counsel going to be able

13    to help you?

14              MS. YU:  Well, we're both in it.  We're both in

15    that big mortgage fraud trial.

16              THE COURT:  You're both in it?

17              MS. YU:  Yes, your Honor, but he will be assisting

18    also, and then we have the one right before.

19              The one before that one -- I'm handling that

20    myself, and he has another case that he's handling himself.

21    But the bigger ones -- we do it together when there are many,

22    many witnesses involved.

23              THE COURT:  Okay.  Thank you very much.

24              MS. YU:  Thank you, your Honor.

25         (Whereupon, at 2:16 p.m. , the proceeding concluded.)
```

UNITED STATES DISTRICT COURT

```
1                        CERTIFICATE OF REPORTER

2


3     COUNTY OF LOS ANGELES )
                            ) ss.
4     STATE OF CALIFORNIA   )


5


6     I, LEANDRA AMBER, OFFICIAL FEDERAL COURT REPORTER, REGISTERED

7     PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

8     COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

9     CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES

10    CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

11    STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

12    ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS

13    IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL

14    CONFERENCE OF THE UNITED STATES.

15


16


17    DATE: _____

18


19


20    _____/s/_____

21    LEANDRA AMBER, CSR 12070, RPR

22    FEDERAL OFFICIAL COURT REPORTER

23


24


25
```