1

1                      UNITED STATES DISTRICT COURT

2

3                     CENTRAL DISTRICT OF CALIFORNIA

4                            WESTERN DIVISION

5

6

    ENERGY INTELLIGENCE GROUP,    )
7   INC., ET AL.,                 )
                                  )
8                                 )
            PLAINTIFFS,           )
9                                 ) CASE CV 11-10556-PA(SSX)
                                  )
10                                ) LOS ANGELES, CALIFORNIA
    PLAINS ALL AMERICAN PIPELINE  )
11  LP,                           ) JANUARY 3, 2013
                                  )
12                                ) (3:21 P.M. TO 4:19 P.M.)
            DEFENDANT.            )
13  _____)

14

                         TELEPHONIC CONFERENCE
15             BEFORE THE HONORABLE SUZANNE H. SEGAL
                   UNITED STATES MAGISTRATE JUDGE
16

17

18
    APPEARANCES:              SEE NEXT PAGE
19
    COURT REPORTER:           RECORDED; XTR AUDIO
20
    COURTROOM DEPUTY:         JAKE YERKE
21
    TRANSCRIBER:              DOROTHY BABYKIN
22                            COURTHOUSE SERVICES
                              1218 VALEBROOK PLACE
23                            GLENDORA, CALIFORNIA  91740
                              (626) 963-0566
24
    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

```
1   APPEARANCES:  (CONTINUED)
    FOR THE PLAINTIFFS:        POWLEY & GIBSON PC
2                              BY:   JAMES M. GIBSON
                                     YEVGENY STRUPINSKY
3                                    ATTORNEYS AT LAW
                               304 HUDSON STREET
4                              SECOND FLOOR
                               NEW YORK, NEW YORK  10013
5
    FOR THE DEFENDANT:         MESEREAU & YU LLP
6                              BY:   SUSAN C. YU
                                     THOMAS A. MESEREAU, JR.
7                                    ATTORNEYS AT LAW
                               10390 SANTA MONICA BOULEVARD
8                              SUITE 220
                               LOS ANGELES, CALIFORNIA  90025
9
    FOR NON-PARTY WITNESS:     AHMAD ZAVITSANOS ANAIPAKOS
10                               ALAVI & MENSING
                               BY:   JOHN ZAVITSANOS
11                                   REED SMITH
                                     ATTORNEYS AT LAW
12                             3460 ONE HOUSTON CENTER
                               1221 MC KINNEY STREET
13                             HOUSTON, TEXAS  77010

14

15

16

17

18

19

20

21

22

23

24

25
```

3

I N D E X

CASE NO. CV 11-10556-PA(SSX)                    JANUARY 3, 2013

PROCEEDINGS:   TELEPHONIC CONFERENCE RE DISCOVERY

4

1      LOS ANGELES, CALIFORNIA; THURSDAY, JANUARY 3, 2013; 3:21 P.M.

2              THE CLERK:  CALLING CASE CV 11-10556, ENERGY

3   INTELLIGENCE GROUP VERSUS PLAINS ALL AMERICAN PIPELINE, LP.

4              COUNSEL, IF YOU COULD PLEASE RESTATE YOUR APPEARANCES

5   FOR THE RECORD.

6              MR. GIBSON:  YES.  JIM GIBSON FOR PLAINTIFFS ENERGY

7   INTELLIGENCE GROUP, INC. AND ENERGY INTELLIGENCE GROUP U.K.

8   LIMITED.

9              MR. STRUPINSKY:  YEVGENY STRUPINSKY FOR THE SAME

10  PARTIES AS MR. GIBSON.

11             THE COURT:  GOOD AFTERNOON.

12             MS. YU:  GOOD AFTERNOON.  SUSAN YU.

13             I'M APPEARING ON BEHALF OF DEFENDANT AND

14  COUNTER-CLAIMANT PLAINS ALL AMERICAN PIPELINE, LP AND PLAINS

15  MARKETING, LP.

16             THE COURT:  GOOD AFTERNOON.

17             MR. MESEREAU:  GOOD AFTERNOON.

18             THOMAS MESEREAU, ALSO APPEARING FOR PLAINS ALL

19  AMERICAN PIPELINE, LP AND PLAINS MARKETING LP, DEFENDANTS AND

20  COUNTER-CLAIMANTS.

21             THE COURT:  GOOD AFTERNOON.

22             MR. ZAVITSANOS:  AND THIS IS JOHN ZAVITSANOS AND REED

23  SMITH APPEARING FOR NON-PARTY WITNESS JASON MIERS, M-I-E-R-S.

24             THE COURT:  GOOD AFTERNOON.

25             SO, THE PARTIES CONTACTED MY COURTROOM DEPUTY LAST

1   WEEK WHEN I WAS OUT OF TOWN ABOUT AN ISSUE IN THE DEPOSITION

2   AND ASKED IF I COULD RESOLVE IT.  AND I WASN'T REALLY

3   AVAILABLE.

4           I HAD A SENSE -- A LITTLE SENSE OF WHAT THE ISSUE WAS

5   FROM WHAT MY COURTROOM DEPUTY TOLD ME.  AND I DID MY BEST TO

6   TRY AND PROVIDE SOME GUIDANCE TO THE PARTIES.  AND I GATHER IT

7   DIDN'T RESOLVE THE ISSUE.

8           BEFORE WE GET STARTED --

9           (THE COURT CONFERRING BRIEFLY WITH CLERK.)

10          THE COURT:  OKAY.  BEFORE WE GET STARTED, LET ME JUST

11  SAY THAT WHEN I CONDUCT AN INFORMAL DISCOVERY CONFERENCE LIKE

12  THIS, I DON'T NECESSARILY, AND PREFER NOT TO, SORT OF ISSUE A

13  BINDING RULING ON THE PARTIES BECAUSE I FOUND THAT THESE

14  INFORMAL DISCOVERY CONFERENCES CAN BE HELPFUL, PARTICULARLY IF

15  WE HAVE THEM BEFORE DISCOVERY IS CONDUCTED SO THAT THE PARTIES

16  HAVE SOME IDEA OF WHERE MY VIEWS MIGHT FALL ON A PARTICULAR

17  ISSUE.

18          BUT IF I -- IF I RULE NOW, IT'S NOT ALWAYS A

19  COMPLETELY INFORMED DECISION BECAUSE I DON'T HAVE BRIEFING.

20  AND I -- YOU KNOW, IT'S SORT OF SPONTANEOUS.  SO, I CONSIDER

21  THIS TO BE MY EFFORTS TO HELP YOU RESOLVE AN ISSUE.  BUT I'M

22  NOT GOING TO ISSUE A BINDING RULING BASED ON THIS TELEPHONE

23  CONFERENCE TODAY.  OKAY.

24          SO, DOES EITHER PARTY HAVE A QUESTION ABOUT THAT?

25          MR. GIBSON:  YOUR HONOR, I DON'T REALLY HAVE A

1    QUESTION.  AND I FULLY UNDERSTAND WHAT YOU'RE SAYING.

2            THE SITUATION HERE THOUGH IS THAT DISCOVERY IN THIS

3    CASE -- AND I DON'T KNOW IF YOU'LL RECALL, BUT IT WAS AN

4    EARLIER CASE -- I'LL CALL IT PLAINS ONE, THERE WAS A SUBSEQUENT

5    CASE FILED, PLAINS TWO.  AND JUDGE ANDERSON CONSOLIDATED THEM

6    FOR TRIAL.  IT IS SCHEDULED TO START ON JANUARY 15TH.

7            SO, WHILE I UNDERSTAND WHAT YOU'RE TELLING US, UNDER

8    THE TIME CONDITIONS THAT WE'RE DEALING WITH, I GUESS WE COULD

9    ALWAYS BRIEF THINGS.

10           HOWEVER, ONE OF THE ISSUES THAT WE'RE GOING TO TALK

11   -- THAT WE WOULD LIKE TO TALK TO YOU ABOUT TODAY HAS ALREADY

12   BEEN FULLY BRIEFED.  SO, IT MIGHT BE A SITUATION WHERE WE COULD

13   COME TO SOME UNDERSTANDING TODAY.

14           THE COURT:  OKAY.  AND LET ME JUST SAY TWO THINGS.

15           ONE, BECAUSE WE'RE ON THE PHONE, AND WE HAVE A NUMBER

16   OF PEOPLE, IF YOU COULD JUST SAY YOUR NAME BEFORE YOU SPEAK,

17   THAT WILL HELP ME.

18           AND, SECONDLY, YOU KNOW, IF THERE IS SOME

19   CLARIFICATION TO A PRIOR RULING THAT WOULD COME OUT OF TODAY,

20   YOU KNOW, I WOULD -- I'LL TELL YOU IN THE PAST I'VE INVITED

21   PARTIES TO SUBMIT A PROPOSED ORDER THAT WOULD CLARIFY THE PRIOR

22   RULING, IF THAT CAN BE HELPFUL.  BUT, AGAIN, I JUST -- I'LL DO

23   MY BEST TO HELP THE PARTIES MOVE FORWARD.  BUT I JUST ALSO FEEL

24   AN OBLIGATION TO SAY THAT I'M NOT ALWAYS ENTIRELY COMFORTABLE

25   ISSUING A BINDING RULING WITHOUT AN OPPORTUNITY FOR BOTH SIDES,

1   YOU KNOW, TO BE FULLY HEARD ON IT IN A BRIEFING SETTING.

2            SO, WHY DON'T YOU TELL ME WHAT THE FIRST ISSUE IS.

3            AND, AGAIN, WHO IS SPEAKING?

4            MR. GIBSON:  YOUR HONOR, THIS IS JIM GIBSON --

5            THE COURT:  OKAY.

6            MR. GIBSON:  -- ON BEHALF OF PLAINTIFFS.

7            THE COURT:  OKAY.  SO, WHAT IS THE FIRST ISSUE?

8            MR. GIBSON:  THE FIRST ISSUE, YOUR HONOR, HAS TO DO

9   WITH A TELEPHONE CONFERENCE CALL AND MOTIONS, ET CETERA, BACK

10  IN THE SUMMER THAT CULMINATED IN YOUR ORDER OF AUGUST 8TH.  IT

11  HAS TO DO WITH THIRD-PARTY PUBLICATIONS --

12           THE COURT:  OKAY.

13           MR. GIBSON:  -- THAT THE DEFENDANTS RECEIVED.

14           AND I DON'T KNOW IF YOU RECALL ANY OF THAT TELEPHONE

15  CONFERENCE, BUT -- AND/OR THE ORDER.

16           BASICALLY, IF I CAN GIVE YOU A QUICK HISTORY, WE HAD

17  SOME DISCOVERY REQUESTS THAT WE'RE TRYING TO UNDERSTAND AND

18  OBTAIN INFORMATION ABOUT WHAT OTHER PUBLICATIONS, OTHER THAN

19  THE PLAINTIFF'S, DO THE DEFENDANTS RECEIVE, HOW DO THEY RECEIVE

20  THEM, WHAT TYPE OF AGREEMENTS THEY HAVE.  THAT WAS THE NATURE

21  OF THE MOTION.

22           AND IN YOUR ORDER OF AUGUST 8TH, WHICH I THINK IS

23  REALLY WHAT THE PARTIES ARE SEEKING A CLARIFICATION ON -- AT

24  LEAST PLAINTIFFS ARE -- YOU ORDERED THE DEFENDANTS TO PRODUCE

25  DOCUMENTS AND RESPONSES TO INTERROGATORIES RELATED TO

1   THIRD-PARTY PUBLICATIONS AS YOU LIMITED THEM IN YOUR ORDER.

2   YOU TOOK OUR ORIGINAL REQUEST AND NARROWED IT TO SIMILARLY

3   SITUATED COPYRIGHTED ELECTRONICALLY DISTRIBUTED NEWSLETTERS OR

4   SIMILAR PUBLICATIONS BETWEEN THE PERIOD OF DECEMBER 1ST, 2006

5   AND DECEMBER 31, 2011.

6           AND HERE'S THE LANGUAGE, YOUR HONOR, THAT SEEMS TO

7   HAVE THE PARTIES AT ODDS -- "FOR WHICH THE DEFENDANT PURCHASED

8   A SUBSCRIPTION THAT IS EXPRESSLY OR POTENTIALLY LIMITED TO A

9   SINGLE USER."

10          IT'S THE PLAINTIFF'S UNDERSTANDING, YOUR HONOR, THAT

11  BY THAT LANGUAGE, WHAT WE WERE LOOKING FOR AND WHAT WE THINK

12  YOU ORDERED IS THAT IF THE PLAINTIFF HAS OTHER -- IF

13  DEFENDANTS, RATHER, HAVE OTHER SINGLE-USER SUBSCRIPTIONS FOR

14  MULTI-USER SUBSCRIPTION AGREEMENTS THAT COULD BE SINGLE-USER

15  SUBSCRIPTION AGREEMENTS, THAT'S WHAT WE WERE AFTER.  AND IT WAS

16  OUR UNDERSTANDING THAT THAT'S WHAT YOUR ORDER MEANT.  I'LL LET

17  DEFENDANTS EXPLAIN THEIR POSITION WITH THAT.

18          BUT IN ANY EVENT, THE CALL THAT -- UNFORTUNATELY, WE

19  APOLOGIZE FOR INTERRUPTING YOU ON YOUR FAMILY VACATION, BUT THE

20  CALL THAT WAS MADE FROM THE DEPOSITION WAS BECAUSE I WAS ASKING

21  THE WITNESS ABOUT OTHER PUBLICATIONS AND SPECIFICALLY THREE

22  OTHER PUBLICATIONS.  AND DEFENSE COUNSEL WAS OBJECTING -- WAS

23  OBJECTING AND INSTRUCTING THE WITNESS NOT TO ANSWER.

24          I WILL ALSO SAY THAT THE THREE PUBLICATIONS THAT WE

25  WERE PRIMARILY INTERESTED IN, WE DID, IN FACT, SERVE

1    THIRD-PARTY SUBPOENAS ON THOSE ENTITIES FOR DOCUMENTS RELATING

2    TO THEIR AGREEMENTS WITH DEFENDANTS.  AND THEY ALL OBJECTED.

3    AND THEY HAVEN'T PRODUCED ANY DOCUMENTS.

4              BUT THAT -- I'M GIVING YOU THAT INFORMATION, YOUR

5    HONOR, FOR THE PURPOSES OF DISCLOSURE.  AND IT ALSO TIES IN, I

6    THINK, WITH WHAT DEFENDANT WILL SAY.

7              BUT WE CAN'T AGREE ON WHAT YOUR AUGUST 8TH ORDER

8    COVERS.  WE WERE TOLD AT THE DEPOSITION -- AND, AGAIN, THE

9    DEPOSITION WAS ON DECEMBER 27TH OF DEFENDANT'S 30(B)(6) WITNESS

10   -- THAT THERE WAS A REVIEW DONE OF AGREEMENTS AFTER YOUR ORDER

11   WAS ISSUED IN AUGUST.  THEY DO HAVE MULTI-USER AGREEMENTS BUT

12   DON'T FEEL THEY'RE COVERED BY THE ORDER TO PRODUCE.  AND THAT'S

13   BASICALLY WHERE WE PARTED.  AND WE WERE LOOKING FOR

14   CLARIFICATION.

15             THE COURT:  OKAY.  I'LL GIVE MS. YU A COMPLETE AND

16   FULL OPPORTUNITY TO RESPOND, BUT I HAVE A FOLLOW-UP QUESTION.

17             MR. GIBSON:  YES, YOUR HONOR.

18             THE COURT:  AND THIS IS FOR MR. GIBSON.

19             SO, YOU INTERPRET MY ORDER AS REQUIRING THE

20   DEFENDANTS TO PRODUCE SINGLE-USER SUBSCRIPTIONS OR MULTI-USER

21   SUBSCRIPTIONS THAT COULD BE SINGLE-USER SUBSCRIPTIONS.

22             IS THAT WHAT YOU'RE SAYING?

23             MR. GIBSON:  THAT'S OUR UNDERSTANDING, YOUR HONOR,

24   YES.

25             THE COURT:  OKAY.  WHAT -- WHAT ARE YOU -- WHAT ARE

1   YOU -- I'M NOT AS FAMILIAR WITH THIS INDUSTRY, PERHAPS, AS YOU

2   ARE.  I'M NOT SURE WHAT YOU'RE TALKING ABOUT WHEN YOU SAY A

3   "MULTI-USER SUBSCRIPTION THAT COULD BE A SINGLE-USER

4   SUBSCRIPTION."  I'M NOT QUITE UNDERSTANDING WHAT THAT MEANS.

5            MR. GIBSON:  OKAY.  WELL, LET ME SEE IF I CAN HELP

6   WITH THAT DEFINITION.

7            IN THE PUBLISHING INDUSTRY, OUR CLIENTS INCLUDED, YOU

8   -- THEY'RE MORE THAN WILLING TO SELL YOU SUBSCRIPTIONS.  THEY

9   WANT TO SELL YOU AS MANY AS THEY CAN.  AND IN CASES WHERE THERE

10  IS A COMPANY OR EVEN AN INDIVIDUAL WHO ONLY WANTS ONE

11  SUBSCRIPTION, THEN, YOU'LL GET A SINGLE- -- WHAT'S CALLED A

12  "SINGLE-USER SUBSCRIPTION AGREEMENT."

13           IF YOU HAVE TWO PEOPLE AT THE SAME COMPANY OR TEN

14  PEOPLE AT THE SAME COMPANY, THE PUBLISHER WILL SELL YOU A

15  SUBSCRIPTION.  BUT THEY'RE NOT GOING TO CHARGE YOU THE FULL

16  PRICE FOR ALL OF THE USERS.  SO, THERE ARE MULTI-USER LICENSES

17  TYPICALLY WOULD COVER A -- PERHAPS, A PHYSICAL SITE, BUT NOT

18  ALWAYS.  THE COMPANY MAY KNOW THEY HAVE A REQUIREMENT FOR TEN

19  PEOPLE TO GET THE SUBSCRIPTION IN ONE -- ONE FACILITY AND TEN

20  IN ANOTHER.  THAT WOULD BE A MULTI-USER AGREEMENT THAT THEY

21  WOULD EXECUTE.  BUT COULD BE A SINGLE USER IF ONLY ONE OF THEIR

22  EMPLOYEES WAS INTERESTED IN RECEIVING THE PUBLICATIONS.

23           IS THAT --

24           THE COURT:  AND, IN GENERAL, IN THAT SECOND CATEGORY

25  THAT YOU TALKED ABOUT WHEN YOU SAY IT'S A -- IT CAN BE A -- A

1   SINGLE USER OR A MULTI-USER AGREEMENT THAT IS USED BY A SINGLE

2   PERSON, IS THE CONCEPT USUALLY WHEN YOU ONLY HAVE A SMALL

3   NUMBER OF PEOPLE THAT WILL BE PART OF THAT MULTIPLE-USER

4   AGREEMENT?

5           MR. GIBSON:  WELL, IT CAN -- IT DEPENDS, YOUR HONOR.

6   YOU CAN HAVE -- TWO WOULD BE A MULTI-USER LICENSE AGREEMENT.

7   OUR CLIENT HAS MULTI-USER AGREEMENTS THAT GO TO MUCH HIGHER

8   NUMBERS THAN THAT.  THEY ALSO HAVE A LICENSE THAT'S CALLED A

9   "GLOBAL LICENSE."  THAT LETS THE -- LETS THE COMPANY --

10  EVERYBODY IN THE COMPANY NO MATTER WHO THEY ARE SEE ALL THE

11  CLIENTS' PUBLICATIONS.

12          THE COURT:  I SEE.

13          MR. GIBSON:  BUT THE MULTI-USER AGREEMENT IS -- IT

14  DIFFERS BECAUSE THE USERS ARE IDENTIFIED.  AND THE PRICING IS

15  DIFFERENT SO THAT THE SUBSCRIBER IS NOT PAYING FULL BOAT FOR

16  HOWEVER MANY PEOPLE BEYOND ONE THEY'RE INTERESTED IN RECEIVING

17  THE PUBLICATION.

18          THE COURT:  AND WHAT TYPE OF -- WHAT TYPE OF

19  AGREEMENT DID PLAINTIFF HAVE WITH DEFENDANT HERE?

20          MR. GIBSON:  IN THIS PARTICULAR CASE, YOUR HONOR, IT

21  WAS A STANDARD SINGLE-USER AGREEMENT.

22          THE COURT:  OKAY.

23          ALL RIGHT.  MS. YU, DID YOU WANT TO RESPOND?

24          MS. YU:  THANK YOU, YOUR HONOR.

25          AT THE DEPOSITION, GOING BACK TO AUGUST 8TH WHEN THE

1    COURT ORDERED DEFENDANT TO PRODUCE ALL ELECTRONIC DOCUMENTS

2    THAT WAS -- THAT WERE EXPRESSLY OR POTENTIALLY LIMITED TO

3    SINGLE USERS -- THIS WAS AFTER ITS JULY 31ST HEARING -- WE

4    PRODUCED EVERY RESPONSIVE DOCUMENT IMMEDIATELY.

5            THEN ON NOVEMBER 9TH OF THIS YEAR PLAINTIFFS

6    SUBPOENAED THREE BIG -- OF THEIR COMPETITORS, ARGO, OPUS, AND

7    PLATH, THREE MAJOR PUBLISHERS, TO PRODUCE WHAT ESSENTIALLY ARE

8    MULTI-USER AGREEMENTS THAT THEY'VE HAD WITH DEFENDANTS.

9            THEY'VE -- THOSE THREE COMPANIES, YOUR HONOR, ARE

10   REPRESENTED BY -- PLATH IS REPRESENTED BY DAVIS TREMAINE.  AND

11   ARGO IS REPRESENTED BY S&R IN CHICAGO.  AND OPUS, I BELIEVE

12   THEIR GENERAL COUNSEL IN MARYLAND -- ALL SERVED OBJECTIONS ON

13   PLAINTIFFS.

14           THEY ALSO CONTACTED ME AND TOLD ME THAT WE WERE NOT

15   AT ALL AUTHORIZED TO SAY ANYTHING ABOUT THEIR AGREEMENT OR TO

16   PRODUCE ANY DOCUMENTS TO PLAINTIFFS.  BECAUSE THEY SAID THAT

17   THOSE AGREEMENTS THAT THEY HAVE WERE HIGHLY CONFIDENTIAL WHICH

18   CONTAINED PRICING INFORMATION, THAT IT PROTECTED TRADE SECRETS

19   -- PROPRIETARY INFORMATION.  THAT WAS NOVEMBER 9TH.

20           PLATH ALSO SERVED OBJECTIONS ON DECEMBER 5TH.  ARGO

21   AND OPUS SERVED OBJECTIONS ON NOVEMBER 26TH.  THEY THEN -- I

22   BELIEVE THE PLAINTIFFS THEN THREATENED TO MOVE TO COMPEL THOSE

23   THREE COMPANIES.

24           AND OUR POSITION WAS EVEN AT A DEPOSITION WE'D BE

25   HAPPY TO TELL YOU WHAT THEY -- WHAT THESE AGREEMENTS ARE ALL

1   ABOUT.  BUT WE HAVE BEEN THREATENED BY THOSE THREE PUBLISHERS

2   THAT IF WE SAY ANYTHING, THAT WE ARE, IN ESSENCE, ARE BEING --

3   SUED.

4          SO, WE TOLD MR. -- THE PLAINTIFF'S COUNSEL THAT IF

5   YOU CAN RESOLVE THE SUBPOENAS WITH THOSE THREE ENTITIES, AND IF

6   WE HAVE PERMISSION FROM THOSE THREE ENTITIES TO TALK ABOUT

7   THESE MULTI-USER AGREEMENTS, WE'D BE HAPPY TO DO SO.

8          SO, AT THE DEPOSITION OUR WITNESS WAS FREE TO TALK

9   ABOUT ANY OTHER PUBLICATIONS THAT MR. GIBSON, PLAINTIFF'S

10  COUNSEL, HAS ANY QUESTIONS ABOUT.  AND HE ASKED AND SHE

11  ANSWERED.

12         AND TO THE THREE COMPANIES THAT EXPRESSLY STATED

13  OBJECTIONS AND WARNED THAT WE WERE NOT AT ALL AUTHORIZED TO

14  SPEAK OR TO DISCLOSE ANYTHING, WE JUST COULDN'T.  SO, OUR

15  POSITION WAS IF YOU RESOLVED THEM, WE'D BE HAPPY TO TALK ABOUT

16  THEM.

17         AND, SO, THOSE ATTORNEYS, THE DAVIS TREMAINE, S&R,

18  AND GENERAL COUNSEL FOR OPUS IN MARYLAND, THEY CONTACTED ME

19  AFTERWARDS AND SAID, YOU KNOW, THEY HAVE NOT -- PLAINTIFFS HAVE

20  NOT FILED ANY MOTION TO COMPEL.  WHEN IS YOUR TRIAL DATE.

21         SO, I SAID JANUARY 15TH.  AND THE DISCOVERY CUTOFF

22  WAS THE 28TH OF DECEMBER.  AND THEY'VE HAD SINCE NOVEMBER 9TH

23  TO MOVE THOSE THREE ENTITIES TO COMPEL, BUT THEY DIDN'T.  AND

24  INSTEAD THEY WERE ASKING OUR WITNESS TO PROVIDE THEM WITH THE

25  ANSWERS, THE VERY ANSWERS THAT THOSE THREE ENTITIES

1  SPECIFICALLY TOLD PLAINTIFFS THAT THEY WERE NOT GOING TO GIVE

2  AND SPECIFICALLY TOLD US THAT WE WERE NOT AUTHORIZED TO

3  PRODUCE.

4          SO, WE HAD NO CHOICE AS TO THOSE THREE COMPANIES.

5  ALL OTHER PUBLISHERS, MR. GIBSON WAS FREE TO ASK ANY QUESTIONS

6  HE MAY HAVE.  AND OUR WITNESS ANSWERED.

7          THE COURT:  SO, LET ME ASK THIS OF MR. GIBSON.  WHAT

8  IS THE RELEVANCE OF THE INFORMATION YOU'RE TRYING TO ELICIT

9  FROM THE WITNESS ON THOSE THREE PUBLISHERS?

10         MR. GIBSON:  YOUR HONOR, THE DEFENDANTS IN THIS CASE

11 ARE -- THEIR BASIC DEFENSE IS THAT THEY HAVE A SUBSCRIPTION TO

12 OUR CLIENT'S PUBLICATION THAT THEY WERE FREE TO DISTRIBUTE TO

13 ANYBODY AT PLAINS.

14         AND THAT'S JUST -- YOU KNOW, FROM OUR PERSPECTIVE

15 MANY, MANY PUBLISHERS WOULD BE OUT OF BUSINESS IF THAT WAS

16 TRULY WHAT THE INDUSTRY EXPECTED AND HOW IT WORKED.

17         THE RELEVANCE OF THESE DOCUMENTS, YOUR HONOR, IN OUR

18 OPINION SHOW THAT THE DEFENDANTS HAVE --

19         AND ONE OTHER THING, YOUR HONOR, BEFORE I GO ON.

20         THE REASON WE ASKED ABOUT THOSE THREE COMPANIES THAT

21 DEFENSE COUNSEL JUST MENTIONED, THEY ARE IN OUR ESTIMATION THE

22 CLOSEST PUBLICATION TO OUR OWN.  SO, I DID ASK AT DEPOSITION

23 ABOUT ANOTHER PUBLICATION.  I HAVE NO IDEA WHAT IT IS, DON'T

24 HAVE ANY IDEA WHETHER IT WOULD BE TREATED SIMILARLY TO OURS.

25 BUT WE KNOW OPUS.  WE KNOW PLATH.  AND WE KNOW ARGO.  THOSE ARE

1   THE -- THOSE ARE, IN ESSENCE, SOME OF OUR COMPETITORS.  SO, WE

2   KNOW THAT THEIR AGREEMENTS, OR WE SUSPECT THAT THEIR AGREEMENTS

3   ARE GOING TO POINT OUT TO THE DEFENDANTS THAT IF YOU WANT MORE

4   THAN ONE PERSON TO LOOK AT THIS -- AT THE PUBLICATIONS YOU'RE

5   GOING TO GET FROM US, YOU NEED A MULTI-USER LICENSE.  AND

6   THAT'S WHY WE ASKED FOR THIS INFORMATION TO SHOW THAT

7   DEFENDANTS KNEW OR REALLY SHOULD HAVE KNOWN THAT THEY NEEDED A

8   MULTI-USER LICENSE.

9           THE COURT:  OKAY.  SO, I GUESS I SEE TWO SEPARATE

10  ISSUES HERE.  I MEAN, ONE IS IT SEEMS THAT PLAINTIFF IS

11  DISSATISFIED WITH THE PRODUCTION IN RESPONSE TO THE ORDER THAT

12  I ISSUED ON AUGUST THE 8TH, THE ACTUAL PRODUCTION FROM THE

13  DEFENDANTS OF DOCUMENTS.

14          IS THAT CORRECT?

15          MR. GIBSON:  YES, YOUR HONOR.

16          THE COURT:  AND BECAUSE YOU BELIEVE THAT THEY SHOULD

17  HAVE PRODUCED THE UNDERLYING MULTI-USER AGREEMENTS.

18          MR. GIBSON:  YES, YOUR HONOR.

19          THE COURT:  OKAY.  AND INDEPENDENT OF THAT, YOU

20  SUBPOENAED THEM FROM THE THREE COMPANIES?

21          MR. GIBSON:  YES, YOUR HONOR.

22          THE COURT:  OKAY.  SO, NO DOCUMENTS HAVE BEEN

23  PRODUCED.

24          AND THEN A SECOND ISSUE THAT ON DECEMBER 27TH A

25  WITNESS WAS BEING DEPOSED -- AND SHE WAS DEPOSED ON DECEMBER

1    27TH UNDER THE -- I GUESS THE THEORY THAT THE CUTOFF DATE FOR

2    THE SECOND MATTER IS DECEMBER 28TH.  AND, THEREFORE, YOU COULD

3    STILL TAKE A DEPOSITION ON DECEMBER 27TH.

4              IS THAT RIGHT?

5              MR. GIBSON:  YES, YOUR HONOR.

6              THE COURT:  OKAY.  SO, I GUESS I SEE IT AS TWO

7    SEPARATE ISSUES.

8              AND DEFENDANTS HAVE RAISED A REASONABLE RESPONSE, I

9    THINK, TO MY AUGUST 8TH ORDER IN THAT -- YOU KNOW, AND YOU'VE

10   SEEN THIS IN MY PRIOR ORDERS.  I DO THINK IF THERE'S

11   DISSATISFACTION WITH THE PRODUCTION OF DOCUMENTS, THERE IS AN

12   OBLIGATION TO MOVE EXPEDITIOUSLY ON THE PART OF THE PARTIES TO

13   GET THAT RESOLVED.  SO, IF YOU ARE UNHAPPY WITH THEIR

14   PRODUCTION OF DOCUMENTS, YOU KNOW, SEPTEMBER, OCTOBER, THERE

15   SHOULD HAVE BEEN A MOTION BEFORE ME AT THAT TIME EVEN IF THERE

16   IS A PRIVILEGE ASSERTED OR CONFUSION.  SO, THAT'S, YOU KNOW --

17   THAT'S MY THOUGHTS ON THE PRODUCTION OF DOCUMENTS.

18             AS TO THE OBJECTIONS AND THE SUBPOENAS, YOU KNOW,

19   AGAIN, I'M NOT REALLY EMPOWERED TO DO ANYTHING UNTIL SOMEBODY

20   FILED A MOTION.  SO, EITHER THE THREE COMPANIES THAT WERE

21   OBJECTED -- OBJECTING STILL NEEDED TO MOVE FOR A PROTECTIVE

22   ORDER, OR THE MOVING PARTY NEEDED TO MOVE TO ENFORCE THE

23   SUBPOENAS.  SO, YOU KNOW, THAT'S NOT REALLY BEFORE ME OR RIGHT

24   BEFORE ME.

25             BUT THE DECEMBER 27TH IS A LITTLE BIT MORE -- IS NOT,

```
 1   I THINK, A PROBLEM WITH TIMELINESS BECAUSE WE'RE CERTAINLY

 2   MOVING QUICKLY ON THAT ONE.  AND I GUESS THE QUESTION IS

 3   WHETHER OR NOT IT WAS APPROPRIATE FOR THE WITNESSES TO BE

 4   INSTRUCTED NOT TO RESPOND BASED UPON A PRIVILEGE.

 5            AND I GUESS I'LL GO BACK TO MS. YU.

 6            WHAT IS THE PARTICULAR PRIVILEGE YOU'RE ASSERTING?

 7   IS IT A TRADE SECRETS PRIVILEGE?

 8            MS. YU:  YES, YOUR HONOR.  THE THIRD-PARTY PRIVILEGE

 9   -- THAT THE THIRD PARTIES HAVE ASSERTED.

10            THE COURT:  BUT IT'S NOT AN ABSOLUTE PRIVILEGE.  AND

11   IT CAN GIVE WAY TO A COURT ORDER.

12            MS. YU:  WE DID NOT WANT TO FACE A LAWSUIT FROM THOSE

13   THREE PARTIES.  AND THEY WERE ADAMANT.

14            THE COURT:  WELL, THEY MAY BE ADAMANT, BUT IT'S --

15   IT'S NOT A REASONABLE LAWSUIT IF THE COURT ORDERS YOU TO

16   PRODUCE SUCH INFORMATION PURSUANT TO A PROTECTIVE ORDER BECAUSE

17   THEN THE CONFIDENTIALITY IS PROTECTED.  AND IT'S THEIR FAULT

18   FOR NOT MOVING.  IF THEY HAD A TRADE SECRET TO PROTECT --

19            WHEN WERE THE SUBPOENAS SERVED?

20            MS. YU:  NOVEMBER 9TH.

21            THE COURT:  OKAY.  SO, IF THOSE THREE ENTITIES HAD A

22   TRADE SECRET THAT THEY INTENDED TO PROTECT, THEY NEEDED TO MOVE

23   IN THE ISSUING COURT OF THE SUBPOENA.

24            WHERE WERE THE SUBPOENAS ISSUED FROM?

25            MS. YU:  ONE WAS IN MARYLAND.  ONE WAS IN ILLINOIS.
```

1   ANOTHER ONE WAS IN NEW YORK.

2            THE COURT:  AND WERE THERE ANY MOTIONS BROUGHT IN

3   THOSE DISTRICTS TO SEEK A PROTECTIVE ORDER AGAINST THOSE

4   SUBPOENAS?

5            MS. YU:  THEY SERVED OBJECTIONS -- MY UNDERSTANDING.

6   AND --

7            THE COURT:  ALL RIGHT.  WHICH IS NOT THE SAME THING

8   AS MOVING FOR A PROTECTIVE ORDER.

9            MS. YU:  WELL, THE PLAINTIFFS, I BELIEVE -- YES,

10  THAT'S CORRECT, YOUR HONOR.  THE PLAINTIFFS TOLD THEM THAT THEY

11  WERE GOING TO MOVE TO COMPEL.

12           THE COURT:  OKAY.  ALL RIGHT.  SO, WHAT WE REALLY

13  HAVE THAT'S RIPE BEFORE ME IS THE ISSUE OF THE ASSERTION OF THE

14  PRIVILEGE ON DECEMBER 27TH.  AND, YOU KNOW, I DON'T HAVE IT

15  BRIEFED BEFORE ME.  AND I UNDERSTAND WHY YOU WERE INSTRUCTING

16  THEM NOT TO ANSWER.  I'M NOT SAYING THAT WAS IMPROPER GIVEN THE

17  SITUATION.  BUT THERE ARE VERY LIMITED CIRCUMSTANCES IN WHICH

18  WE WILL UPHOLD THE ASSERTION OF A TRADE SECRET IF WE FIND THAT

19  THE INTEREST IN THE TRADE SECRET -- YOU KNOW, THE NEED OF THE

20  PARTY IS GREAT -- ITS INTEREST IN THE TRADE SECRET AND THE --

21  THE CONFIDENTIALITY CAN BE PROTECTED BY AN APPROPRIATE

22  PROTECTIVE ORDER.

23           SO, YOU KNOW, MY NORMAL INSTINCT IN THOSE SITUATIONS

24  -- AND, AGAIN, IT DEPENDS ON THE TRADE SECRET.  IT DEPENDS ON

25  WHO IT'S BEING PRODUCED TO.  AND THE RESTRICTIONS ON THE

```
1    PROTECTIVE ORDER.  BUT MY NORMAL INSTINCT IS IF I FIND THE

2    INFORMATION IS RELEVANT -- AND I DO THINK MR. GIBSON HAS STATED

3    A RELEVANT REASON FOR IT -- THEN I ORDER IT PRODUCED PURSUANT

4    TO A PROTECTIVE ORDER.

5              MR. GIBSON:  YOUR HONOR --

6              THE COURT:  SO -- YES.

7              MR. GIBSON:  -- THIS IS JIM GIBSON.

8              I DON'T KNOW IF YOU'RE REFERRING TO AN ADDITIONAL

9    PROTECTIVE ORDER.  BUT THE PARTIES HAVE A PROTECTIVE ORDER IN

10   THIS CASE.  IT'S ALREADY ENTERED BY JUDGE ANDERSON.  AND IT

11   PROVIDES FOR TWO TIERS OF CONFIDENTIALITY.  THE SECOND HIGHEST

12   LEVEL OF PROTECTION IS AN ATTORNEY'S EYES ONLY LEVEL.

13             THE COURT:  AND DOES IT -- AND DOES IT SPECIFICALLY

14   SAY THAT TRADE SECRET INFORMATION WILL BE SUBJECT TO ATTORNEY'S

15   EYES ONLY?

16             MR. GIBSON:  NO.  I DON'T THINK IT SAYS THAT, YOUR

17   HONOR.  WE'RE LOOKING AT IT QUICKLY HERE NOW.  BUT WHAT IT --

18   WHAT IT BASICALLY SAYS IS THE PARTIES MAY DESIGNATE CERTAIN

19   DISCOVERY MATERIALS OR TESTIMONY OF A HIGHLY CONFIDENTIAL END

20   OR OF A PROPRIETARY NATURE AS CONFIDENTIAL ATTORNEY'S EYES

21   ONLY.

22             THE COURT:  SO -- SO, IT WOULD BE MY -- AND, AGAIN,

23   I'M JUST TRYING TO GIVE GUIDANCE TO THE PARTIES, IT WOULD BE MY

24   INSTINCT TO ORDER THAT THE WITNESS ANSWER THOSE QUESTIONS AND

25   THAT THE RESPONSES BE TREATED AS SUBJECT TO THE ATTORNEY'S EYES
```

1   ONLY PROVISION OF THE PROTECTIVE ORDER -- THAT THOSE PORTIONS

2   OF THE TRANSCRIPT BE DESIGNATED AS CONFIDENTIAL.

3          MR. GIBSON:  OKAY.  YOUR HONOR, THIS IS JIM GIBSON

4   AGAIN.

5          IF I MAY, I UNDERSTAND YOU'RE NOT ORDERING ANYTHING

6   TODAY.  BUT GIVEN THE TIME RESTRAINTS THAT THE PARTIES ARE

7   UNDER, HOW WOULD YOU LIKE US TO PROCEED.

8          THE COURT:  WELL, I THINK THE BEST THING FOR THE

9   PARTIES TO DO WOULD BE TO -- AND I KNOW YOU'VE HAD A GREAT DEAL

10  OF CHALLENGE IN THIS CASE IN REACHING AGREEMENTS -- BUT THE

11  BEST -- KNOWING HOW I WOULD VIEW THE LEGAL ISSUE IN THIS

12  MATTER, THE PARTIES PREPARE A STIPULATION THAT WOULD AUTHORIZE

13  THIS WITNESS TO ANSWER THE QUESTIONS THAT WERE PREVIOUSLY NOT

14  ANSWERED UNDER AN INSTRUCTION, THAT SHE BE ASKED THOSE

15  QUESTIONS AGAIN, AND THAT THE RESPONSES BE SUBJECT TO THE

16  PROVISIONS OF THE PROTECTIVE ORDER THAT LIMIT THAT INFORMATION

17  TO ATTORNEY'S EYES ONLY.  AND PUT THAT IN A STIPULATION AND A

18  PROPOSED ORDER.

19         AND THAT WAY YOU CAN TALK ABOUT THE TIMING OF WHEN

20  HER -- YOU KNOW, FOLLOW-UP QUESTIONS, WHAT HAPPENED AND HOW YOU

21  WOULD PROCEED.

22         I KNOW YOU'RE UNDER A TIME CRUNCH, BUT, YOU KNOW, I

23  SORT OF TRIED TO EXPRESS THAT IN AN EARLIER ORDER.  IT'S NOT --

24  NORMALLY, THAT'S NOT THE COURT'S BURDEN.  I MEAN, YOU SHOULD

25  HAVE -- YOU NEEDED TO START ALL THIS DISCOVERY A LITTLE BIT

1   EARLIER I'M TRYING TO SAY.

2           SO, MR. GIBSON, DO YOU THINK YOU AND MS. YU CAN SIT

3   DOWN AND WORK OUT SOME KIND OF STIPULATION KNOWING WHAT MY

4   THOUGHTS ARE ABOUT THAT?

5           MR. GIBSON:  YOUR HONOR, I WILL PROMISE YOU THAT I

6   WILL DO MY BEST TO ATTEMPT TO COME UP WITH A STIPULATION.

7           THE COURT:  WHAT'S THE NAME OF THE WITNESS?

8           MR. GIBSON:  THE NAME OF THE WITNESS IS MEGAN PROUT.

9           THE COURT:  OKAY.

10          MS. GIBSON:  SHE IS AN ATTORNEY AT PLAINS.  AND SHE

11  HAS BEEN -- WELL, SHE WAS DESIGNATED TO TALK TO ALL 30(B)(6)

12  TOPICS, SO.

13          THE COURT:  WHERE DOES SHE RESIDE?

14          MR. GIBSON:  SHE'S IN HOUSTON.

15          THE COURT:  OKAY.  AND HOW MANY QUESTIONS WERE ASKED

16  THAT SHE WAS ORDERED NOT TO OR INSTRUCTED NOT TO ANSWER?

17          MR. GIBSON:  WELL, YOUR HONOR, THE LINE OF

18  QUESTIONING WAS PRETTY MUCH -- LET ME JUST -- MY QUESTION, I'M

19  READING IT FROM SOMETHING THAT'S CERTAINLY NOT AN OFFICIAL

20  TRANSCRIPT, BUT THIS -- I THINK YOU'LL GET THE FLAVOR, YOUR

21  HONOR.

22          I ASKED MS. PROUT, DO YOU KNOW IF PLAINS

23          RECEIVED OR STILL RECEIVES ANY THIRD-PARTY

24          COPYRIGHTED SUBSCRIPTIONS OTHER THAN

25          OIL DAILY THROUGH A SUBSCRIPTION CONTRACT?"

1            AND THEN MS. YU OBJECTED.  AND WE NEVER REALLY GOT TO

2     THE POINT OF BEING ABLE TO ASK QUESTIONS, AT LEAST AS TO ARGOS,

3     OPUS, AND PLATH, WHICH WERE THE SPECIFIC PUBLISHERS THAT WE

4     LISTED IN OUR 30(B)(6) NOTICE.

5            THE WITNESS DID TALK ABOUT ONE OTHER PUBLICATION,

6     YOUR HONOR.  BUT I THINK I -- AS I MENTIONED EARLIER, I DON'T

7     KNOW WHAT THAT PUBLICATION IS.  I DON'T KNOW HOW RELEVANT IT

8     WOULD BE, HOW IT'S DISTRIBUTED, HOW MUCH IT -- IF IT'S EVEN

9     PAID FOR, THAT TYPE OF INFORMATION.

10            THE COURT:  AND HOW MUCH ADDITIONAL TIME DO YOU

11     BELIEVE YOU'D NEED WITH THIS WITNESS TO DO THAT -- THOSE --

12     THOSE AREAS?

13            MR. GIBSON:  OH, I DON'T THINK THAT WOULD TAKE MORE

14     THAN A COUPLE OF HOURS, YOUR HONOR.

15            THE COURT:  OKAY.

16            SO, MS. YU --

17            MS. YU:  YES, YOUR HONOR.

18            THE COURT: -- ARE YOU GOING TO SIT DOWN WITH MR.

19     GIBSON AND TRY AND WORK OUT A STIPULATION ON THIS?

20            MS. YU:  YES, I WILL.  OTHER THAN OPUS, ARGOS, AND

21     PLATH, SHE WAS FREE TO ANSWER ANY QUESTIONS SHE HAD -- I MEAN,

22     MR. GIBSON HAS.

23            THE COURT:  OKAY.

24            MS. YU:  AND THE WITNESS SPECIFICALLY SAID THAT ANY

25     -- OTHER THAN THOSE THREE ENTITIES.  THE ONLY AREA EXPRESSLY

1   OR POTENTIALLY LIMITED TO SINGLE USER THAT WE'VE IDENTIFIED WAS

2   OIL DAILY.  AND ALL THE OTHER ONES ARE MULTIPLE USERS.

3          THE COURT:  OKAY.

4          MS. YU:  AND THERE WAS ONLY ONE PERSON.  SO, I

5   RECOGNIZE THE FACT THAT MR. GIBSON WAS ASKING QUESTIONS ABOUT

6   ANYTHING THIRD PARTY.  I HADN'T -- I HAD TO PROTECT THE

7   PRIVILEGE CONCERNS THAT THE THIRD PARTIES ASSERTED.  AND WE DID

8   NOT WANT TO BE IN A POSITION WHERE WE WOULD BE FACING A

9   LAWSUIT.

10         THE COURT:  I'M NOT SAYING ANYBODY IS NECESSARILY

11  RIGHT OR WRONG HERE.  I DON'T HAVE IT BRIEFED IN FRONT OF ME.

12  AND, YOU KNOW, IT'S -- I DON'T LIKE -- AS I SAID NOW TOO MANY

13  TIMES, I DON'T LIKE TO RULE ON SOMETHING THAT HASN'T BEEN

14  BRIEFED, THAT I HAVEN'T HAD AN OPPORTUNITY TO REALLY SIT DOWN

15  AND THINK ABOUT.  BUT BASED ON WHAT YOU'VE TOLD ME TODAY, YOU

16  KNOW, THE THREE COMPANIES THAT WERE OBJECTING TO THIS

17  INFORMATION BEING DISCLOSED HAD A BURDEN TO MOVE FOR A

18  PROTECTIVE ORDER UNDER RULE 45 AND RULE 26.  AND THEY FAILED TO

19  DO SO.

20         AND TRADE SECRETS ARE NOT SUBJECT TO AN ABSOLUTE

21  PRIVILEGE.  AND IF THEY'RE RELEVANT AND NECESSARY TO PARTIES'

22  CLAIMS THEY CAN BE DISCOVERED AND PRODUCED SUBJECT TO A

23  PROTECTIVE ORDER.

24         SO, WHAT I WOULD LIKE THE PARTIES TO DO IS REACH A

25  STIPULATION ABOUT HOW A FURTHER DEPOSITION OF MS. PROUT COULD

1    GO FORWARD ON A VERY LIMITED BASIS.

2              I THINK GIVEN THE TIME CONSTRAINTS ON THE PARTIES

3    THERE SHOULD BE AT LEAST CONSIDERATION GIVEN TO TAKING THE

4    DEPOSITION PERHAPS TELEPHONICALLY OR BY VIDEO.

5              AND PUT A STIPULATION AND A PROPOSED ORDER TOGETHER

6    THAT WILL SATISFY THAT.  AND LET'S PUT A TIME LIMIT ON IT.

7              WHAT'S THE AVAILABILITY OF COUNSEL TO HAVE A MEET AND

8    CONFER ON THIS IN THE NEXT FEW DAYS?

9              MR. GIBSON:  YOUR HONOR, THIS IS JIM GIBSON FOR

10   PLAINTIFFS.

11             I AM AVAILABLE ANYTIME DURING THE NEXT FEW DAYS.

12             THE COURT:  MS. YU.

13             MS. YU:  YES.  WE WOULD BE AVAILABLE TO WORK THIS OUT

14   AS SOON AS WE CAN.

15             THE COURT:  OKAY.  SO, LET'S PUT A TIME LIMIT ON

16   THIS.  AS OPTIMISTIC AS I AM THAT YOU CAN WORK SOMETHING OUT,

17   AND I SINCERELY HOPE THAT YOU CAN, LET'S GIVE THE PARTIES TWO

18   DAYS TO MEET AND CONFER AND TO SUBMIT A PROPOSED STIPULATION

19   AND ORDER TO THE COURT.

20             IF YOU CANNOT REACH A STIPULATION WITHIN TWO DAYS,

21   THEN, BOTH PARTIES SHALL SUBMIT TO ME A PROPOSED ORDER THAT

22   REFLECTS THAT THE DEPOSITION SHALL CONTINUE ON THOSE LIMITED

23   AREAS AND THAT THE INFORMATION THAT THE WITNESS DISCLOSES WILL

24   BE SUBJECT TO THE PROTECTIVE ORDER'S TERMS, LIMITING THAT

25   CONFIDENTIAL INFORMATION TO ATTORNEY'S EYES ONLY.

```
 1              MR. GIBSON:  YOUR HONOR.

 2              THE COURT:  YES?

 3              MR. GIBSON:  THIS IS JIM GIBSON AGAIN.

 4              UNDERSTOOD.

 5              I JUST WANTED TO SAY THAT THERE IS ONE OTHER ISSUE

 6    THAT CAME UP AT THIS DEPOSITION THAT PERHAPS YOU COULD GIVE US

 7    SOME DIRECTION ON --

 8              THE COURT:  OKAY.

 9              MR. GIBSON: -- TO BE INCLUDED IN THIS STIPULATION OR

10    NOT, IF YOU FEEL WE'RE NOT ENTITLED TO IT.

11              THE ISSUE HERE, YOUR HONOR, IS WE ASKED THE WITNESS

12     -- AGAIN, MS. PROUT IS A 30(B)(6) WITNESS -- IF SHE COULD TELL

13    US THE FACTS THAT SUPPORT THE DEFENDANT'S AFFIRMATIVE DEFENSES

14    AND COUNTERCLAIMS.

15              AND DEFENSE COUNSEL OBJECTED.  AND WE BELIEVE THAT

16    GIVEN THE FACT THAT THERE ARE NUMEROUS AFFIRMATIVE DEFENSES,

17    SOME OF WHICH I'M NOT REALLY EVEN TOO SURE HOW THEY APPLY, TO

18    ASK THE WITNESS WHAT FACTS -- IN FACT, THE QUESTION THAT I

19    ASKED IS, WHAT FACTS DID DEFENDANTS RECEIVE FROM PLAINTIFFS

20    THAT WOULD SUPPORT THE AFFIRMATIVE DEFENSES AND COUNTERCLAIMS.

21              AND IT WAS BASICALLY AN ACROSS-THE-BOARD OBJECTION.

22    AND I'LL -- DEFENSE COUNSEL CAN EXPLAIN WHY.

23              BUT IT'S OUR POSITION, YOUR HONOR, THAT WE ARE

24    ENTITLED TO KNOW WHAT FACTS DEFENDANTS WILL RELY ON TO SUPPORT

25    THEIR AFFIRMATIVE DEFENSES AND COUNTERCLAIMS.
```

1          AND, YOU KNOW, DEFENSE COUNSEL -- ONE OF THE REASONS

2     THAT I BELIEVE THE OBJECTIONS WERE RAISED IS, YOU KNOW, YOU

3     CAN'T ASK CONTENTION INTERROGATORIES AT A DEPOSITION.  AND, YOU

4     KNOW, TO BE PERFECTLY OPEN HERE, WE HAVE ASKED INTERROGATORIES

5     THAT ASK THE EXACT SAME THING.  AND WE GET NOTHING BUT

6     OBJECTIONS.  WE DON'T GET ANY SUBSTANTIVE RESPONSE.  THEY'RE

7     OVERLY BROAD, UNDULY BURDENSOME, AND ALL THESE USUAL OBJECTIONS

8     BUT NO RESPONSES.

9          SO, WE TRIED TO ASK THE WITNESS AT DEPOSITION, AND WE

10    WERE BASICALLY TOLD, WELL, YOU KNOW, THIS IS -- THESE ARE

11    PROPER CONTENTION INTERROGATORIES -- WHICH WE TRIED.  AND, YOU

12    KNOW, WE BELIEVE WE'RE ENTITLED TO -- WE'RE NOT LOOKING FOR --

13    THE YOUNG LADY WHO IS TESTIFYING IS, IN FACT, AN ATTORNEY AT

14    PLAINS.  WE'RE NOT LOOKING FOR HER MENTAL IMPRESSIONS.  WE'RE

15    NOT LOOKING FOR ANY ATTORNEY-CLIENT PRIVILEGE.  WE'VE STRESS

16    THAT -- MS. PROUT WAS DEPOSED ALSO IN SEPTEMBER IN PLAINS ONE

17    AND HAS -- PRETTY MUCH THE SAME OBJECTIONS WERE RAISED.

18          BUT WE'RE NOT LOOKING FOR THAT TYPE OF INPUT.  WE'RE

19    STRICTLY LOOKING FOR THE FACTS.  AND WE'RE NOT GETTING ANY

20    ANSWERS THAT WE BELIEVE WE'RE ENTITLED TO.

21          SO, I DON'T KNOW IF YOU CAN GIVE US ANY DIRECTION ON

22    THAT TOPIC THAT MAYBE IS APPROPRIATE TO PUT IN A STIPULATION IF

23    YOU FEEL WE'RE ENTITLED TO IT.  IF WE'RE NOT, WE'LL LEAVE IT

24    ALONE.

25          THE COURT:  MS. YU.

1           MS. YU:  YES, YOUR HONOR.  WE FILED AN OPPOSITION TO

2    PLAINTIFF'S EX PARTE APPLICATION ASKING FOR THE SAME -- THE

3    VERY SAME QUESTIONS ON NOVEMBER 30TH -- IT'S DOCKET NUMBER 171

4    -- ADDRESSING THE SAME TYPE OF CONTENTION INTERROGATORY

5    QUESTIONS THAT MR. GIBSON IS MENTIONING RIGHT NOW.

6           PLAINTIFF HAS ASKED OUR WITNESS TO SET FORTH ALL

7    FACTS WHICH SUPPORT YOUR ALLEGATION THAT YOUR AFFIRMATIVE

8    DEFENSE IS VALID OR WHATEVER THE DEFENSE MAY BE.

9           AND WE CITED AND ADVISED MR. GIBSON, PLAINTIFF'S

10   COUNSEL, OF A SERIES OF CASES THAT ARE SET FORTH IN DOCKET

11   NUMBER 174 --171, YOUR HONOR.  CASE LAW IS REPLETE.  WE HAVE

12   EXTENSIVE CASE LAW THAT SAYS THAT CONTENTION INTERROGATORY

13   TYPES OF QUESTIONS AT A 30(B)(6) DEPOSITION ARE NOT

14   APPROPRIATE.  AND THERE ARE EXTENSIVE CASES THAT WE HAVE

15   ALREADY BRIEFED FOR THE COURT ON NOVEMBER 30, 2012.

16          AND, SO, OTHER THAN THE FACT THAT THESE QUESTIONS ARE

17   INAPPROPRIATE, THEY'RE ALSO COMPOUND.  IT CALLS FOR

18   ATTORNEY-CLIENT PRIVILEGE INFORMATION.  WE COULD NOT ALLOW OUR

19   WITNESS TO DIVULGE ANY TYPE OF PRIVILEGE COMMUNICATIONS THAT,

20   YOU KNOW, SHE'S HAD WITH THE LAWYERS AT PLAINS.

21          SO, I INVITED MR. GIBSON TO REPHRASE THE QUESTIONS SO

22   THAT HE COULD ELICIT FACTS FOR EACH OF THE CLAIMS AND

23   AFFIRMATIVE DEFENSES JUST LIKE THE WAY WE DID IT WITH THEIR

24   WITNESSES.

25          SO, IF THERE ARE, FOR EXAMPLE, AN AFFIRMATIVE

1    DEFENSE, AND THERE ARE A NUMBER OF ELEMENTS, AND AS WE ARE

2    SEEKING FACTS FOR EACH OF THOSE ELEMENTS, WE WOULD PHRASE A

3    QUESTION SO THAT WE CAN ELICIT FACTS.

4         MR. GIBSON DID NOT DO THAT.  INSTEAD, HE CONTINUED TO

5    ASK THIS WITNESS TO SET FORTH ALL FACTS WHICH SUPPORT YOUR

6    CONTENTION THAT -- FOR EACH OF THE CLAIMS AND DEFENSES.

7         AND IF I MAY, YOUR HONOR, DIRECT THE COURT TO DOCKET

8    NUMBER 171 AGAIN.  IT STARTS ON PAGE 15.  I'M NOT SURE IF THE

9    COURT HAS THE OPPOSITION IN FRONT OF -- IN FRONT OF YOU, BUT I

10   CITED EXTENSIVE CASES.  AND I CAN REPEAT THOSE CASES FOR YOU

11   RIGHT NOW.  BUT I DON'T WANT TO BURDEN THE COURT WITH ALL OF

12   THESE CASES.  BUT THEY ARE CITED EXTENSIVELY, THAT CONTENTION

13   INTERROGATORY TYPE OF QUESTIONS AT A 30(B)(6) DEPOSITION ARE

14   NOT ALLOWED.

15        THE COURT:  OKAY.  SO, MY THOUGHTS ON THIS, MR.

16   GIBSON, ARE THAT WHILE I WOULD AGREE WITH YOU THAT THE PARTIES

17   ARE GENERALLY ENTITLED TO THAT TYPE OF INFORMATION, IT IS TRUE

18   THAT THAT TYPE OF INFORMATION IS MORE COMMONLY ELICITED THROUGH

19   WRITTEN DISCOVERY FOR SOME OF THE REASONS THAT MS. YU HAS

20   MENTIONED, THAT IS, IT'S THE TYPE OF QUESTION THAT WE SORT OF

21   EXPECT A PARTY TO GIVE IN A WRITTEN INTERROGATORY RESPONSE OR

22   IN RESPONSE TO A REQUEST FOR PRODUCTION OF DOCUMENTS OR EVEN A

23   REQUEST FOR ADMISSIONS.

24        AND I BELIEVE THAT IT WAS RAISED BEFORE ME IN A

25   MOTION.  AND I FOUND THAT THE MOTION WAS UNTIMELY.

1          SO, I'M NOT DISAGREEING THAT YOU'RE ENTITLED TO THAT

2    INFORMATION, BUT, UNFORTUNATELY, I THINK IT NEEDED TO BE

3    BROUGHT TO THE COURT MORE PROPERLY AFTER THE ORIGINAL WRITTEN

4    DISCOVERY WAS SERVED AND THE ANSWERS WERE UNSATISFACTORY TO

5    YOU.

6          IN TERMS OF WHETHER OR NOT IT'S APPROPRIATE FOR A

7    30(B)(6) WITNESS, I WOULD TEND TO AGREE THAT, YOU KNOW, A

8    30(B)(6) WITNESS IS A HUMAN BEING WHO'S DESIGNATED TO SPEAK ON

9    BEHALF OF A CORPORATION.  BUT THERE IS A FAIRLY -- A FAIR

10   NUMBER OF CASES THAT EMPHASIZE THAT A 30(B)(6) WITNESS IS NOT

11   TO BE SUBJECT TO A MEMORY TEST.  THE WITNESS HAS TO BE PREPARED

12   BUT PREPARED REASONABLY.  AND I DON'T THINK IT WOULD BE

13   REASONABLE TO EXPECT A 30(B)(6) WITNESS TO BE PREPARED TO

14   RECITE, PARTICULARLY IN A CASE OF THIS COMPLEXITY, ALL OF THE

15   FACTS THAT A PARTY MIGHT WANT TO ASSERT AS ITS AFFIRMATIVE

16   DEFENSE.

17         SO, I DO AGREE THAT YOU WERE PERHAPS AT ONE TIME

18   ENTITLED TO THAT INFORMATION BUT NOT THROUGH A 30(B)(6) WITNESS

19   AND NOT NOW.

20         MR. GIBSON:  YOUR HONOR, CAN I JUST ADD SOMETHING

21   HERE BECAUSE, A, I DIDN'T ASK THE WITNESS FOR ALL FACTS.  IT

22   WASN'T A MEMORY TEST.  I WASN'T TRYING TO DO THAT.

23         MY QUESTION TO THE WITNESS WAS WHAT FACTS HAVE

24   PLAINTIFFS PROVIDED IN THIS CASE TO SUPPORT THE FIRST

25   AFFIRMATIVE DEFENSE "FAILURE TO STATE A CLAIM."  AND I INTENDED

1   TO GO THROUGH EACH OF THE DEFENSES.

2           SO, I WASN'T ASKING FOR ALL.  YOU KNOW, I WAS JUST

3   ASKING THIS WITNESS -- AND PARTICULARLY ON SOME OF THE DEFENSES

4   IN THIS CASE, HELP US OUT.  WE DON'T EVEN UNDERSTAND THE

5   DEFENSE.

6           THE COURT:  AND, AGAIN, I UNDERSTAND YOUR

7   FRUSTRATION, BUT I THINK THAT'S THE TYPE OF FRUSTRATION THAT

8   HAS TO BE ADDRESSED THROUGH WRITTEN DISCOVERY.

9           MR. GIBSON:  YOUR HONOR, IF I COULD JUST SAY ONE LAST

10  THING ON THIS TOPIC.  WE HAD SERVED WRITTEN DISCOVERY ON THIS,

11  YOUR HONOR, IN PLAINS TWO ON NOVEMBER 21ST.  AND THE

12  INTERROGATORY ASKED THE DEFENDANTS TO IDENTIFY ALL FACTS THAT

13  DEFENDANTS INTEND TO RELY ON TO SUPPORT ITS AFFIRMATIVE

14  DEFENSES AND COUNTERCLAIMS.

15          ON 12/21 WE GOT DEFENDANT'S RESPONSE AND ITS STRAIGHT

16  OBJECTIONS.  AND DISCOVERY CLOSED ON THE 28TH.

17          THE COURT:  I UNDERSTAND.  BUT, MR. GIBSON, MANY OF

18  THE DEFENSES I'M SURE WERE SIMILAR IN THE FIRST ACTION AS THEY

19  ARE IN THE SECOND ACTION.  SO, I STILL THINK YOU COULD HAVE

20  BROUGHT THAT DISCOVERY MUCH EARLIER THAN NOVEMBER 21ST.

21          AND EVEN IF, EVEN IF YOU WERE GROSSLY DISSATISFIED

22  WITH THE DEFENDANT'S RESPONSES ON DECEMBER 21ST, IT'S NOW

23  JANUARY 3RD.  AND YOU NEEDED TO FILE SOMETHING.  YOU NEEDED TO,

24  YOU KNOW, BRING IT TO THE COURT'S ATTENTION IN A WRITTEN FORM.

25  AND IT JUST ISN'T TIMELY RIGHT NOW.

1          SO, I CAN TELL YOU MY THOUGHTS ARE THAT I WOULD --

2     ANY REQUEST FOR THAT INFORMATION FROM A 30(B)(6) WITNESS AT

3     THIS DATE WOULD BE DENIED.

4          MR. GIBSON:  OKAY, YOUR HONOR.

5          THE COURT:  OKAY.

6          SO, ARE THERE ANY QUESTIONS ABOUT ANYTHING WE'VE

7     DISCUSSED?

8          MR. GIBSON:  THERE ISN'T, YOUR HONOR.

9          THERE IS ONE OTHER -- ONE OTHER ISSUE.  THIS IS AN

10    ISSUE THAT MR. ZAVITSANOS IS ON THE PHONE ABOUT.  HE IS -- HE

11    REPRESENTS A THIRD-PARTY WITNESS THAT WE DEPOSED ON DECEMBER

12    28TH.  AND THE WITNESS, MR. MIERS, WAS A FORMER EMPLOYEE OF

13    DEFENDANTS.  AND DURING THE COURSE OF THAT DEPOSITION I ASKED

14    MR. MIERS WHAT HE DID TO PREPARE FOR THE DEPOSITION.  AND HE

15    TOLD ME THAT HE DID A COUPLE OF THINGS, BUT ONE OF THE THINGS

16    HE DID WAS HE SPOKE WITH AN ATTORNEY AT PLAINS.  AND I TRIED TO

17    ASK HIM SOME QUESTIONS ABOUT THAT, AND I GUESS MR. MIERS'

18    ATTORNEY AND COUNSEL FOR PLAINS, WHO WAS ALSO AT THE

19    DEPOSITION, BOTH OBJECTED.

20         AND THE ISSUE OF A JOINT DEFENSE CAME UP.  AND THIS

21    IS A SITUATION THAT -- YOU KNOW, I DON'T REALLY SEE A JOINT

22    DEFENSE.  I KNOW COUNSEL FOR MR. MIERS WANTS TO SPEAK HERE

23    MAYBE I SHOULD LET HIM GIVE HIS POSITION ON THIS.  BUT TO ME I

24    JUST -- YOU KNOW, THE JOINT DEFENSE, AS I UNDERSTAND IT, THAT

25    THE PARTIES ASSERTING IT HAVE TO BE, YOU KNOW, IN SOME TYPE OF

1    COMMON DEFENSE SCHEME.  AND HERE I JUST DON'T SEE IT.

2            I DON'T KNOW WHETHER YOU WANT TO ADDRESS THIS TODAY,

3    YOUR HONOR.  AND I WILL SAY THIS UPFRONT, MR. MIERS APPEARED

4    PURSUANT TO A SUBPOENA THAT HAD ISSUED OUT OF A COURT IN

5    HOUSTON.

6            BUT THE ONLY REASON I'M RAISING IT TODAY IS ONE OF

7    THE PARTIES AT THE DEPOSITION WAS ASSERTING THIS DEFENSE.  AND

8    I THOUGHT IT MIGHT BE HELPFUL IF WE COULD GET YOUR THOUGHTS AS

9    TO WHETHER THERE REALLY IS A JOINT DEFENSE -- ATTORNEY-CLIENT

10   PRIVILEGE WAS ATTACHED TO A CONVERSATION BETWEEN MR. MIERS AND

11   THE -- COUNSEL AT PLAINS.

12           THE COURT:  AND, MS. YU, DID YOU WANT TO SAY ANYTHING

13   IN RESPONSE?

14           MS. YU:  YES, YOUR HONOR.  JUST -- YES, YOUR HONOR.

15           FIRST OF ALL, I NEVER INSTRUCTED MR. MIERS NOT TO

16   ANSWER ANY QUESTION.  THE ISSUE OF CONSULTING FOR A PLAINS

17   ATTORNEY CAME UP WHEN MR. GIBSON SPECIFICALLY ASKED THIS

18   WITNESS, HAVE YOU TALKED TO ANYBODY AT PLAINS, NOT WHAT DID YOU

19   DO TO PREPARE FOR YOUR DEPOSITION.  BECAUSE TO ANSWER -- IN

20   RESPONSE TO THAT QUESTION THE WITNESS SAID I LOOKED AT THE

21   YOUTUBE AND I WATCHED THE TAPE TO PREPARE FOR HIS DEPOSITION.

22           BUT THE QUESTION DIRECTED TO ATTORNEY-CLIENT

23   PRIVILEGE COMMUNICATION CAME UP WHEN MR. GIBSON ASKED HIM,

24           "DID YOU TALK TO ANYBODY AT PLAINS?"

25           AND HE SAID HE DID.

1          "WHO DID YOU SPEAK WITH?"

2          AND HE IDENTIFIED THE PERSON.

3          AND HE SAID, "WHO IS THAT PERSON?"

4          "THAT PERSON IS AN ATTORNEY."

5          SO, THAT'S WHEN MR. MIERS' ATTORNEY INSTRUCTED HIM

6     NOT TO ANSWER.  I THINK HE LIMITED THE ANSWER TO MAYBE A TOPIC.

7          I ALSO OBJECTED BECAUSE TO THE EXTENT THAT THIS

8     WITNESS WAS SEEKING LEGAL ADVICE, NOTHING WAS REALLY -- THE

9     SUBSTANCE OF THE COMMUNICATION WAS NOTHING REALLY IMPORTANT.

10    AND YOU CERTAINLY CAN TALK ABOUT THAT -- WE AS LAWYERS HAVE TO

11    DO THAT.  MR. GIBSON IN RESPONSE ASKED THE WITNESS, DID YOU

12    RETAIN THIS LAWYER.  AND I OBJECTED ON THE GROUND THAT YOU

13    DON'T HAVE TO RETAIN A LAWYER TO CREATE A PRIVILEGE.  IF

14    SOMEBODY SEEKS LEGAL ADVICE FROM AN ATTORNEY, WHETHER THEY PAY

15    THEM OR NOT, THAT'S WHAT CREATES AN ATTORNEY-CLIENT PRIVILEGE

16    COMMUNICATION.  AND, SO, I OBJECTED ON THOSE GROUNDS.

17         BUT I DID NOT INSTRUCT THE WITNESS NOT TO ANSWER

18    BECAUSE I DON'T REPRESENT THE WITNESS AND I DIDN'T REPRESENT

19    HIM EVER.  SO, THAT WAS THE BASIS OF MY OBJECTION TO THE EXTENT

20    THAT THIS WITNESS WAS CONSULTING A LAWYER, IN-HOUSE COUNSEL AT

21    PLAINS.

22         SO, THAT WAS THE EXTENT OF QUESTIONING PERTAINING TO

23    MR. MIERS, THE WITNESS'S COMMUNICATION WITH ANOTHER ATTORNEY.

24    AND MR. MIERS' ATTORNEY IN HOUSTON, MR. JOHN ZAVITSANOS, CAN

25    SPEAK MORE ABOUT THAT.

1          BUT THE JOINT DEFENSE -- JOINT INTEREST OR JOINT

2    DEFENSE PRIVILEGE CAME UP BECAUSE MR. ZAVITSANOS'S OFFICE

3    APPARENTLY RESEARCHED THIS ISSUE EXTENSIVELY AND BROUGHT TO MY

4    ATTENTION THAT HE WAS NOT GOING TO PERMIT HIS CLIENT TO TALK

5    ABOUT ANY OF THIS.

6          AND I'VE LOOKED AT THE CASES THAT THEY FOUND, AND I

7    THOUGHT THEY WERE ON POINT, AND I AGREED AS WELL.

8          MR. ZAVITSANOS:  AND, YOUR HONOR, MAY I BE HEARD?

9          THE COURT:  SURE.  AND WHO --

10          MR. ZAVITSANOS:  THIS IS JOHN ZAVITSANOS.  I'M

11   CALLING FROM HOUSTON.

12          THERE ARE A NUMBER OF PROCEDURAL PROBLEMS I SUPPOSE.

13   BUT I'M GOING TO PUT THOSE TO THE SIDE FOR A SECOND AND ADDRESS

14   THOSE AT THE END.

15          LET ME, IF I CAN, WHAT I'D LIKE TO DO IS -- I THINK

16   THIS IS A -- RESPECTFULLY, I THINK THIS IS MUCH ADO ABOUT

17   NOTHING, AND LET ME EXPLAIN WHY.

18          THE SEQUENCE OF EVENTS IS AS FOLLOWS.  MR. MIERS IS A

19   FORMER PLAINS EMPLOYEE.  HE NO LONGER WORKS WITH THE COMPANY.

20   HE WORKS, IN FACT, AT ANOTHER ENERGY COMPANY HERE IN HOUSTON.

21   HE RECEIVED THE SUBPOENA, WHICH WAS ISSUED BY THE FEDERAL COURT

22   HERE IN HOUSTON.  HE SAW THAT PLAINS WAS A PARTY TO THE CASE.

23   HE CALLED THE IN-HOUSE LAWYER THAT I GUESS HE HAD WORKED WITH

24   WAY BACK WHEN AT PLAINS.

25          AT THAT POINT IN THE DEPOSITION I INSTRUCTED HIM NOT

1   TO DIVULGE THE DETAILS OF WHAT THEY DISCUSSED.  BUT BECAUSE I

2   KNEW THAT THE ONLY THING THEY DISCUSSED WAS SCHEDULING I AGREED

3   TO ALLOW THE WITNESS TO ANSWER QUESTIONS ON THE TOPIC OF WHAT

4   THEY TALKED ABOUT.

5           THE WITNESS CONFIRMED, BOTH IN RESPONSE TO QUESTIONS

6   BY I BELIEVE MR. GIBSON AND MORE SPECIFICALLY BY ME THAT THE

7   TOPIC OF WHAT HE DISCUSSED WITH THE LAWYER AT PLAINS WAS WHEN

8   DO I NEED TO APPEAR, WHERE DO I NEED TO GO, THAT KIND OF THING.

9           I DID NOT FEEL COMFORTABLE IN HAVING HIM GO INTO THE

10  DETAILS BECAUSE IT WAS A BELT AND SUSPENDERS THING.  I DID NOT

11  WANT HIM, YOU KNOW, RISKING WAIVING THE PRIVILEGE.  AND THE

12  PRIVILEGE THAT WAS ASSERTED IS NOT A JOINT DEFENSE PRIVILEGE.

13  AND I DON'T MEAN TO BE PEDANTIC HERE, BUT IT'S ACTUALLY A

14  COMMON INTEREST PRIVILEGE.

15          MR. MIERS, I GUESS THEORETICALLY, IS A POTENTIAL

16  DEFENDANT BECAUSE HE WAS ONE OF THE PEOPLE IN PLAINS WHO HAD

17  FORWARDED THIS NEWSPAPER TO OTHER PEOPLE WITHIN THE -- WITHIN

18  THE COMPANY.  AND, SO, I -- YOU KNOW, I JUST FELT THAT AT AN

19  ABUNDANCE OF CAUTION -- BUT NO IF, ANDS OR BUTS THE ONLY THING

20  THEY TALKED ABOUT, AND I'LL REPRESENT THIS TO THE COURT, AND

21  THE WITNESS IN FACT HAS SAID THIS AS WELL, WAS SCHEDULING.

22  THAT'S IT.

23          THE QUESTION WAS NOT -- AND I THINK MR. GIBSON MAY BE

24  REMEMBERING THIS INCORRECTLY, THE QUESTION WAS NOT, WHAT DID

25  YOU DO TO PREPARE FOR THE DEPOSITION THAT PRECEDED THE ISSUE OF

1  HIM CALLING THE PLAINS LAWYER.

2           RATHER, THE QUESTION WAS, WHAT DID YOU DO AFTER YOU

3  GOT THE SUBPOENA?

4           OKAY.  NOW, PROCEDURALLY, YOUR HONOR, WITH ALL

5  RESPECT, AND YOU'VE BEEN EXTREMELY PATIENT HERE, BUT I THINK

6  PROCEDURALLY -- AND WE DID SEND A LETTER OVER, YOUR HONOR.  I

7  DON'T KNOW IF YOU HAD AN OPPORTUNITY TO LOOK AT IT, BUT I THINK

8  THAT, AGAIN FROM A BELTS AND SUSPENDERS STANDPOINT, I BELIEVE

9  RESPECTFULLY THAT THE COURT THAT HAS THE AUTHORITY TO DEAL WITH

10  THIS -- REALLY WITH THIS NON-ISSUE BECAUSE THAT'S WHAT IT IS IS

11  THE COURT IN HOUSTON FROM WHERE THE SUBPOENA ISSUED UNDER THE

12  CASES UNDER RULE 45.  AND I WILL NOT -- I WILL NOT BOTHER

13  RECITING THOSE CASES.  WE DID FORWARD THAT TO YOUR HONOR'S

14  CLERK.  AND IT'S IN THE LETTER THAT WE SENT OVER EARLIER TODAY.

15  AND I WOULD -- I WOULD DIRECT YOUR HONOR RESPECTFULLY TO LOOK

16  AT THAT.

17           THE COURT:  MR. GIBSON.

18           MR. GIBSON:  YES.

19           THE COURT:  SO, I GUESS WITHOUT COMMENTING ON THE --

20  SORT OF THE COMMON INTEREST OR JOINT DEFENSE ASSERTION, DO YOU

21  AGREE THAT THIS IS REALLY AN ISSUE FOR A DIFFERENT COURT.

22  BECAUSE THE WITNESS WAS APPEARING PURSUANT TO A SUBPOENA ISSUED

23  OUT OF ANOTHER DISTRICT?

24           MR. GIBSON:  YES.  WELL, ACTUALLY, YOUR HONOR, I DO

25  THINK THAT THE -- THAT IF WE NEED TO TAKE SOMETHING UP FURTHER

1    WITH MR. MIERS ABOUT HIS TESTIMONY, YES, THE SUBPOENA ISSUED

2    FROM THE DISTRICT COURT IN HOUSTON.

3            BUT THE REASON I WANTED TO RAISE THIS TODAY IS -- AND

4    I BELIEVE I QUALIFIED IT, THAT HE MAY NOT WANT TO TALK TO MR.

5    -- AT ALL, WAS THAT THE DEFENSE COUNSEL FOR PLAINS OBJECTED

6    BASED ON ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS.  AND THAT'S

7    THE PART I DON'T SEE.  THAT'S THE ONLY REASON I'M RAISING THAT.

8    I MEAN, IF I --

9            THE COURT:  WELL, LET ME TELL YOU A COUPLE OF THINGS,

10   MR. GIBSON.  I THINK -- AND FORGIVE ME, I CAN'T REMEMBER NOW

11   THE NAME OF COUNSEL FROM HOUSTON, THE GENTLEMAN WHO WAS JUST

12   SPEAKING.

13           MR. ZAVITSANOS:  YOUR HONOR, I HAVE A HARD TIME WITH

14   THAT MYSELF, AND IT'S MY NAME.  IT'S ZAVITSANOS.

15           THE COURT:  OKAY.

16           I THINK HE'S CORRECT PROCEDURALLY THAT IT WOULD BE A

17   MATTER FOR THE DISTRICT IN WHICH THE ISSUE RAISED, ALTHOUGH

18   THERE IS SOME CASE LAW THAT SUGGESTS THAT DISTRICT WOULD HAVE

19   THE DISCRETION TO TRANSFER IT BACK TO THIS DISTRICT BECAUSE OF

20   THE FAMILIARITY WITH THE ISSUES THAT THIS COURT HAS.

21           BUT IRRESPECTIVE OF WHETHER PROCEDURALLY IT WOULD BE

22   BEFORE ME OR BEFORE A JUDGE IN HOUSTON, THE ISSUE OF THE

23   APPLICATION OF THE COMMON INTEREST DOCTRINE, THE JOINT DEFENSE

24   PRIVILEGE IS A VERY FACT SPECIFIC ISSUE.  AND IT WOULD BE

25   SOMETHING I AGAIN WOULD BE HESITANT TO REALLY RULE ON OR

1    COMMENT ON WITHOUT BRIEFING FROM THE PARTIES.

2            I WILL SAY THAT BASED ONLY THE PARTIES HAVE TOLD ME

3    ABOUT MR. MIERS, THAT I THINK IT IS PROBABLY LIKELY THAT HE

4    WOULD BE ELIGIBLE FOR THE COMMON INTEREST OR JOINT DEFENSE

5    PRIVILEGE.  AND I USE THEM INTERCHANGEABLY EVEN THOUGH I THINK

6    THEY ARE SLIGHTLY DISTINCT DOCTRINES.

7            SO, YOU KNOW, THAT WOULD BE ONE THING I WOULD JUST --

8    I WOULD THINK THAT HE PROBABLY -- FROM MY READING OF IT AND THE

9    CASE THAT I'M MOST FAMILIAR WITH IS U.S. VERSUS GONZALEZ IN THE

10   NINTH CIRCUIT.  BUT THERE'S OTHER DISTRICT COURTS THAT HAVE

11   WRITTEN ABOUT THIS.  GRIFFITH V. DAVIS, ALSO IN THE CENTRAL

12   DISTRICT.  THESE CASES HAVE TALKED ABOUT THAT PRIVILEGE

13   EXTENSIVELY.

14           AND FROM WHAT YOU'VE TOLD ME FACTUALLY I DO THINK MR.

15   MIERS WOULD BE ELIGIBLE FOR IT.

16           AND THE OTHER ISSUE THAT I THINK IS COMPLICATING THIS

17   EVEN FURTHER IS THAT THE APPLICATION OF THE ATTORNEY-CLIENT

18   PRIVILEGE WHEN THERE'S A CORPORATION INVOLVED BECOMES MORE

19   COMPLEX BECAUSE IT'S NOT AS CLEAN AS IT MIGHT BE WHEN IT IS A

20   NON-CORPORATE PARTY.

21           SO -- AND THE CASE THAT I'M THINKING OF IS

22   MACKENZIE-CHILDS VERSUS MACKENZIE-CHILDS OUT OF THE WESTERN

23   DISTRICT OF NEW YORK 2009.  AND TALKS ABOUT HOW CORPORATIONS

24   DON'T NECESSARILY HAVE TO REPRESENT AN EMPLOYEE FOR THE

25   PRIVILEGE TO BE ASSERTED BY THE CORPORATION.

1                SO, I THINK THERE ARE LAYERS AND LAYERS OF

2      COMPLICATION HERE TO PURSUING MR. MIERS.  AND IT SOUNDS LIKE

3      FROM WHAT COUNSEL HAS REPRESENTED, THAT THERE ISN'T A LOT OF

4      PURSUE.

5                SO, I'M NOT RULING ON IT BECAUSE IT'S REALLY NOT

6      BEFORE ME.  LIKE I SAID, IT'S A VERY, VERY FACT SPECIFIC ISSUE,

7      THAT I'M JUST TELLING YOU MY THOUGHTS THAT I'M NOT -- RIGHT NOW

8      IT DOESN'T SEEM TO ME THAT IT WAS IMPROPER TO ASSERT THAT

9      OBJECTION.

10               MR. GIBSON:  OKAY, YOUR HONOR.  THANK YOU VERY MUCH.

11               THE COURT:  ALL RIGHT.  IS THERE ANY OTHER QUESTIONS

12     OR CONCERNS FOR THE PARTIES?

13               MR. GIBSON:  NONE FROM PLAINTIFFS AT THIS POINT IN

14     TIME, YOUR HONOR.

15               MS. YU:  NO, YOUR HONOR.  THANK YOU FOR YOUR TIME.

16               THE COURT:  OKAY.  SO, WE'LL ISSUE A SHORT MINUTE

17     ORDER.  LET YOU KNOW IT WILL DIRECT THE PARTIES TO MEET AND

18     CONFER, TO FILE THE STIPULATION AND PROPOSED ORDER WITHIN TWO

19     DAYS.

20               OR IN THE ALTERNATIVE, IF THEY CAN'T COME TO A

21     STIPULATION AND PROPOSED ORDER, EACH SIDE SUBMIT A SEPARATE

22     PROPOSED ORDER.

23               OKAY?

24               MS. YU:  YES, YOUR HONOR.

25               THE COURT:  ALL RIGHT.  THANK YOU SO MUCH.

40

1              MR. GIBSON:  THANK YOU, YOUR HONOR.

2              MS. YU:  THANK YOU VERY MUCH.

3              MR. ZAVITSANOS:  THANK YOU, JUDGE.

4              (PROCEEDINGS CONCLUDED 4:19 P.M.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

41

1

2

3                          C E R T I F I C A T E

4

5           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

6    FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

7    ABOVE-ENTITLED MATTER.

8

9

10

11   /S/ DOROTHY BABYKIN                     1/8/13

12   _____        _____

13   FEDERALLY CERTIFIED TRANSCRIBER         DATED

14   DOROTHY BABYKIN

15

16

17

18

19

20

21

22

23

24

25