1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3         HONORABLE PERCY ANDERSON, JUDGE PRESIDING

4   ENERGY INTELLIGENCE GROUP, INC.,   )
                                       )
5                                      )
                                       )
6                      Plaintiff,      )
                                       )
7                                      )
                                       )
8         Vs.                          )   No. CV 11-10556 PA
                                       )
9                                      )
                                       )
10  PLAINS ALL AMERICAN PIPELINE LP,   )
                                       )
11                                     )
                                       )
12                     Defendant.      )
                                       )
13  _____)

14

15

16     REPORTER'S TRANSCRIPT OF FINAL PRETRIAL CONFERENCE

17              LOS ANGELES, CALIFORNIA

18        THURSDAY, JANUARY 3, 2013; 1:35 P.M.

19

20

21           LEANDRA AMBER, CSR 12070, RPR
         OFFICIAL U.S. DISTRICT COURT REPORTER
22            312 NORTH SPRING STREET, # 408
              LOS ANGELES, CALIFORNIA 90012
23                www.leandraamber.com
                    (213) 894-6603
24

25

1                    **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFF,**
     **ENERGY INTELLIGENCE GROUP,**          POWLEY GIBSON
4    **INC.:**                               BY:  ROBERT L. POWLEY, ESQ.
                                             304 HUDSON STREET
5                                            2ND FLOOR
                                             NEW YORK, NY 10013
6                                            (212) 226-5054
                                             rlpowley@powleygibson.com
7

8                                            POWLEY GIBSON
                                             BY: STEPHEN ANKROM, ESQ.
9                                            304 HUDSON STREET
                                             2nd FLOOR
10                                           NEW YORK, NY 10013
                                             (212) 226-5054
11                                           smankrom@powleygibson.com

12

13

14   **IN BEHALF OF THE DEFENDANT,**
     **PLAINS ALL AMERICAN PIPELINE**
     **LP:**
15                                           MESEREAU AND YU LLP
                                             BY:  SUSAN YU, ESQ.
16                                               THOMAS A. MESEREAU, JR., ESQ.
                                             10390 SANTA MONICA BOULEVARD
17                                           SUITE 220
                                             LOS ANGELES, CA 90025
18                                           (310) 789-1177
                                             mesereau@mesereauyu.com
19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                          **I N D E X**

2                                                              **PAGE**

3

4    **HEARING:**   FINAL PRETRIAL CONFERENCE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    LOS ANGELES, CALIFORNIA; THURSDAY, JANUARY 3, 2013; 1:35 P.M.
 2                             -o0o-
 3
 4
 5             THE CLERK:  Calling item number one, civil
 6    11-10556, Energy Intelligence Group, Inc., et al., versus
 7    Plains All American Pipeline.
 8             Counsel, please state your appearances.
 9             MS. YU:  Good afternoon, your Honor.
10             Susan Yu appearing on behalf of defendants and
11    counter-claimants Plains All American Pipeline LP and Plains
12    Marketing LP.
13             THE COURT:  Good afternoon.
14             MR. MESEREAU:  Good afternoon, your Honor.
15             Thomas Mesereau also representing Plains All
16    American Pipeline LP and Plains Marketing LP, defendants and
17    counter-claimants.
18             THE COURT:  Good afternoon.
19             MR. POWLEY:  Good afternoon, your Honor.
20             Robert Powley appearing today on behalf of the
21    plaintiffs in this matter Energy Intelligence Group
22    Incorporated, Energy Intelligence Group UK Limited.
23             MR. ANKROM:  Good afternoon, your Honor.
24             Steven Ankrom also appearing for plaintiffs.
25             THE COURT:  Good afternoon.
```

```
 1              Well, I guess you people haven't decided that you

 2     could settle this case.  As I understand it, you have an

 3     appearance before -- well, maybe it's not an appearance -- a

 4     telephonic appearance before the magistrate judge?

 5              MR. POWLEY:  There's one scheduled for later today,

 6     yes, your Honor.

 7              THE COURT:  What's that about?

 8              MR. POWLEY:  There's a couple of topics.  During

 9     the deposition that was taken last week of the 30(b)(6)

10     witness from plaintiffs, there -- the witness was instructed

11     not to answer several questions regarding the -- the facts

12     that support defendants' contentions for their Affirmative

13     Defenses and their counterclaims in this litigation.

14              THE COURT:  What was the basis for the instruction

15     not to answer?

16              MS. YU:  The question surrounded contention

17     Interrogatories.  Counsel was asking, "State all facts which

18     support your contentions that affirmative blah blah..."

19              THE COURT:  I thought the rule was you could

20     only -- you can't instruct somebody to answer unless it's

21     based on a privilege.

22              MS. YU:  That is correct, your Honor, but the

23     way -- there's also case law, extensive case law, that says

24     you cannot ask contention Interrogatories in depositions.

25              THE COURT:  Not in my courtroom.  You don't
```

```
 1   instruct people not to answer questions unless it's based on
 2   a privilege.  So I may just take this issue up, save the
 3   magistrate some time and effort.
 4            What's the other issue?
 5            MR. POWLEY:  The other issue, your Honor, we've
 6   been asking for information on third-party publications
 7   because one of the client -- excuse me -- one of the
 8   defendants' positions are that the cost of the publication is
 9   what then led the defendants to believe that it was for a
10   company-wide subscription.
11            Earlier the magistrate had ruled that there was --
12   those subscriptions would be relevant, and we've asked for
13   them in Interrogatories, document requests.  And then we
14   thought we could at least discuss it through the deposition,
15   but the witness had no knowledge.  They produced an inhouse
16   counsel's 30(b)(6) witness and didn't have answers.
17            Additionally, your Honor, we've had this continuing
18   issue with the distribution of our publication at the
19   defendant -- by the defendants, including we've raised issue
20   a few times these back-up tapes.
21            So we suggested as an alternative to searching the
22   back-up tapes that their witness could speak that day
23   regarding the circulation of the publication --
24            THE COURT:  What difference does it make if they
25   circulated it?  What issue does that go to?
```

1          MR. POWLEY:  There's a period of time where we're

2    seeking actual damages, and actual damages would be based on

3    the number of readers, the number of copies forwarded as

4    compared to statutory damages.  There's a short period of

5    time where the registrations were filed.

6          THE COURT:  You know, I could have swore that, when

7    you have been here before, I've asked you several times what

8    damages are you seeking; and I don't ever recall you telling

9    me that you were seeking actual damages in this case.

10          MR. POWLEY:  Your Honor, we -- we were seeking

11    statutory damages and actual damages.

12          THE COURT:  Uh-huh.  And the actual damages -- so

13    if they circulated this to five people as opposed to ten,

14    what does that go to exactly?

15          MR. POWLEY:  It would go to termination of what the

16    actual loss licensing fee was for that period of time.

17          THE COURT:  The loss licensing fee.  Uh-huh.  And

18    your licensing fee is how much?

19          MR. POWLEY:  The license -- annual subscription --

20          THE COURT:  Let me tell you something.

21          MR. POWLEY:  Yes.

22          THE COURT:  Okay.  If your client thinks that he's

23    going to get some -- I count know -- huge award out of this

24    case -- because I think the last time we were here you

25    mentioned that, you know, these subscriptions are run into

1    the millions of dollars -- I suspect that's not going to

2    happen in this case would be my guess.  So just so everybody

3    knows what our -- you know, our playing field here is, I

4    don't think that's this case.

5            So we'll see what the evidence shows, but I don't

6    think that's this case.  Really.  And as to the defendants, I

7    don't know what your defense is here because it seems to me

8    that, for whatever reason, these things were circulated.

9    And, you know, whether they caught you or not, maybe -- I

10   think you're going to have a real tough time making out a

11   fraud case here.

12           So I don't know what you people think is going to

13   happen in this case, but you might want to rethink your

14   positions because it's just not -- well, I think this case

15   has been overblown.  It should be resolved.  Should have been

16   resolved long before now.

17           Your clients having figured it out yet.  The only

18   people that are going to really make out on this case are the

19   lawyers not -- this case is not worth it for whatever it is

20   you people think you're going to be doing.  But...

21           Okay.  Now, and you say that the statute of

22   limitations applies in this case.

23           MS. YU:  Yes, your Honor.

24           THE COURT:  Uh-huh.  And do you have any further

25   evidence that would put them on inquiry notice as to -- as to

```
 1    when your client started copying these newsletters?

 2              MS. YU:  We do, but they have not turned over any

 3    evidence whatsoever, and we've been pressing this since the

 4    last hearing.

 5              THE COURT:  No.  No.  No.  You don't understand my

 6    question.  Do you have any other evidence as you stand here

 7    today -- do you have any other evidence that would have put

 8    them on inquiry notice?

 9              MS. YU:  Yes, your Honor.

10              THE COURT:  What is that?

11              MS. YU:  When the plaintiffs switched the

12    delivery --

13              THE COURT:  Uh-huh.

14              MS. YU:  -- from mail to e-mail.

15              THE COURT:  Uh-huh.

16              MS. YU:  That's when they knew that we were going

17    to continue distributing the paper the way we did, and they

18    have not turned over not one e-mail, your Honor.

19              THE COURT:  Is that it?  That they switched this

20    notice?

21              MS. YU:  That and the --

22              THE COURT:  That's not enough.

23              MS. YU:  And also -- there is also copyright notice

24    on the paper which they did not put on the paper.  That and

25    also subscription invoices that they have produced
```

1    yesterday --

2         THE COURT:  Like I told you people before, I don't

3    know what you guys think is going to go on at this trial, but

4    you're going to have to come up with some evidence.  And if

5    you don't, it's not going to get before the jury.  That goes

6    for both sides.

7         You may have these theories out there, but if you

8    don't have any evidence to link it up, it's not going to get

9    to the jury.  So -- and that goes for both sides.  So you

10   guys might want to sit down and review what it is you're

11   doing because I am not going to let these unconfirmed

12   theories go to the jury.

13        And by the same token, I don't know why you should

14   be able to go back to 1999.  And I'm not sure that there's

15   any real basis for these damage claims that are going to go

16   back to -- you have -- you had one copyright; correct.

17        MR. POWLEY:  Each publication was copy written,

18   your Honor.

19        THE COURT:  Uh-huh.  Okay.  So putting aside the

20   moment for these actual damages, it really doesn't make any

21   difference how many people they send it to, does it?

22        MR. POWLEY:  For statutory damages, it's not as

23   relevant, no, your Honor.

24        THE COURT:  Okay.  What's the status of the

25   exhibits in this case?

UNITED STATES DISTRICT COURT

1          MR. POWLEY:  Your Honor, we, the parties, met and

2     conferred on Monday, and I think there's still outstanding --

3     they still objected to 45 of our exhibits, and we still have

4     the same two objections to two of theirs.

5          THE COURT:  Okay.  What are the objections -- which

6     exhibits -- which 45 exhibits do they have objections to?

7          MR. POWLEY:  They're marked in the -- what we found

8     on Monday, but, your Honor, they can be generally summarized

9     as e-mails that the plaintiffs -- see, the e-mails that

10    Plains, the defendant, have produced to us that shows

11    forwarding of the publication beyond what they've disclosed

12    in the Interrogatories and the third parties outside their

13    company.

14          THE COURT:  Okay.  And these -- e-mails were

15    prepared by whom?

16          MR. POWLEY:  They were prepared by employees of the

17    defendant.

18          THE COURT:  Okay.  And what's your objection?

19          MS. YU:  We don't have a problem with authenticity.

20    Foundation is a problem.  A lot of these witnesses -- we

21    don't even know who they are, your Honor.  We -- and some of

22    the e-mails are in Spanish.

23          THE COURT:  Did your client produce them?

24          MS. YU:  We did.  They're -- they're -- a lot of

25    them are in Spanish.

1          THE COURT:  Putting aside the one that's in -- or

2    however many there are that are in Spanish.  What's your

3    objection to it?

4          MS. YU:  There's foundation because these are --

5          THE COURT:  Foundation?

6          MS. YU:  -- individuals were not witnesses at

7    trial.  They have to --

8          THE COURT:  That doesn't make any difference.  They

9    don't have to be witnesses at trial.

10          MS. YU:  We don't know what they are saying, your

11    Honor.  We don't even know what the e-mail is about.

12          THE COURT:  Okay.  So you have a foundational

13    objection --

14          MS. YU:  Yes, your Honor.

15          THE COURT:  -- to e-mails that your client

16    produced.

17          MS. YU:  There's also relevance problem because

18    they're talking about something else.

19          THE COURT:  They're talking about something else.

20    You better take a real good look at those because it sounds

21    like they're probably coming in.

22          What's the -- why do you think they're irrelevant?

23          MS. YU:  Because these are individuals that we

24    don't know who they are.  They may have been employed a long

25    time ago.  They're talking --

```
 1              THE COURT:  That does not help you.

 2              MS. YU:  They're also talking about things that are

 3    not related to Oil Daily.

 4              THE COURT:  Are they talk -- they're not related to

 5    Oil Daily?

 6              MS. YU:  They're talking about something else like

 7    API, some other stuff that we don't know what they're talking

 8    about.

 9              THE COURT:  Okay.  Well, do you have one for

10    example that you think is irrelevant?

11              MS. YU:  Another problem too is they've produced

12    some documents yesterday and said they are going to replace

13    these documents on the exhibits.  We got a number of

14    documents --

15              MR. POWLEY:  Your Honor, we have an example if you

16    would like to look at that time.

17              THE COURT:  Okay.  Do you want to approach?

18              MR. POWLEY:  Yes, your Honor.  Can I approach?  I'm

19    sorry.

20              THE COURT:  All right.

21              MR. POWLEY:  I apologize.

22              THE COURT:  Well, here's one for example.  It's

23    from a Hugo A. Sequeria (phonetic).  It was sent on

24    January 15th to some people, and it's the -- the subject is

25    the forward -- the Oil Daily January 15, 2010, PDF.
```

UNITED STATES DISTRICT COURT

1          Why is that irrelevant?

2          MS. YU:  I don't think that one was -- I don't -- I

3  think that one I think has the name of a witness who was

4  deposed.  I don't think we objected to that.

5          THE COURT:  It doesn't make any difference whether

6  it has the name of a witness.

7          MS. YU:  I don't think that was one of our

8  objected-to exhibits, your Honor.  Here's one.  I have one

9  here.  All the exhibit numbers were renumbered.  So...

10          MR. POWLEY:  The one that's -- number 27 has an

11  objection from the defendants.

12          MS. YU:  Other than the fact that these witnesses

13  were not coming in, we have no idea.

14          THE COURT:  That's not enough.  Your client

15  produced them, and they were authored by, you know,

16  employees.  Probably coming in.  And, you know, like this one

17  has an attachment of the *Oil Daily*.  It sounds relevant to

18  me.

19          MR. MESEREAU:  May I interject, your Honor?

20          THE COURT:  Sure.

21          MR. MESEREAU:  Thank you.

22          Your Honor, some of these documents purport to be

23  sent by someone and received by someone whom nobody has

24  deposed and nobody has called as a witness.  So who is going

25  to testify that it's an authentic document made in the

```
 1    ordinary course of business?
 2                THE COURT:  Your client produced them?
 3                MR. MESEREAU:  That's correct, your Honor.
 4                THE COURT:  Right?
 5                MR. MESEREAU:  That's correct.
 6                THE COURT:  All right.  Okay.  So if your client
 7    produced them, foundational objections are by the boards.  So
 8    the only other basis is is it hearsay?  And it's a party
 9    exception.  It's being offered -- it's an admission.  It's
10    being offered by the other side.  So what am I missing?
11                MR. MESEREAU:  That's the basis of the objection.
12    Relevancy; hearsay; and foundation.
13                THE COURT:  Well --
14                MR. MESEREAU:  But no witness can say they know
15    anything about the document.
16                THE COURT:  That's another issue.
17                MR. MESEREAU:  That's the point, your Honor.
18                THE COURT:  Okay.  Well, it may come in.  It may
19    not be worth much but...
20                MS. YU:  There's one I found which perhaps may
21    be -- may -- the Court may have -- this is Exhibit 320.
22    That's Exhibit 320.  I don't know if the Court wishes to take
23    a look at it this.
24                THE COURT:  Well, what's your basis of your
25    objection?
```

1          MS. YU:  This one is totally irrelevant.  Again,

2     the same issue.  And witnesses who are not coming in, we

3     don't even know.

4          THE COURT:  Witnesses who are not coming in -- is

5     that in the Evidence Code somewhere?  The witness isn't

6     coming in?

7          MS. YU:  They were not called as witnesses in this

8     case.

9          THE COURT:  So what?  Is that what you're going to

10     say in front of the jury when you stand up to object?  These

11     people weren't called as witnesses?

12          MS. YU:  I think it's a 403.

13          THE COURT:  403.  Okay.  Well, okay.  Well, you

14     guys -- I'm telling you guys should sit down and, you know,

15     try to talk through these thing because I don't know if the

16     jury is going to like it.  You sitting up there and all your

17     objections are getting overruled, but, you know, that's up to

18     you.

19          The jury is going to think you're trying to hide

20     something unless you've got a real evidentiary basis for this

21     objection.  And the fact that the people aren't here -- I

22     don't think that's going to cut it.  And if they're simply

23     attaching copies of this *Oil Daily* --

24          Now, whether or not they can tie together for the

25     jury, that may be something else, but the weight as to these

```
 1    exhibits is something for the jury to decide.  So if you've
 2    got an evidentiary basis, that's fine.
 3            So I would take -- you might want to take a look at
 4    these e-mails.  If they're coming from your client, you
 5    probably don't have a foundational objection.  They're
 6    produced by your client and they're from your client's
 7    employees, whether they're being called, whether they've been
 8    deposed, whether they're still there or not is irrelevant.
 9            And if it's talking about the price of fish, fine.
10    Then maybe it's not relevant.  But if it's including copies
11    of this Oil Daily, that's probably relevant to the issues in
12    this case.
13            Okay.  If you could return that, please.
14            THE CLERK:  Sure.
15            MR. POWLEY:  Thank you very much.
16            THE COURT:  Now, just so we can finish talking
17    about one of the issues we talked about the last time, these
18    other lawsuits -- do you have -- other than the fact that
19    there was a lawsuit, do you have any other evidence in
20    connection with these lawsuits that you're going to put in
21    front of the jury?
22            MS. YU:  Yes.  These lawsuits -- they're
23    executive -- plaintiff's executive testified at deposition
24    that these lawsuits were all part of their marketing
25    strategies and sales and advertisement, and it came out
```

```
 1    through their depositions.  And we've asked them to produce
 2    those documents.  They haven't produced those.
 3              THE COURT:  I'm not interested in -- that's another
 4    issue.  I want to know what's the relevance of these lawsuits
 5    to these issues that are before us.
 6              MS. YU:  These lawsuits are important because
 7    they're high-level executives have testified, your Honor,
 8    that they're not selling or marketing these papers anymore
 9    and that everything is focused on this lawsuit program.
10              THE COURT:  Is that it?
11              MS. YU:  And those lawsuits and that their number
12    of witnesses have testified under oath that are not truthful.
13    They lied under oath --
14              THE COURT:  Please.  You can characterize your
15    testimony any way you want in front of the jury.  I want to
16    know why these other lawsuits are relevant.
17              MS. YU:  Because they knew from 2005 when they
18    started suing people.
19              THE COURT:  That's not going to cut it.  You've
20    got -- look, if somebody was standing out there in the corner
21    handing out *Oil* -- copies of the *Oil Daily*, okay --
22              MS. YU:  Yes, your Honor.
23              THE COURT:  -- they would be entitled to sue them,
24    wouldn't they?
25              MS. YU:  They are except that they have --
```

```
 1                 THE COURT:  Right?

 2                 MS. YU:  Yes, your Honor.

 3                 THE COURT:  Okay.  And they may -- for all you

 4     know, that lawsuit may be somebody who was -- made a copy of

 5     the Oil Daily and then tried to sell it to somebody else, and

 6     they would have a right to sue them.

 7                 MS. YU:  That is true, but the -- the truth of this

 8     case, your Honor, and all the other lawsuits, if I may --

 9                 THE COURT:  What evidence do you have?  Other than

10     your theory, what evidence do you have?

11                 MS. YU:  It came from their own witness.  Their

12     employees saying that --

13                 THE COURT:  What does the witness say?

14                 MS. YU:  The witness said that target admin -- a

15     young secretary of a company, set them up, and you file a

16     lawsuit, we get $5,000.

17                 THE COURT:  Okay.  Show me that testimony.

18                 MS. YU:  I don't have testimony right now.

19                 MR. POWLEY:  There is no testimony.

20                 MS. YU:  There is testimony, you Honor.  I can file

21     tomorrow --

22                 THE COURT:  Where is -- what witness said it?

23                 MS. YU:  It's a witness that Mr. Mesereau deposed.

24     His name is Derek Dent.  He's a salesperson.

25                 And Mr. Powley represented to the Court on
```

```
 1   November 19th that that was a case.

 2           MR. MESEREAU:  Your Honor, the testimony was that

 3   "If I bring the senior management an allegation that somebody

 4   is improperly distributing the newsletter and if it leads to

 5   a lawsuit, I get a $5,000 commission.  And I got two $5,000

 6   commissions last year, one of them in this case."

 7           That's what they did.  And they give a bonus if you

 8   can bring them something that leads to a lawsuit.

 9           THE COURT:  Okay.  So he identified two lawsuits

10   where he got a commission?

11           MR. MESEREAU:  That's correct, your Honor.

12           THE COURT:  Okay.  Now, other than that testimony,

13   is that what you want -- you want to get in that testimony?

14           MR. MESEREAU:  Yes, your Honor.

15           THE COURT:  Okay.  Now, other than that, concerning

16   these other lawsuits, what is it that you purport to get in?

17           MR. MESEREAU:  Your Honor, there's one other

18   ingredient to that.  He was dealing with an administrative

19   assistant, and he was the one inducing her to take a

20   subscription.

21           THE COURT:  An administrative assistant for --

22           MR. MESEREAU:  Yes, your Honor.

23           THE COURT:  -- your administrative assistant or

24   somebody else?

25           MR. MESEREAU:  Yes, your Honor.
```

```
 1              THE COURT:  Okay.

 2              MR. MESEREAU:  Yes, your Honor.

 3              And what he's claiming is that we thought the

 4  administrative assistant alone was going to read Oil Daily

 5  newspaper.  And this after they had encouraged people like

 6  the administrative assistant to distribute hard copies.

 7              THE COURT:  Whoa.  Whoa.  Whoa.  Whoa.  Whoa.

 8              MR. MESEREAU:  Yes, your Honor.

 9              THE COURT:  Okay.  How do you -- what evidence do

10  you have of that?

11              MR. MESEREAU:  We have, first of all,

12  communications between this account manager and the

13  administrative assistant.

14              THE COURT:  Your administrative assistant?

15              MR. MESEREAU:  Yes, your Honor.

16              THE COURT:  Okay.

17              MR. MESEREAU:  And we have prior dealings between

18  he and the predecessor company where they called it a company

19  subscription.

20              THE COURT:  The predecessor -- your predecessor

21  company?

22              MR. MESEREAU:  Yes.  Yes.

23              THE COURT:  Okay.  I'm still waiting for these

24  other lawsuits.

25              MR. MESEREAU:  Yes.  Well, here's the other thing.
```

```
 1    The chief financial officer --

 2              THE COURT:  Uh-huh.

 3              MR. MESEREAU:  -- in the middle of a deposition was

 4    asked by me, "Did you read any document to prepare for this

 5    deposition?"

 6              THE COURT:  Uh-huh.

 7              MR. MESEREAU:  "Yes."

 8              And I said, "What is that?"

 9              He said, "Well, I had the person that runs our

10    account managers prepare a list of lawsuits."

11              THE COURT:  Uh-huh.

12              MR. MESEREAU:  So I said, "Would you get that

13    list?"

14              And counsel did go to the trunk of his car and get

15    the list.

16              THE COURT:  Okay.

17              MR. MESEREAU:  And the list had various columns one

18    was at companies they sued, and one was individual names.

19              THE COURT:  Uh-huh.

20              MR. MESEREAU:  And he said he didn't know who the

21    individual names were.

22              THE COURT:  Uh-huh.

23              MR. MESEREAU:  The person that prepared the list

24    for him said that she told him who the individual names were.

25    And what it is proof of is that they are doing what they did
```

1    in this case -- they're targeting lower-level employees.

2            THE COURT:  No, it doesn't, sir.  All it is is a

3    list of lawsuits.

4            MR. MESEREAU:  And the individuals who had the

5    subscriptions.

6            THE COURT:  And of individuals.

7            MR. MESEREAU:  That's right.

8            THE COURT:  So you need some evidence -- that's the

9    length -- that's not good enough.  You're going to need

10   something to tie what the practice was with your clients with

11   these other lawsuits.

12           MR. MESEREAU:  Well, your Honor, we're actually

13   mentioned in the list too.

14           THE COURT:  Okay.

15           MR. MESEREAU:  Because they get a subscription from

16   an administrative assistant and they turn that into a lawsuit

17   against the company.

18           THE COURT:  I know that's your theory.  I know

19   that's your theory as to what happened in your case.  I'm

20   looking for some proof that that's what happened in some

21   other case.

22           MR. MESEREAU:  It's right there.  All the people

23   they sued:  Exxon, Chevron, the United --

24           THE COURT:  Sir.

25           MR. MESEREAU:  -- Steel Workers.

```
1              THE COURT:  But you're going to need some facts --

2              MR. MESEREAU:  Yes, your Honor.

3              THE COURT:  -- beyond the list.

4              MR. MESEREAU:  Well, we can get testimony that

5    these individuals had the subscriptions, and then once they

6    had those subscriptions, they then sued their employers.

7    Your Honor, for example, United Steel Workers -- a librarian

8    took a subscription to their newsletter, and a librarian

9    distributed it, and then they sued the United Steel Workers.

10             THE COURT:  Okay.  And you know that because?

11             MR. MESEREAU:  Because of this list that the chief

12   financial officer asked to be prepared.  The person that

13   prepared the list -- they're both witnesses.

14             THE COURT:  Okay.  And did they say -- is their

15   testimony that we approach this librarian.  She got a

16   subscription.  And then we sued?  She copied it, and then we

17   sued them?

18             MR. MESEREAU:  Well, that's what the list is about.

19             THE COURT:  No, sir.

20             MR. MESEREAU:  Your Honor, the individual

21   subscriber and the company --

22             THE COURT:  Sir, please.

23             MR. MESEREAU:  I'm sorry.

24             THE COURT:  I understand what the list is about.  I

25   know what you want to infer from the list, but you're going
```

```
 1    to need some evidence.  So typically I guess what you would
 2    have done is you would have taken the deposition of the
 3    person that was on the list and asked them.  And if you had
 4    done that, fine.  But I don't think you've done that.
 5              MR. MESEREAU:  We have not, your Honor.
 6              MS. YU:  Your Honor.
 7              THE COURT:  Okay.
 8              MS. YU:  Your Honor, if I may, those witnesses were
 9    deposed by plaintiffs and the other defendants in those
10    cases.  We've asked Mr. Powley to turn those over, and he
11    hasn't.
12              THE COURT:  Okay.  You've sent out some discovery
13    to that effect?
14              MS. YU:  Yes, we did.
15              THE COURT:  Where is it?
16              MS. YU:  Right here.  It was after the last
17    hearing, your Honor.
18              THE COURT:  After the last hearing?
19              MS. YU:  Yes, because the Court ordered both
20    parties to turn over all that discovery the parties had
21    propounded because we have an expedited trial schedule after
22    the case as consolidated.
23              THE COURT:  So you put this discovery together
24    after the last hearing?
25              MS. YU:  No.  This was already requested back in
```

```
 1   May.

 2              THE COURT:  Uh-huh.

 3              MS. YU:  And there were a three things -- a number

 4   of things we asked for since May.  And only -- it was after

 5   your Honor ordered the parties.  That's why they produced

 6   something at the last minute.  Two days ago we were asking

 7   for their -- for example, there are three types, your Honor,

 8   if I may --

 9              THE COURT:  You know, I'm going to tell you what

10   you may do.  You know, I don't know -- again, I don't know

11   what's going on here, and I'm not going to try to figure it

12   out.

13              But if I find that one side is misrepresenting

14   facts to this Court, there will be a real big penalty to pay.

15   So everybody ought to sit down and figure it out because it's

16   not going to be worth it.  Trust me.  This lawsuit is not

17   going to be worth it.

18              MS. YU:  I would never do that, your Honor.

19              THE COURT:  Yes.

20              MR. POWLEY:  Your Honor?

21              THE COURT:  Yes.

22              MR. POWLEY:  The last time we met, when you were

23   talking about the other lawsuits, you asked very clearly did

24   defendant purport any document requests to request that

25   information.  We said at that hearing that they did not.
```

1          They responded that they maybe did generally.

2          So we asked them to identify in their sole document

3     request, and I've -- there's four requests that they've asked

4     for.  They identified further litigation.  They've identified

5     them for us.  The first one is all documents concerning your

6     marketing of *Oil Daily* during the relevant period.

7          The second one they identified was all documents

8     concerning your advertising of *Oil Daily* during the relevant

9     period.

10         The next one they identified:  All documents

11    concerning your profitability of *Oil Daily* during the

12    relevant period.

13         And the last one they identified that they say was

14    their request to ask for our litigation documents in the

15    third-party litigations:  All documents concerning your

16    strategic plans, long-range plans, business plans of *Oil*

17    *Daily* during the relevant period.

18         Those are the totality of the requests they

19    identified.

20         MS. YU:  Mr. Hitchcock is their high level

21    executive.  He testified that all of the marketing,

22    advertisement, and sales materials all arose out of the

23    lawsuits.  And I have his testimony here.  He testified that

24    the global enterprise licenses that they had were the biggest

25    marketing revenues for them.

1        He then after extensive testimony concluded that

2   those reluctantly -- that he said that those licenses arose

3   out of lawsuits.

4        THE COURT:  You know something?  If I thought you

5   people could try this case -- you know, I'd even put the

6   trial off, extend the discovery cutoff.  But I think if you

7   came back here in six months, we would be right where we are

8   right now because I don't have any faith in either side in

9   what you tell me.

10        And once lose your credibility with the Court, you

11   know, there's really nothing left.  And that's all you have

12   as a lawyer.  And there's really nothing else for me to -- we

13   might as well just try this case because, you know, this is

14   just -- it's laughable.

15        So we'll just try it.  And, you know, we'll let the

16   chips fall where they may.  And we'll see what the jury does

17   with it.

18        But, you know, I'm not going to -- I'm not going to

19   extend myself because I don't have any faith that you're

20   going to do anything different than you've already done,

21   which is just bicker and fight and not try to get at the

22   truth.  And so we'll let the jury decide.

23        MS. YU:  Your Honor?

24        THE COURT:  What?

25        MS. YU:  We have been asking for all of the cover

```
 1   e-mails that came with the newspaper.  And yesterday I get an

 2   e-mail from counsel saying, "We have" -- "We found cover

 3   e-mails for other companies but not for your company."  "You

 4   can use that as a sample."

 5           And then we also asked for subscription agreements

 6   prior to 2005.  They said they didn't have them.  Their

 7   witness said they had them in storage.  They said, "We found

 8   something from another company, but not for you."

 9           So we are missing all these -- and those

10   subscription agreements -- we have a company subscription,

11   and the company subscription specifically said, your Honor,

12   that we have an express license --

13           THE COURT:  Okay.  Well, that's what you'll argue

14   to the jury.  That will be your argument to the jury.

15           MR. POWLEY:  Your Honor, there is no factual

16   support.  We've asked them we appreciate --

17           THE COURT:  Enough folks.

18           MR. POWLEY:  Okay.

19           THE COURT:  We're done.  I'm done with you, with

20   both sides.  So we're going to put a jury in the box, and

21   we'll try this case.  And what we've been asking for, what

22   they're doing -- I'm done.

23           So your special verdict form -- I think you're

24   going to need some more work on that.  And I take it tomorrow

25   you're filing your --
```

1          MS. YU:  Written proffer.

2          THE COURT:  Uh-huh.  Are you intending to pursue

3     all of your Affirmative Defenses in this case?

4          MS. YU:  We're going to go back and take a look at

5     that and -- if there are any Affirmative Defenses that we

6     would need to withdraw.  But right now, yes.

7          THE COURT:  Uh-huh.  And all of these are

8     Affirmative Defenses?

9          MS. YU:  Everything that we've listed in the

10    pretrial conference order, yes, with the exception of three

11    counterclaims.  One is for debt relief.  Another one is for

12    fraud by concealment.

13         THE COURT:  What's the fraud?

14         MS. YU:  The fraud is false and misleading

15    misrepresentations.

16         THE COURT:  What is the fraud?  What is the

17    misrepresentation?

18         MS. YU:  The misrepresentation is they led us to

19    believe that this was a company subscription, and then they

20    conceal.  They keep changing the terms on the back of the

21    invoice.

22         Right before Araceli Gudino, who is an

23    administrative assistant, paid for the last subscription,

24    your Honor, they then took out one language that says "It's

25    for all individuals and employees for the company."  They

```
 1    took that out right before they filed the lawsuit.  And we're

 2    going to see the entire history of the party's relationship

 3    through the company subscription.  We have correspondence --

 4              THE COURT:  Do you remember what I asked you before

 5    you got started before you got wound up here?

 6              MS. YU:  "What is the fraud?"

 7              THE COURT:  Uh-huh.

 8              MS. YU:  "Misrepresentation."

 9              THE COURT:  What is it?

10              MS. YU:  They told us it was a company

11    subscription.

12              THE COURT:  What did they say?

13              MS. YU:  And then they later --

14              THE COURT:  Who said that?

15              MS. YU:  Plaintiffs.

16              THE COURT:  Who?

17              MS. YU:  Plaintiffs through their invoices for

18    years.

19              THE COURT:  So it's the invoice itself that

20    contains the fraudulent misrepresentation?

21              MS. YU:  Yes, because in the beginning --

22              THE COURT:  Okay.  And what does it say?

23              MS. YU:  The first eight years or so of the

24    parties' relationship they said nothing.  It's a company

25    subscription.
```

```
 1            THE COURT:  Okay.  And that's the fraud?

 2            MS. YU:  No.  That's -- then they led us to believe

 3      that it was a company subscription.  That's what we signed up

 4      for.  All we did was renew every year by payment.

 5            They then on the back of the invoice starting

 6      inserting things without ever letting us know that they were

 7      doing it in fine print.  Never told us.

 8            THE COURT:  That's the fraud?

 9            MS. YU:  Yes, by concealment.

10            THE COURT:  Uh-huh.  They put it in small print; so

11      they concealed it.

12            MS. YU:  Very tiny.  You need a magnifying glass to

13      even read it.

14            THE COURT:  Okay.

15            MS. YU:  It's on the invoice.

16            THE COURT:  Okay.

17            MS. YU:  And they said that -- now they're saying

18      only the administrative assistant is the only one who was

19      supposed to get the paper and read it and not for the

20      company.  And even though the earlier subscription, your

21      Honor, the correspondence confirms that it was a company

22      subscription.

23            And the concealment, your Honor, is that they

24      conceal their purpose by putting in fine print and then

25      deleting certain words without ever telling us that they were
```

```
 1     doing that.
 2              THE COURT:  Okay.  Compliance with laws.  That's an
 3     Affirmative Defense?
 4              MS. YU:  I think that may have been --
 5              THE COURT:  Yes.  You have withdrawn that, but is
 6     it an Affirmative Defense?
 7              MS. YU:  We withdrew that.
 8              THE COURT:  I know you withdrew it.
 9              MS. YU:  Yes.
10              THE COURT:  Is that an affirmative Defense?
11              MS. YU:  No.
12              THE COURT:  No, it's not.
13              MS. YU:  Yes.
14              THE COURT:  Attorney fees -- is that an Affirmative
15     Defense?
16              MS. YU:  We withdraw that, your Honor.
17              THE COURT:  I know you withdrew it.  Why was it
18     pled in the first place?
19              MS. YU:  (No audible response.)
20              THE COURT:  What are the elements of your claim for
21     17200?
22              MS. YU:  Yes, your Honor.  It's in the statute.  I
23     know that it's an injunction statute.  I think right here,
24     your Honor.
25              THE COURT:  When is this trial set for?
```

```
 1                MS. YU:  The 15th.

 2                The elements are here, your Honor.  It's on Page 19

 3      of the pretrial conference order.  The plaintiff's

 4      fraudulently concealment, other wrongful conduct alleged in

 5      the counterclaims, constitutes unlawful, fraudulent, and

 6      unfair business practices in violation of California Business

 7      and Professions Code 17200 et cetera.

 8                Number two, that defendant suffer injury in fact

 9      and lost money or property as a result of plaintiff's

10      unlawful, unfair, and fraudulent conduct.  And this is

11      pursuant to California Business and Professions Code, the

12      unfair business statute, your Honor.

13                We want to make sure that they don't do this again.

14                THE COURT:  Did you go back before some mediator in

15      this case?

16                MS. YU:  Yes, we did.

17                THE COURT:  When did you do that?

18                MS. YU:  I believe I talked to retired Judge

19      Wagner.  I believe it was --

20                THE COURT:  The question was when.  When did you do

21      that?

22                MS. YU:  The mediation was December 7th.  I last

23      talked to him this morning.  He called me last night.  I

24      called him back this morning.

25                THE COURT:  You made an offer?
```

```
 1                MS. YU:  We did.

 2                THE COURT:  What time is your telephonic conference

 3      with the magistrate judge?

 4                MS. YU:  I think it was right before 7:00 a.m.

 5                MR. POWLEY:  3:00 p.m. this afternoon.

 6                MS. YU:  Oh, I'm sorry.  Your Honor, I thought you

 7      were asking what time I talked to the judge.  I apologize.

 8      With the magistrate judge it's 3:00 o'clock, your Honor.

 9                THE COURT:  So you've got an Affirmative Defense of

10      fraud, and you've got a fraud claim?

11                MS. YU:  Yes, your Honor.

12                THE COURT:  Do you need them both?

13                MS. YU:  We can suspend one, but they're

14      essentially the same thing.

15                THE COURT:  Did I ask for another pretrial

16      conference order?

17                MS. YU:  No, this is the one we --

18                MR. POWLEY:  You hadn't.

19                THE COURT:  She said no.  You say?

20                MR. POWLEY:  I said no you haven't, your Honor.

21                THE COURT:  Well, we may have to get one.

22                Did I ask you to file an updated time estimate for

23      your witnesses?

24                MR. POWLEY:  No, your Honor, but you asked -- the

25      last time we were together you said the trial would be four
```

```
 1    days and the parties would split the time equally.  And then

 2    after the proffers we were hoping to cut down the time of the

 3    trial.

 4           THE COURT:  All right.  I want a trial -- I want a

 5    witness list and estimates of your direct and

 6    cross-examinations for your various witnesses.

 7           And you'll have that filed by Monday along with the

 8    revised pretrial conference order, and then I'll decide how

 9    much time you're going to get.  Two days sounds like too much

10    from where I'm sitting right now.

11           Any other designated deposition testimony?

12           MR. POWLEY:  We have one individual, Jason Myers.

13    He was deposed last week.

14           THE COURT:  And you're going to want to present

15    some of his -- you're going to designation some of his

16    testimony?

17           MR. POWLEY:  We may.  We just got the transcript

18    the other day.  And we like -- we are contemplating whether

19    or not there's any such testimony, yes, your Honor.

20           THE COURT:  Sorry.  Was that a yes or you don't

21    know yet?

22           MR. POWLEY:  At this time, your Honor, we're -- no,

23    it's -- we're planning to, but we're trying to look at it to

24    see if we can avoid it.

25           Your Honor, just -- there's a lot -- a lot of it
```

1    concerned some of these forwarding that we talked about that

2    were exhibits.  And he talked about those e-mails that he

3    forwarded himself.

4              THE COURT:  Uh-huh.

5              MR. POWLEY:  And if they would have -- would agree

6    to withdraw their objections so it would just be his part, as

7    you said, their examples are forwarding that they produced in

8    their own production.  We feel it unlikely that we'll need to

9    introduce any testimony from Mr. Myers.  He's a --

10             THE COURT:  Why does it make a difference as to

11   whether or not they object?

12             MR. POWLEY:  Because it -- when we met and

13   conferred on Monday --

14             THE COURT:  Uh-huh.

15             MR. POWLEY:  -- they kept on saying that they

16   wouldn't stipulate to the admission of the exhibits.

17             THE COURT:  Well, they don't have to stipulate.

18             MR. POWLEY:  No, I understand that.

19             THE COURT:  Okay.

20             MR. POWLEY:  And in the event that we weren't

21   certain how the Court was going to treat their objections to

22   the exhibits that they produced showing the forwarding of the

23   publication.  And he was one of the authors that --

24             THE COURT:  So he was one of the authors.

25             MR. POWLEY:  He was one of the authors that we

UNITED STATES DISTRICT COURT

```
 1   deposed.

 2           THE COURT:  Okay.  And he said, "Yes, I sent

 3   those"?

 4           MR. POWLEY:  Yes.

 5           THE COURT:  Okay.

 6           MR. POWLEY:  And so, you know, it -- at this time

 7   it's unlikely that we're going to need his deposition

 8   transcript.

 9           THE COURT:  Okay.  So what you were offering him

10   for was to authenticate these documents that they had

11   previously produced.

12           MR. POWLEY:  That and he -- he talked about the

13   list being not known by everyone in the company, being

14   something that's going to high-level people and everyone

15   should get on it.

16           And we didn't understand why he was having a

17   discussion before he left because it went to in our belief

18   the clear indication that we're forwarding this publication.

19   We're not letting anyone know about it, but there's some

20   people on the list the testimony -- the exhibit said that all

21   that upper management are on this thing.  You need to get on

22   it too.  So we wanted to inquire it was no longer an employee

23   of the defendant --

24           THE COURT:  Okay.  Fine.  So you want -- you may

25   want to put in his testimony depending on what their position
```

```
 1    is with regard to e-mails?  Is that it?
 2             MR. POWLEY:  The -- the doctors that they produced
 3    showing him forwarding the publication.
 4             THE COURT:  Are those e-mails?
 5             MR. POWLEY:  Those are e-mails, yes, your Honor.
 6             THE COURT:  Okay.  Do you have any deposition
 7    testimony you're going to be designating?
 8             MS. YU:  George King, their CFO.
 9             THE COURT:  You already designated that testimony?
10             MS. YU:  Yes, your Honor.
11             THE COURT:  Okay.  And assuming you have to
12    designate testimony, when are you going to be in a position
13    to do that?
14             MR. POWLEY:  We could certainly do it concurrently
15    Monday with the submission of the witness list that you --
16    the revised witness list.
17             THE COURT:  Okay.  So you -- if you're going to
18    need to do that, you give them the part you want to
19    designate.  Give that to them on Monday.  And to the extent
20    you have any -- well, just follow the last minute order that
21    we sent you regarding designated testimony.  And have the
22    final product to me by the 9th.
23             But if all it's going to be is -- well, okay.  And
24    I'd like the final -- you'll probably need to meet and confer
25    over these exhibits and give me your final exhibit
```

```
1    stipulation.  Give me that on Monday as well.

2              MS. YU:  Your Honor?

3              THE COURT:  Yes.

4              MS. YU:  Is it okay if we -- if the parties meet in

5    person because I'm been asking to meet in person?  Or do you

6    prefer that we do this by phone or e-mail?

7              THE COURT:  He's here now; you're here now.  You

8    don't have to be in front of the magistrate until 3:00.  How

9    long are you going to be here?

10             MR. POWLEY:  We came on Monday to meet and confer,

11   and we did so on the 31st, and we're scheduled to leave

12   tonight on a red eye.

13             THE COURT:  I get you can meet until they leave.

14             MS. YU:  Because I've been asking to meet and

15   confer yesterday and the day before.

16             THE COURT:  Do you understand wining doesn't go

17   very far with me?

18             MS. YU:  Yes, your Honor.

19             THE COURT:  Okay.  I'm really not interested in

20   you -- his disputes with you and yours with him.  It's just

21   not -- it just isn't going to get us very far.  Okay.  So,

22   you know, you're not a bunch of ten-year old saying, "He did

23   it," or "they did it."  It's just not going to get us very

24   far.

25             So, you know, all I can do is try this case and,
```

```
 1   you know, if it gets to the point where you people are --
 2   just can't act professionally, then I'll have to, you know,
 3   do something else that will be very unpleasant because I have
 4   a certain expectation about how lawyers conduct themselves in
 5   this Court.
 6            You don't have a right -- this is not a right to
 7   appear in federal court.  It's a privilege.  It's a
 8   profession.  Act like it.  And if you don't, then I'll take
 9   care of it.  And I don't think either side wants me to do it.
10   I don't want to have to do it.
11            So, now, anything else?
12            MR. POWLEY:  Your Honor, yes, there is something
13   else if I may.
14            THE COURT:  What's that?
15            MR. POWLEY:  We discussed their objections to our
16   exhibits.  We have two objections to their exhibits.  And if
17   your court would entertain that, I would like to discuss that
18   with the Court.
19            THE COURT:  What are the two exhibits?
20            MR. POWLEY:  One, we just -- subject to the motion
21   in limine, we don't need to advance any further is the George
22   King notes of the various litigations and the costs and the
23   awards.
24            The other one is a document that the defendants are
25   purporting to put forward that says Araceli, the recipient --
```

1    let me back up one moment.

2            On October 19th, when we found out that they were

3    forwarding our publication for the first time on the 14th, we

4    sent them a letter on the 19th asking them to stop.  Their

5    license doesn't allow you to do this.  They've maintained

6    since the course and their witness testified that she never

7    read that e-mail.

8            We strongly believe and know that's not true

9    because that day Araceli called Mrs. Brown in my office and

10   talked about that e-mail.

11           Nevertheless, they have produced metadata that they

12   purport to be metadata as a part of this exhibit, saying she

13   never read the e-mail that was sent to her on October 19th.

14           And we don't think the document states that.  We

15   think that they're going to try to interpret this for the

16   jury, they're going to need an expert.  They haven't declared

17   an expert.

18           THE COURT:  What's the exhibit?

19           MR. POWLEY:  It's exhibit -- I believe 655.

20           THE COURT:  Anybody have a copy with them?

21           MR. POWLEY:  I have a copy.

22           THE COURT:  Okay.  Do you have a copy?

23           MS. YU:  Yes.

24           MR. POWLEY:  May I approach?

25           THE COURT:  Yes.

```
1              MR. POWLEY:  And, your Honor, we received the

2    actual metadata that goes along with that on Monday from the

3    defendants, this passed Monday, and we sent it to our IT

4    forensic individual.

5              THE COURT:  Uh-huh.

6              MR. POWLEY:  And he said that that individual --

7    the metadata that should have actually been produced when

8    that document was produced, which it wasn't produced to him

9    until Monday, that it doesn't actually say that she does or

10   doesn't read it.  It's a toggle switch in Outlook that if you

11   read the e-mail --

12             THE COURT:  That's all right.

13             Is this the exhibit you're going to be offering?

14             MS. YU:  Yes, your Honor.

15             THE COURT:  Okay.  And what purpose are you

16   offering that for?

17             MS. YU:  This will corroborate Miss Araceli --

18             THE COURT:  Who is going to testify to that?

19             MS. YU:  Miss Araceli.  This one?  Mr. Peters.

20             THE COURT:  Who is Mr. Peters?

21             MS. YU:  He's our custodian of regards.  He's right

22   here in court.

23             THE COURT:  He's the custodian or records?

24             MS. YU:  Yes, at the company.  He processes all of

25   the e-mails and all of the metadata.
```

```
 1              THE COURT:  What's he going to say?
 2              MS. YU:  He processed all of the e-mails that came
 3    in through the server, and this is a metadata underlying
 4    those records.
 5              THE COURT:  You don't have any experts.  You didn't
 6    designate any experts.  I asked you the last time you were
 7    here whether either side was calling any experts; right?
 8              MS. YU:  He is not an expert.
 9              THE COURT:  He is not?
10              MS. YU:  No.
11              THE COURT:  Well, what I would -- I can't figure
12    out what this is.
13              MS. YU:  He's a custodian of records.
14              THE COURT:  No.
15              MS. YU:  They do this routinely.
16              THE COURT:  No, that's expert testimony.  He's
17    going to try to interpret this document and talk to the jury
18    about what metadata is.
19              MS. YU:  Your Honor, they've had this document
20    since October 4th.
21              THE COURT:  That's irrelevant whether or not
22    they've had it or not.  You told me you weren't calling any
23    experts.  That sounds like expert testimony to me.
24              MR. MESEREAU:  Your Honor, can I address that?
25              THE COURT:  One or the other, sir.
```

1              MR. MESEREAU:  Okay.

2              THE COURT:  Do you want to lead?  If you want to

3    lead --

4              MR. MESEREAU:  No.

5              THE COURT:  -- which I strongly thought you were

6    going to do in this case, that's fine.  You want to let her

7    lead, that's fine.

8              MR. MESEREAU:  I understand.  I apologize.

9              THE COURT:  You don't have to apologize.  It

10   doesn't matter to me.  So let's see.  So we have mail to to

11   who it went to, who it came from, the mail date, the subject,

12   copies, BCC's, and the mail-from address.

13             You have last modification time, the MDS hash, the

14   document type, the file name, the extension, the e-mail

15   folder, and this thing that says, "Unread."  "One."

16             MS. YU:  That's correct.

17             THE COURT:  Well, she's going to get on the stand

18   and say, "I never read that e-mail"; right?

19             MS. YU:  Right.

20             THE COURT:  Okay.  What do you need somebody else

21   for?

22             MS. YU:  Just in case the jury has any question

23   whether she did or not.

24             THE COURT:  I suspect he's going to have some

25   cross-examination for her to suggest she -- that's not true.

1          MS. YU:  Because the truth is she didn't read it,

2    your Honor.  That's the truth.

3          THE COURT:  The jury will decide what the truth is,

4    not you.

5          MS. YU:  Mr. Peters processed this record as part

6    of his job.

7          THE COURT:  Yes, and if you wanted his testimony,

8    you should have designated it as an expert because it sure

9    sounds like expert testimony to me because you've known about

10   that document for a long time too.

11         MS. YU:  October 4th is when we produced.

12         THE COURT:  I'm sorry?

13         MS. YU:  We produced this document after they

14   requested it on October 4th.  After the deposition they asked

15   for it.

16         THE COURT:  Okay.

17         MS. YU:  They said, "Do you have it?"  And we

18   produced it right away.

19         THE COURT:  So I should let your expert get up

20   there and talk about that document, and then their expert is

21   going to get up and talk about it.

22         Who are you going to -- what evidence do you have

23   that she read the e-mail?  Did she call somebody later on

24   that day and talk about it?

25         MR. POWLEY:  She did.  She called our account --

1            THE COURT:  Please stop shaking your head.  That's
2       very unprofessional.
3            MS. YU:  Because that never happened.
4            THE COURT:  Please don't shake your head.  Okay.
5       I'll listen to him, and then I'll listen to you but shaking
6       your head really doesn't help very much.  And please don't do
7       that in front of the jury.  At least act like you've done
8       this before.
9            Okay.  What's -- what witness is going to say --
10      what witness is going to say this?
11           MR. POWLEY:  Debra Brown, your Honor.
12           THE COURT:  Okay.  And what is she going to say?
13           MR. POWLEY:  She's going to say that on
14      October 19th she received a call from Miss Araceli and she
15      discussed with her that the significance of that e-mail.
16           THE COURT:  Let me see that again.
17           THE CLERK:  (Complied.)
18           MR. POWLEY:  She had.
19           THE COURT:  Okay.
20           MR. POWLEY:  She has -- she noted the time of the
21      call and the number of the call.
22           THE COURT:  Uh-huh.
23           MR. POWLEY:  And said she discussed it.  They
24      couldn't forward the e-mail, and then they discussed the
25      other subscription options with the company.

```
 1              THE COURT:  Okay.  Now, okay.  So you have
 2    something that you want to add?
 3              MS. YU:  She never did that, your Honor.
 4              THE COURT:  Okay.  Well, she can get up and say she
 5    never did it.
 6              MS. YU:  And Debra Brown was deposed.  She never
 7    said that.
 8              THE COURT:  Okay.
 9              MR. POWLEY:  Debra Brown was asked if she spoke to
10    Miss Araceli, and she testified that she did, but we didn't
11    ask any other questions after that.
12              THE COURT:  Okay.  Anything else?
13              MR. POWLEY:  Your Honor, the one thing that I still
14    wanted to bring up is that the back-up tapes that you asked
15    the defense counsel to provide to us are to sort out before
16    we came today.  And we got an e-mail saying that the tapes
17    were to be made for inspection on the 27th and 28th.  And
18    that on the 27th said that "We can't provide them to you
19    because there's too many."  "It would cost too much, and it
20    could take too long to get them to you."
21              So we flew, when we came for a deposition, another
22    attorney to inspect the tapes on the 28th.  And we went to
23    the facility that they designated to inspect the tapes so we
24    could review the content to start looking at the e-mails.
25              And the forwarding from this period -- the tapes go
```

1    back to 2002.  And they -- literally all they did was provide

2    the tapes.  They said we're making it available so you can

3    review the tapes.  They opened the box, and they said, "Here

4    are the tapes."

5              There was no facility to review the tapes.  There

6    was also no way to identify the tapes.  They had a bar code

7    on it and a couple of markings.  And there was -- needed a

8    bar code reader, which wasn't available, and then there was

9    an index that would have told us, you know, "This tape is --

10   allegedly from this period," this information.  So we flew

11   someone there to look at the tapes.

12             THE COURT:  Uh-huh.

13             MR. POWLEY:  We asked them, you know, subsequent

14   and to that if you could provide us the index that was

15   supposed to be available on the 28th.

16             We got that on the -- they made it available on the

17   31st.  We picked it up on the 1st.  We sent it to our IT

18   expert, and it was the same information that was available

19   day.  It was not actually the index.  It was coded

20   information without a key.  That doesn't let us know what the

21   case pertains to.

22             So they won't give us the tapes, and we asked that

23   day if we could take some of the tapes to start looking at

24   them.

25             THE COURT:  Uh-huh.

```
 1              MR. POWLEY:  And they said we couldn't because they
 2      had to maintain custodianship because of these other
 3      litigations.  And we proposed sampling.  We proposed their
 4      speak to the recipients of the publication to see what
 5      they're forwarding level was.
 6              THE COURT:  Let me ask you a question, and we'll
 7      get to this because I want to resolve this issue.
 8              But the tapes go to what exactly?
 9              MR. POWLEY:  They go to -- to two things, your
10      Honor.  They go to the forwarding.
11              THE COURT:  Right.  People that they forwarded the
12      tapes to.
13              MR. POWLEY:  Exactly.
14              THE COURT:  Okay.  What else?
15              MR. POWLEY:  And it also goes to the fact that one
16      the -- the publication was sent to a Plains subscriber, it
17      always contains an admonition on the front, the cover e-mail,
18      that you can't copy this.  You can't do anything with this.
19              THE COURT:  Right.
20              MR. POWLEY:  From 1999 to 2007 the person, sole
21      person that received that publication, was Brian Joyce.  We
22      did depose him, and he testified that he started immediately
23      forwarding it, and then it built up to 20 to 30 people.  And
24      he also, every time he forwarded it, unlike the later
25      forwarding in 2007 with Araceli, where she forwarded our
```

```
 1    admonition about not copying, he intentionally removed that

 2    warning that said you can't copy it as he disseminated it to

 3    the company.

 4              THE COURT:  Okay.  So what do the tapes -- what do

 5    the tapes get us here?

 6              MR. POWLEY:  The tapes have this information.

 7              THE COURT:  What information?

 8              MR. POWLEY:  Their use of the publication, they're

 9    forwarding the of the publication, the redaction notice.

10              THE COURT:  I'm sorry.  The what?

11              MR. POWLEY:  The redaction of that warning before

12    they forwarded it further.

13              THE COURT:  And why do the tapes have that?

14              MR. POWLEY:  Because the -- the publication was

15    sent to the subscriber.

16              THE COURT:  Okay.  And this tape is what?  A

17    back-up of a computer?

18              MR. POWLEY:  It's their back-up of their a server.

19              THE COURT:  Okay.

20              MR. POWLEY:  And it has -- it's the only location

21    from 2002 that has the e-mails that were sent to the

22    defendant.

23              THE COURT:  Okay.  Now, I thought we agreed that to

24    the extent you're seeking statutory damages, the fact that

25    they forwarded it to God knows how many people has very
```

```
 1   little relevance.
 2          MR. POWLEY:  I believe it goes somewhat to
 3   culpability.  I think there's a difference from a person that
 4   forwards it once --
 5          THE COURT:  No, for purposes of damages of this.
 6          MR. POWLEY:  Yes.  Yes.  Yes.
 7          THE COURT:  Right.  And it may go to -- you're
 8   right.  It may go to culpability; right?
 9          MR. POWLEY:  Yes.
10          THE COURT:  All right.  And this is from what
11   period?  From 2'02?
12          MR. POWLEY:  2002 to 2009.
13          THE COURT:  Okay.  So you send somebody down there,
14   and they basically didn't have the tapes in a position where
15   you could inspect them?
16          MR. POWLEY:  Exactly.  We showed --
17          THE COURT:  That's fine.
18          Okay.  Now, so what happened?
19          MS. YU:  We --
20          THE COURT:  Were you there?
21          MS. YU:  No.  I wasn't because I was at a
22   deposition.  After the last hearing on the 21st --
23          THE COURT:  Uh-huh.
24          MS. YU:  -- I sent an e-mail and have all the
25   e-mails to Mr. Powley on the 23rd, 24th, 25th asking him --
```

```
 1              THE COURT:  All I want to know is what happened on
 2   that day.  Were these materials --
 3              MS. YU:  We turned over everything, your Honor.
 4   All the tapes were made available.
 5              THE COURT:  Did you have a facility there --
 6              MS. YU:  Yes.
 7              THE COURT:  -- so that they could inspect these
 8   tapes?
 9              MS. YU:  Yes.
10              THE COURT:  Okay.  Well, here's what we're going to
11   do.  You're going to reimburse them their costs for having to
12   go out there.  You're going to produce these tapes.  And
13   you're going to produce something where they can look --
14              Is this the gentleman?
15              MS. YU:  Yes, your Honor.
16              THE COURT:  Okay.  So, sir, do you have something
17   where these takes can be looked at?
18              CUSTODIAN OF RECORDS, MR. PETERS:  I'm sorry, your
19   Honor?
20              THE COURT:  Do you have some way to look at these
21   back-up tapes?
22              CUSTODIAN OF RECORDS, MR. PETERS:  No, your Honor.
23              THE COURT:  You don't?
24              CUSTODIAN OF RECORDS, MR. PETERS:  No, your Honor.
25              THE COURT:  Well, what good are they?
```

```
 1              CUSTODIAN OF RECORDS, MR. PETERS:  They're
 2    actually --
 3              THE COURT:  Why are you told holding on to them?
 4              CUSTODIAN OF RECORDS, MR. PETERS:  They're on hold
 5    for the purposes of litigation, your Honor.
 6              THE COURT:  Well, somebody is going to have to be
 7    able to look at them; right?
 8              CUSTODIAN OF RECORDS, MR. PETERS:  Yes, your Honor.
 9              THE COURT:  So how?
10              CUSTODIAN OF RECORDS, MR. PETERS:  We would need to
11    find an agreed-upon vendor who could actually read the media,
12    your Honor.
13              THE COURT:  Okay.  Do you have a vendor in mind?
14              CUSTODIAN OF RECORDS, MR. PETERS:  I would -- there
15    are a couple of people that I could recommend, your Honor,
16    yes.
17              THE COURT:  Okay.  Well, you get a hold of one.
18    What is this?  It's a back-up of what?
19              CUSTODIAN OF RECORDS, MR. PETERS:  It's the --
20              THE COURT:  Outlook?
21              CUSTODIAN OF RECORDS, MR. PETERS:  I'm sorry, your
22    Honor.
23              THE COURT:  It's a back-up of e-mail system?
24              CUSTODIAN OF RECORDS, MR. PETERS:  No, it's a
25    back-up of the entire company system.
```

```
 1                  THE COURT:  The server?

 2                  CUSTODIAN OF RECORDS, MR. PETERS:  Yes, your Honor.

 3                  THE COURT:  You're interested in the e-mail; is

 4     that right?

 5                  MR. POWLEY:  Yes, your Honor.

 6                  THE COURT:  Okay.  Do you have a way of determining

 7     where those e-mails are --

 8                  CUSTODIAN OF RECORDS, MR. PETERS:  No, your Honor.

 9                  THE COURT:  -- on the back-up?

10                  CUSTODIAN OF RECORDS, MR. PETERS:  No, if I may.

11                  THE COURT:  Uh-huh.

12                  CUSTODIAN OF RECORDS, MR. PETERS:  The way that the

13     back-up is done -- it's a literal back-up of the entire

14     electronic universe, not just the e-mail.

15                  THE COURT:  Yes.

16                  CUSTODIAN OF RECORDS MR. PETERS:  If it was easy to

17     put the e-mail out, then we could do that relatively easily,

18     but the way that the tapes are held and what the back-ups

19     were run is it's a snapshot of everything.  All of every Word

20     doc, PDF, including the e-mails.

21                  THE COURT:  Okay.  So for the year 2002 you have a

22     back-up tape for that server; right?

23                  CUSTODIAN OF RECORDS MR. PETERS:  For the entire

24     server, yes, your Honor.

25                  THE COURT:  For the entire server; right?
```

```
 1              CUSTODIAN OF RECORDS MR. PETERS:  Yes, your Honor.

 2              THE COURT:  And if I wanted to look at that, you

 3      would have to put it on a computer and have it restored.

 4              CUSTODIAN OF RECORDS MR. PETERS:  Yes, your Honor.

 5              THE COURT:  Correct?

 6              CUSTODIAN OF RECORDS MR. PETERS:  Yes, sir.

 7              THE COURT:  And then once it's restored, then I

 8      could -- if I wanted a document or I wanted some e-mails, I

 9      could tell the computer to produce them.

10              CUSTODIAN OF RECORDS MR. PETERS:  Yes, your Honor.

11              THE COURT:  Right?

12              And you're holding on to those e-mails -- okay.  So

13      you want the tapes; right?

14              MR. POWLEY:  Well, they said they wouldn't give

15      them to us.

16              MS. YU:  That's not true, your Honor.

17              THE COURT:  Okay.  That's not true?

18              MS. YU:  No, it's not.

19              THE COURT:  So you'll give it to them?

20              MS. YU:  We did give it to them.

21              THE COURT:  No.  No.  No.

22              MS. YU:  If I may, your Honor.

23              THE COURT:  Excuse me.  No, you may not.  I've told

24      you guys the last time you were here to get this done.

25              MS. YU:  We did.
```

```
 1            THE COURT:  No, you didn't.  So we're going --
 2    you're either going to turn over those tapes to them.  Okay.
 3    And if you refuse to do that, your case is over.  Okay?  I'm
 4    going to enter a default.
 5            So you figure out how you're going to do it, and
 6    we're going to come back here next week, and we're going to
 7    have this figured out, or I'm going to default you because I
 8    distinctly remember the last time we were here I ordered that
 9    this get taken care of, and apparently it hasn't.
10            So you guys figure out a way to get this done.  And
11    if it isn't done, I'm going to default you.  I'm going to
12    order your answer stricken, and I'm going to have your
13    client's default entered.  Okay?  So you need to get this
14    done.
15            So you can get together with your IT person.  You
16    can give them the tape and let them figure out how they're
17    going to look at them, or you can work with them.  If they're
18    so precious you don't want them to go out of your possession,
19    fine.  They'll produce somebody.  They'll make somebody
20    available, and you guys figure out a way that they can look
21    at them.  So now do you want to huddle with your IT person
22    here and see what can you come up with?
23            MS. YU:  May I have an opportunity to respond, your
24    Honor?
25            THE COURT:  Sure.
```

```
 1            MS. YU:  After the Court hearing last time, I
 2    immediately contacted Mr. Powley and said, "These tapes are
 3    available."  They are in, your Honor, 900 cartons.  To ship
 4    them out to New York, it would take a week to two weeks.
 5    They wanted them shipped; so we told them we would be happy
 6    to do that, but you need to tell us where to ship them to.
 7            They didn't let us know.  They then said that,
 8    since they're already in Houston, they're going to come and
 9    look at them.  We made -- they told us on the 27th and I have
10    all the e-mails to confirm that.
11            After they made -- they told us they're going to
12    come and inspect, we immediately made the tapes available
13    because we wanted them -- we said, "We'll make the room
14    available.  You can come and look at all the tapes.  They're
15    in storage 900 cartons, 38,000 tapes, your Honor, to ship
16    them across the country would take --
17            THE COURT:  Fine.  So they're going to come and
18    look at the tapes.
19            MS. YU:  Yes, your Honor.
20            THE COURT:  Okay.
21            MS. YU:  So they officially said -- they had an IT
22    or somebody who could take a look, and that's where they want
23    them shipped.
24            So we said, "We have no problem shipping them, but
25    it's going to take time.  And because we're going to trial
```

1    soon, I think it would be faster if you come and look here."

2              They can bring their IT person --

3              THE COURT:  So they came to look at them, and then

4    what happened?

5              MS. YU:  That's right.  So instead they brought a

6    lawyer.  They didn't bring a tech person.  They brought a

7    lawyer to look at them for ten minutes, and then he left.

8    They didn't bring an IT person or anybody to look at them

9    because we can make all that available to them, your Honor.

10             But the problem -- the bigger problem that we're

11   facing, your Honor, is all the cover e-mails that they said

12   that they want are their e-mails that they have not turned

13   over one, your Honor.  Not one.

14             THE COURT:  You're getting off topic.

15             MS. YU:  We're deprived of --

16             THE COURT:  You're off topic.

17             MS. YU:  We --

18             THE COURT:  The issue is to make these tapes

19   available.

20             MS. YU:  They are available.  We even have a room

21   available right now in Houston.

22             THE COURT:  All right.  And you have a way for them

23   to be able to -- making the tapes available and there's no

24   way for them to look at it is not an answer.

25             MS. YU:  There is a room, but they have to bring a

```
 1    tech person to spin these tapes as I understand because these
 2    are old tapes that require old technologies, and it's going
 3    to -- that's why this was addressed.
 4           And I even have papers.  This was -- your Honor, I
 5    have all the filings.  It was back in July.  I have the
 6    filings right here, your Honor.
 7           THE COURT:  You better have somebody there who can
 8    manipulate the -- if you don't want to ship them to them,
 9    which is fine, that's fine, but you better have somebody
10    there who can spin them up so that they can look at them.
11           MS. YU:  We have them, your Honor.
12           THE COURT:  That's fine.
13           MS. YU:  And I have a filing --
14           THE COURT:  So when can they come and look at them?
15           MS. YU:  We have them available.  Any time.
16    Immediately.
17           THE COURT:  When will you be available to go down
18    and look at these tapes?
19           MR. POWLEY:  We can have somebody go down on
20    Monday.
21           MS. YU:  Immediately, your Honor.
22           THE COURT:  Monday?
23           MS. YU:  Yes.
24           THE COURT:  Right?
25           MS. YU:  Yes.
```

1           THE COURT:  And you're going to have somebody there

2      who can look at these tapes; right?

3           MS. YU:  Mr. Peters.

4           THE COURT:  Who can spin them up so that these guys

5      can go, "Okay.  We'd like to see the e-mails from two

6      thousand and whatever it is"; right?

7           MS. YU:  My understanding is that that's not the

8      way this -- these tapes work because they're full system.  So

9      they have for the entire country.  It's not just e-mail --

10          THE COURT:  Understand that.

11          MS. YU:  Right.  And I'm not a technical person,

12     but this was --

13          THE COURT:  And don't make promises you can't keep.

14          MS. YU:  I can defer this to Mr. Peters, but my

15     understanding is that, if they bring their expert or a

16     technical person, we've never --

17          THE COURT:  A technical person is going to be able

18     to find the e-mails?

19          MS. YU:  Your Honor, we have never withheld these

20     tapes.  They have been available -- I have put filings, your

21     Honor.

22          THE COURT:  Please, please.

23          MS. YU:  They've been available since July.

24          THE COURT:  You understand that I'm going to --

25     they're going to come out there.  They're going to look at

```
 1    these papers.  You're going to make them available.

 2              MS. YU:  Yes, your Honor.

 3              THE COURT:  Okay.  And if -- if I -- if they come

 4    back here and tell me yeah the tapes were there, but there

 5    was nothing for us to look at, that's not going to be

 6    satisfactory.  Okay?

 7              So before you start making promises, you might want

 8    to meet with him.  All of you may want to meet with him and

 9    figure out how you're going to get this done --

10              MS. YU:  Yes, your Honor.

11              THE COURT:  -- because if somebody comes back here

12    again -- okay.  So why don't you people get together.  Let's

13    see.  It's ten minutes to 3:00.  Why don't you people take

14    these few moments.  Get together with this tech person, and

15    you figure out how you're going to make this happen.

16              MS. YU:  Your Honor, what about all the e-mails

17    that they owe us?  They haven't turned over anything, your

18    Honor.  They said they either destroyed -- they're either

19    destroyed or gone.  What about us, your Honor?

20              THE COURT:  If they're destroyed or they're gone,

21    what am I supposed to do?

22              MS. YU:  They said they have a third party who has

23    them.

24              THE COURT:  Oh, okay.

25              MS. YU:  Mr. Mesereau just reminded me of
```

1    something, your Honor, if I may.

2              THE COURT:  I'm sure he did.  What was that?

3              MS. YU:  They apparently have an equipment -- I

4    think -- may he respond to that?  Because I don't think I was

5    in this conversation when Mr. --

6              MR. MESEREAU:  Your Honor, with all due respect,

7    they e-mailed us and said, "Bring it to New York.  We have

8    the experts and the equipment."

9              And then when we offered to do that, they said,

10   "No, we're already in Houston.  We'll come look at it."

11             So could they be ordered to bring the equipment

12   with their expert?  I think that would be reasonable since

13   they already said in the e-mail they have it.

14             THE COURT:  It's your choice.  You can either send

15   the e-mails to them -- okay? -- and they will indemnify them

16   and hold you harmless and -- if they lose them or they screw

17   them up.  Or if you want to hold on to them, fine.  Then make

18   them available for inspection.

19             MR. MESEREAU:  These are the tapes --

20             THE COURT:  Make the tapes available for

21   inspection.

22             MR. MESEREAU:  Yes, your Honor.

23             THE COURT:  And you guys figure out how you're

24   going to get this done.

25             MR. MESEREAU:  Yes.  Thank you, your Honor.

1          THE COURT:  Okay.  So do you want to come back in

2    10 or 15 minutes and tell me that you've resolved this issue?

3    Or that you can't?

4          MR. POWLEY:  Sure, your Honor.

5          MS. YU:  Yes, your Honor.

6          THE COURT:  Okay.  So have at it.  I'll see you in

7    about -- I'll see you in ten minutes.  I'll tell the

8    magistrate you're going to be about five minutes late.

9          MR. MESEREAU:  Thank you, your Honor.

10          THE CLERK:  All rise.

11          (Whereupon, from 2:53 p.m. to 3:02 p.m., a break

12          was taken.)

13          THE COURT:  Okay.  We're back on the record.

14          The issue with these back-up tapes -- didn't you

15    raise this issue with Magistrate Segal?

16          MR. POWLEY:  When we had the one count --

17          THE COURT:  Yes or no?

18          MR. POWLEY:  As it pertained to the one count.

19          THE COURT:  Did you raise this issue with

20    Magistrate Segal about the production of these tapes?

21          MR. POWLEY:  No.  We stipulated to move forward on

22    it.

23          THE COURT:  You what?

24          MR. POWLEY:  We said during the conference that

25    we're withdrawing our request for the pre-2000 ESI because

```
 1    the first case only had one count.  And we told the defendant

 2    that on the consolidated case, "We'll need to look at this

 3    information."  The consolidated case was not issued yet.  We

 4    just filed the thing.

 5              THE COURT:  Did Magistrate Segal rule on the issue

 6    of these back-up tapes?

 7              MR. POWLEY:  Not as it stands to the

 8    consolidated --

 9              THE COURT:  Excuse me.  Did she rule on that issue?

10              MR. POWLEY:  No.

11              MS. YU:  Yes, she did.

12              THE COURT:  What was the ruling?

13              MS. YU:  The ruling was that these back-up tapes --

14    they dropped them.  There's nothing.  There's nothing to look

15    at them.

16              THE COURT:  Is that what she ruled --

17              MS. YU:  Yes, she did because what happened was

18    this, your Honor, if I may --

19              THE COURT:  Just tell me what the ruling was.

20              MS. YU:  I have to really explain what happened.

21              THE COURT:  No, you don't.  Just tell me what the

22    ruling was.

23              MS. YU:  The ruling was they basically -- she said,

24    "Since you're not going to pursue them -- "

25              These tapes -- she said, since we're not pursuing,
```

UNITED STATES DISTRICT COURT

```
 1      I guess there's nothing else to address.  That's what she
 2      said.  They filed their papers saying, "We now understand --"
 3              THE COURT:  Did you raise with Magistrate Segal
 4      that --
 5              MS. YU:  Yes.
 6              THE COURT:  Did you raise with Magistrate Segal
 7      that the burden of producing these tapes?
 8              MS. YU:  Yes.  Absolutely did.
 9              THE COURT:  Okay.  Did she make a ruling concerning
10      the burden of producing these tapes?
11              MS. YU:  She didn't because they withdraw.  And
12      then, you know, she said -- your Honor, they said before she
13      ruled -- and it's in the transcript too -- they said, "We now
14      understand -- "
15              I have the papers, your Honor.
16              Plaintiff said, "We now understand the burden; so
17      we're going to withdraw."  Therefore, the judge said -- Judge
18      Segal said --
19              THE COURT:  Do you have the transcript there?
20              MS. YU:  I didn't bring the transcript with me, but
21      I have -- your Honor, but I have their papers.
22              THE COURT:  You have their papers?
23              MS. YU:  Their opposition papers that they filed,
24      your Honor.
25              I'm so sorry because I'm so afraid of you because I
```

```
1    think that you don't like me.  I just feel like you don't --
2              MR. MESEREAU:  Stop.  Stop.
3              THE COURT:  I think you need to be afraid of them
4    not me.
5              MS. YU:  No.  You're very intimidating.
6              MR. MESEREAU:  Stop.  Stop.
7              THE COURT:  Uh-huh.
8              MS. YU:  I'm not afraid of them, your Honor.  Let
9    me just -- if I can just collect my thoughts.
10             Hold on one second, please.  I'm so sorry.
11             THE COURT:  You already have evidence that they
12   were copying back in 1999, don't you?
13             MR. POWLEY:  We -- one of the witnesses said he
14   can't recall when, but he said, "I believe when it went
15   electronic, he started forwarding the publication."
16             THE COURT:  That was when?
17             MR. POWLEY:  I didn't hear you.
18             THE COURT:  That was when, when it went electronic?
19             MR. POWLEY:  December 7, 1999.
20             THE COURT:  So you already have their testimony?
21             MR. POWLEY:  Yes, but -- we've had -- we wanted to
22   get it through testimony, and everyone we've deposed since
23   keeps on saying, "I don't know."  "I can't recall."
24             THE COURT:  Well, you already have that testimony
25   there.
```

1            MS. YU:  And then we have the transcript on file,

2     but I don't have the transcript with me.

3            THE COURT:  Fine.  Do you something here you want

4     me to look at?

5            MS. YU:  Yes.  May I approach, your Honor?

6            THE COURT:  Yes.  I'm reviewing the declaration of

7     Mr. Peters.

8            MR. POWLEY:  Thank you.

9            THE COURT:  You're Mr. Peters?

10           CUSTODIAN OF RECORDS MR. PETERS:  Yes, your Honor.

11           THE COURT:  Okay.

12           All right.  Mr. Peters this declaration was signed

13     on July 20, 2012.  Is this still your position?

14           CUSTODIAN OF RECORDS MR. PETERS:  Yes, your Honor.

15           THE COURT:  Okay.  Based on the declaration of

16     Mr. Peters, and what I've -- well, based on his

17     declaration -- based on what I think is going to come out

18     from reviewing these documents and given the evidence that

19     you already have of copying, I'm going to say that the burden

20     of looking at these back-up tapes exceeds what relevance, if

21     any, these tapes would have to the issues that remain to be

22     tried.  So I'm going to rule that the defendants don't have

23     to produce these tapes.

24           And --

25           MR. POWLEY:  Your Honor?

```
 1                THE COURT:  Yes.

 2                MR. POWLEY:  After we were finally able to look at

 3      the tapes on the 28th and the information they provide to us

 4      on the 1st we submitted -- it was the first thing we could

 5      submit to our IT person, and he disagreed with Mr. Peters'

 6      assessment.  We could send you the declaration tomorrow to

 7      those facts.

 8                THE COURT:  You could submit a declaration, and

 9      I'll take a look at it; and if I'm going to change that, I'll

10      call you tomorrow afternoon.

11                MR. POWLEY:  Thank you, your Honor.

12                THE COURT:  And we'll see where we are.

13                MR. POWLEY:  Thank you, your Honor.  That's all I

14      can ask.  Thank you.

15                THE COURT:  Okay.  So you can file a declaration

16      from your IT person telling me what his position is, give

17      them a copy, I'll take a look at it.  And if I have to revise

18      that ruling, I will.

19                MR. POWLEY:  Thank you, Your Honor.

20                THE COURT:  Okay.  All right.  I think Judge Segal

21      is waiting for you.

22                MR. POWLEY:  Thank you, your Honor.

23                THE CLERK:  All rise.

24                THE COURT:  This case is set to start on the 15th?

25                MS. YU:  Yes, your Honor.
```

1           THE COURT:  Okay.  Make sure I have all those

2   documents that I asked for, and I'll let you know by Tuesday

3   if we're going to need to have a further pretrial conference

4   prior to the start of the trial.

5           MS. YU:  Yes, your Honor.  Thank you.

6           THE COURT:  Yes.

7           MR. POWLEY:  Thank you, your Honor.

8           MR. MESEREAU:  Thank you, your Honor.

9           THE CLERK:  This Court is adjourned.

10          (Whereupon, at 3:12 p.m. , the proceeding

11          concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    CERTIFICATE OF REPORTER

2


3     COUNTY OF LOS ANGELES )
                            ) ss.
4     STATE OF CALIFORNIA   )


5


6     I, LEANDRA AMBER, OFFICIAL FEDERAL COURT REPORTER, REGISTERED

7     PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

8     COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

9     CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES

10    CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

11    STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

12    ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS

13    IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL

14    CONFERENCE OF THE UNITED STATES.


15


16


17    DATE: _____


18


19


20    _____/s/_____

21    LEANDRA AMBER, CSR 12070, RPR

22    FEDERAL OFFICIAL COURT REPORTER


23


24


25
```